UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>　　*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR, JULIE A. SU, in her Official Capacity as United States Secretary of Labor, THE WAGE AND HOUR DIVISION OF THE DEPARTMENT OF LABOR, and JESSICA LOOMAN, in her Official Capacity as Administrator of the Wage and Hour Division,<br>　　*Defendants.* | CIVIL ACTION NO. 4:24-CV-00499 |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND/OR PRELIMINARY INJUNCTION
AND/OR TO POSTPONE THE EFFECTIVE DATE OF THE 2024 RULE**

I.   **Introduction**

The Fair Labor Standards Act ("FLSA") requires employers to pay overtime compensation (the "Overtime Rule") but exempts several categories of employees, including "any employee employed in a bona fide executive, administrative, or professional capacity … as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1) ("the EAP Exemption").

The statute defining the EAP Exemption refers only to duties, not salary. Yet, for decades, Defendants and their predecessors at the Department of Labor ("DOL") have adopted rules that add a minimum salary requirement to the EAP Exemption. DOL issued one such rule in 2016, and this Court invalidated it. *Nevada v. U.S. Dep't of Labor*, 218 F. Supp.3d 520 (E.D. Tex. 2016) (preliminarily enjoining 2016 Rule) (*Nevada I*) (Mazzant, J.); 275 F. Supp.3d 795 (E.D. Tex. 2017) (permanently invalidating 2016 Rule) (*Nevada II*) (Mazzant, J.).

Defendants have issued a new Final Rule (the "2024 Rule") that has the same problems that the Court identified in the 2016 Rule. "Defining and Delimiting the Exemptions for Executive, Professional, Outside Sales, and Computer Employees," 89 Fed. Reg. 32842 (Apr. 26, 2024). It will increase the minimum salary level from $684 per week ($35,568 annually) to $844 per week ($43,888 annually), starting on July 1, 2024, and to $1,128 per week ($58,656 annually) starting on January 1, 2024. *Id.* at 32971 (adding 29 C.F.R. § 541.600(a)(1), (a)(2)). Defendants admit that millions of employees will be affected by the new rule. Some of those employees work for the State of Texas. Exhibit A. The Court should invalidate the minimum salary level in the 2024 Rule for the same reasons it invalidated the minimum salary level in the 2016 Rule.

Additionally, the July 1, 2024 minimum salary level in the 2024 Rule is arbitrary and capricious. Its methodology—20th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region, and in the retail industry nationally—has no relation to the statutory requirement that "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the Overtime Rule, regardless of salary. The January 1, 2025 minimum salary level, and the level implemented by 2024 Rule's automatic salary increases, is even more

arbitrary and more capricious because it is based on the 35th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region, and in the retail industry nationally. DOL chose the 35th percentile based on an invalid mathematical formula applied to the arbitrary and capricious 20th percentile rule and pre-2004 rules. The Court should set aside the minimum salary levels in the 2024 Rule for that additional reason.

Defendants hereby request that this Court issue a temporary restraining order and/or preliminary injunction, postponing the effective date of the 2024 Rule under 5 U.S.C. § 705 (*i.e.*, stay it), to maintain the status quo, leaving the minimum salary level at $684 per week ($35,568 annually), pending resolution on the merits. Defendants further request that this Court issue a temporary restraining order and/or preliminary injunction, that enjoins Defendants from applying or enforcing the 2024 Rule

## II. Background and Facts

### A. The Fair Labor Standards Act and the EAP Exemption

The Fair Labor Standards Act ("FLSA") requires employers to pay non-exempt employees 1.5 times their base hourly wage for all time worked beyond 40 hours in a workweek (the "Overtime Rule"). 29 U.S.C. § 207. The FLSA has many exemptions from the overtime rule. Those "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018).

The exemption at issue in this case, Section 213(a)(1), provides that hourly pay and overtime rules "shall not" apply to "any employee employed in a bona fide executive, administrative, or professional capacity … as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1). This exemption is commonly referred to as the "EAP Exemption."

The statute delegates defining and delimiting "such terms" to the Secretary of Labor without any limitations—other than those limitations inherent in the words "defined," "delimited," and "such terms."

3

Unlike other exemptions, the EAP Exemption does not exempt employees from hourly pay and overtime pay based on compensation. *See* 29 U.S.C. § 213(a)(17), (19).

### B. Regulatory History

#### 1. 1940–2004

Despite the statute's lack of a compensation requirement for the EAP Exemption, DOL's regulations since 1940 have added a minimum salary that employees must make before qualifying for the EAP exemption. The minimum salary requirements are currently found at 29 C.F.R. §§ 541.100(a)(1) (executives), 541.200(a)(1) (administrative employees), and 541.300(a)(1) (professionals). The 2004 Rule (69 Fed. Reg. 22122 (April 23, 2004)) set the minimum salary at $455 a week ($23,660 per year). As the Preamble to the 2024 Rule notes, the 2004 Rule "set the standard salary level at $455 per week, which was equivalent to the 20th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region (the South) and in the retail industry nationally." 89 Fed. Reg. at 32845.

The 2004 Rule's 20th percentile methodology was new at the time. From 1950 to 2004, DOL had two minimum salary levels. Employees who spent less than 20% of their time on non-EAP duties were exempt under the "long duties" test at a certain minimum salary level. An example of such an employee is a retail a store manager who occasionally works the cash register.

Employees who spent less than 80% of their time on EAP duties, but whose "primary duty" was nevertheless EAP duty were exempt under the "short duties" test at a higher salary level than the "long duties" test. An example of such an employee is an assistant manager at a retail establishment who supervises and directs other employees (exempt work) and has management as his or her primary duty, even if he or she spends more than half of his or her time running a cash register (nonexempt work).

The minimum salary for the EAP Exemption for "long duties" was smaller than the one for "short duties." As stated in the preamble to the 2024 Rule, "From 1958 until 2004, the regulations in place generally set the long test salary level at a level designed to exclude from exemption

4

approximately the lowest paid 10 percent of salaried white-collar employees who performed EAP duties in lower-wage areas and industries and set the short test salary level significantly higher." 89 Fed. Reg. 32845. The "short duties" salary level was approximately "149 percent of a contemporaneous long test salary level. The short test salary ratio of 149 percent is the simple average of the 15 historical ratios of the short test salary level to the long test salary level." 89 Fed. Reg. at 32845 n.53.

DOL got rid of the separate minimum salary levels in 2004. As the Preamble to the 2024 Rule notes, the 2004 Rule "eliminated the separate long and short tests and replaced them with a single standard test. The Department set the standard salary level at $455 per week, which was equivalent to the 20th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region (the South) and in the retail industry nationally. The Department paired the new standard salary level test with a new standard duties test for executive, administrative, and professional employees, respectively, which was substantially equivalent to the short duties test used in the two-test system…. [T]he new standard salary level was comparable to the lower long test salary level used in the two-test system." 89 Fed. Reg. at 32845.

The preamble to the 2024 Rule further states that DOL stated in 2004 that "the shift to setting the salary level based on 'the lowest 20 percent of salaried employees in the South, rather than the lowest 10 percent' of EAP employees was made, in part, 'because of the proposed change from the "short" and "long" test structure.'" *Id.*

### 2. The 2016 Rule and 2019 Rule

In 2016, DOL adopted the Rule that this Court found invalid. As the Preamble to the 2024 Rule states, the 2016 Rule "retained the single-test system but increased the standard salary level and provided for regular updating. Specifically, the 2016 rule … increased the standard salary level from the 2004 salary level of $455 to $913 per week, the 40th percentile of weekly earnings of full-time salaried workers in the lowest-wage Census Region (the South) [and] added a mechanism to

automatically update the [minimum salary level for the EAP Exemption] every 3 years." *Id*. at 32846.

DOL justified changing the methodology from the 20th to the 40th percentile of weekly earnings of full-time salaried workers in the lowest-wage Census Region by asserting that the 2004 level should have been set to the short-duty salary instead of the long-duty salary. "[T]he increase in the standard salary level was needed because, in moving from a two-test to a one-test system, the 2004 rule exempted lower-salaried employees performing large amounts of nonexempt work who had historically been, and should continue to be, covered by the overtime compensation requirement. Since the standard duties test was equivalent to the short duties test, the Department asserted that a salary level in the short test salary range—traditionally 130 to 180 percent of the long test salary level—was necessary to address this effect of the 2004 rule." 89 Fed. Reg. at 32863.

The Court invalidated the 2016 Rule because it "would exclude so many employees who perform exempt duties, [which shows that Defendants] fail[ed] to carry out Congress's unambiguous intent. Thus, the Final Rule does not meet *Chevron* step one and is unlawful," *Nevada II*, 275 F. Supp. at 807, and because, further, it did not meet *Chevron* step 2. Even "[i]f Congress was ambiguous about what specifically constituted an employee subject to the EAP exemption, Congress was clear that the determination should involve at least a consideration of an employee's duties[, and] [n]othing in Section 213(a)(1) allows the Department to make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity' employee should be exempt from overtime pay." *Id*. at 807–08.

The Court described a permissible minimum salary requirement for the EAP Exemption. "While the plain meaning of Section 213(a)(1) [the EPA Exemption] does not provide for a salary requirement, the Department has used a permissible minimum salary level as a test for *identifying* categories of employees Congress intended to exempt. The Department sets the minimum salary level as a floor to 'screen[ ] out the obviously nonexempt employees, making an analysis of duties in such cases unnecessary.' Harry Weiss, Report and Recommendations on Proposed Revisions of Regulations, Part 541, at 7–8 (1949). Further, the Department acknowledges that in using this

method, '[a]ny new figure recommended should also be somewhere near the lower end of the range of prevailing salaries for these employees.' *Id*." *Nevada II* at 806.

The Court held that the 2016 Rule was not such a permissible minimum salary requirement. "[T]he Department create[d] a Final Rule that makes overtime status depend predominately on a minimum salary level, thereby supplanting an analysis of an employee's job duties. The Department estimates 4.2 million workers currently ineligible for overtime, and who fall below the minimum salary level, will automatically become eligible under the Final Rule without a change to their duties…. Because the Final Rule would exclude so many employees who perform exempt duties, the Department fails to carry out Congress's unambiguous intent." *Id*. at 806–07.

The 2016 Rule was not a permissible salary requirement because it was not "somewhere near the lower end of the range of prevailing salaries" and did not "screen out the obviously nonexempt employees." Rather, it made 4.2 million employees with EAP duties eligible for overtime without a change in their duties.

The Court did not consider whether the 2016 Rule was invalid because it increased the percentile level of weekly earnings of full-time salaried workers in the South from 20th to 40th, because it did (or did not) correct supposed errors in the 2004 Rule, or because the 2016 Rule was justified by earlier rules. *Any* percentile would have failed unless it resulted in a salary level "somewhere near the lower end of the range of prevailing salaries" and that "screen[ed] out the obviously nonexempt employees," regardless of how the percentage was supposedly derived.

The Court also invalidated the 2016 Rule's automatic updating mechanism for the same reasons. Nothing in the FLSA even arguably authorizes DOL to automatically update the minimum salary based entirely on indexing tied to average salary levels, with no taking account of actual duties performed in setting the new salary cutoff. *Id*. at 808.

Thus, the 2004 Rule's minimum salary levels remained in effect until DOL issued a new Rule in 2019. As the preamble to the 2024 Rule notes, "The 2019 rule … raised the standard salary level from the 2004 salary level of $455 to $684 per week, the equivalent of the 20th percentile of weekly earnings of full-time salaried workers in the lowest-wage Census Region (the South) and/or in the

retail industry nationally." 89 Fed. Reg. at 32846. Thus, the 2019 Rule used the 2004 Rule's methodology, applied to 2019 salary data.

### C. The 2024 Rule

The 2024 Rule does three things to the minimum salary level for the EAP Exemption. *First*, it raises the level from $684 per week ($35,568 annually) to $844 per week ($43,888 annually) starting on July 1, 2024. 89 Fed. Reg. 32971 (adding 29 C.F.R. § 541.600(a)(1)). The July 1 increase is similar to the 2019 Rule's increase in that it uses the 2004 Rule's methodology (20th percentile of weekly earnings of full-time salaried workers in the lowest-wage Census Region and/or in the retail industry nationally) applied to 2024 salary data. 89 Fed. Reg. at 32843.

Defendants admit, "The Department estimates that in Year 1, approximately 1 million employees who earn at least $684 per week but less than $844 per week will be impacted by the initial update applying current wage data to the standard salary level methodology from the 2019 rule." 89 Fed. Reg. at 32843. Some of those employees work for the State of Texas. Exhibit A.

*Second*, the 2024 Rule raises the level from $844 per week ($43,888 annually) to $1,128 per week ($58,656 per year) starting on January 1, 2025. 89 Fed. Reg. 32971 (adding 29 C.F.R. § 541.600(a)(2)). The $1,128 number is based on the 35th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region (currently the South) and in the retail industry nationally. 89 Fed. Reg. at 32842.

"The Department estimates that … approximately 3 million employees who earn at least $844 per week but less than the new standard salary level of $1,128 per week will be impacted by the subsequent application of the new standard salary level [starting on January 1, 2025]." 89 Fed. Reg. at 32843. Some of those employees work for the State of Texas.

*Third*, the 2024 Rule mandates automatic updates on July 1, 2027 and every three years thereafter based on the 35th percentile of weekly earnings of full-time salaried workers in the lowest wage Census Region and in the retail industry nationally. 89 Fed. Reg. 32971 (adding 29 C.F.R. §§ 541.600(a)(3), 541.607(b)(1)).

**III. Standard**

For a preliminary injunction, Texas must show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The standard is the same for a temporary restraining order. *Janvey*, 647 F.3d. at 595.

Section 705 of the APA, meanwhile, "authorizes reviewing courts to stay agency action pending judicial review."[1] *Affinity Healthcare Servs., Inc. v. Sebelius*, 720 F. Supp. 2d 12, 15 n.4 (D.D.C. 2010) (citing 5 U.S.C. § 705). "Motions to stay agency action pursuant to these provisions are reviewed under the same standards used to evaluate requests for interim injunctive relief." *Id.* (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)); s*ee also Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) (granting stay of agency action under 5 U.S.C. § 705 and applying preliminary injunction factors).

While "[a] stay [of an agency action] pending appeal certainly has some functional overlap with an injunction, particularly a preliminary one … [due to both having] the practical effect of preventing some action before the legality of that action has been conclusively determined," *Nken v. Holder*, 556 U.S. 418, 428 (2009), "a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Id.* at 428–29.

"In the same way that a preliminary injunction is the temporary form of a permanent

---

[1] The stay provision of the APA provides that: "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process *to postpone the effective date of an agency action* or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. §705 (emphasis added).

injunction, a stay [under section 705] is the temporary form of vacatur." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023). "Under 5 U.S.C. § 705, [courts] may, under 'certain conditions[,] ... and to the extent necessary to prevent irreparable injury, ... issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1143 (5th Cir. 2021) (quoting 5 U.S.C. § 705).

Texas easily satisfies each standard.

## IV. Arguments and Authorities

### A. Texas is likely to succeed on the merits.

#### 1. The minimum salary level in the 2024 Rule, like the minimum salary level in the 2016 Rule fails to carry out Congress's unambiguous intent.

The Court set aside the minimum salary levels in the 2016 Rule because it "essentially make[s] an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level." *Nevada II*, 275 F. Supp.3d at 806. The Court therefore held unlawful the Department's attempt to "make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity employee' should be exempt from overtime pay." *Id.* at 807.

Defendants themselves estimate that approximately 1 million exempt employees currently make at least $684 per week but less than $844 per week, and approximately 3 million exempt employees currently make at least $844 per week but less than $1,128 per week. 89 Fed. Reg. at 32843. Thus, Defendants admit that, on July 1, 2024, the Final Rule will classify approximately one million employees who are "employed in a bona fide executive, administrative, or professional capacity" as non-exempt based on their salary, not their bona fide job duties.

Defendants further admit that, on January 1, 2025, the Final Rule will classify approximately three million more employees who are "employed in a bona fide executive, administrative, or

10

professional capacity" as non-exempt based on their salary, not their bona fide job duties. 89 Fed. Reg. at 32843.

The Court should set aside the 2024 Rule's minimum salary level because, like the 2016 Rule, it "would exclude so many employees who perform exempt duties, [which shows that Defendants] fail[ed] to carry out Congress's unambiguous intent. Thus, the Final Rule does not meet *Chevron* step one and is unlawful." *Nevada II*, 275 F. Supp. at 807.

The Court should also set aside the 2024 Rule's minimum salary level because, like the 2016 Rule, it does not meet *Chevron* step 2. Even "[i]f Congress was ambiguous about what specifically constituted an employee subject to the EAP exemption, Congress was clear that the determination should involve at least a consideration of an employee's duties[, and] [n]othing in Section 213(a)(1) allows the Department to make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity' employee should be exempt from overtime pay." *Id*. at 807–08. But the 2024 Rule makes salary rather than an employee's duties determinative of whether the employee is subject to the EAP Exemption.

Just as with the 2016 Rule, the 2024 Rule establishes a "significant increase [that] would essentially make an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level, and "entire categories of previously exempt employees who perform bona fide executive, administrative, or professional capacity duties would now qualify for the EAP exemption based on salary alone." 275 F. Supp. 3d at 806 (citing the Department's 2016 Rule which estimated that 4.2 million workers would have lost their exempt status solely because of the increased salary threshold).

> **2. The 2024 Rule's minimum salary level should be set aside because it is arbitrary and capricious.**

Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency acts arbitrarily and capriciously when it departs sharply from prior practice without reasonable explanation or disregards either alternatives to its action or the affected communities'

11

reliance on the prior rule. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020).

Defendants' use of the 20th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region, and in the retail industry nationally, is arbitrary and capricious. It bears no relation to the statutory requirement that "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the Overtime Rule, regardless of salary.

The minimum salary level that kicks in on January 1, 2025, based on the 35th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region, and in the retail industry nationally, is also arbitrary and capricious for that reason—it bears no relation to the statutory requirement that "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the Overtime Rule, regardless of salary.

The January 1, 2025 minimum salary level is arbitrary and capricious for additional reasons. *First*, it is based an invalid mathematical formula applied to the arbitrary and capricious 20th percentile rule and pre-2004 practice. Defendants essentially argue, as they did in the 2016 Rule, that the 2004 Rule used bad math when it eliminated the two duties tests with the two different minimum salary levels. Defendants' choice of the 35th percentile seems to be based on nothing more than the fact that the "short duties" salary level used to be approximately 149% of the "long duties" salary level, and 35 is close enough to 149% of 20 (it is actually 175% higher). But the 2004 Rule's 20th percentile level was based on an entirely different salary base than the pre-2004 "long duties" salary base, making this comparison irrelevant.

*Second*, the January 1, 2025 minimum salary level disregards the affected communities' reliance on the prior rule and will make millions of employees non-exempt, requiring either increases in salaries or overtime pay and additional paperwork.

### B. Texas will suffer irreparable harm it the 2024 Rule takes effect.

Numerous exempt Texas employees will become non-exempt on July 1, 2024, and several more will become non-exempt on January 1, 2025. Those employees will either have to (1) get raises to the minimum salary level, (2) get time and a half for the work over 40 hours a week, or (3) be prohibited from working more than 40 hours per week, depriving Texas of their services for those additional hours. In each case, Texas is irreparably harmed.

Generally, it is "well established that an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Texas's financial injuries are irreparable because the federal government enjoys sovereign immunity against claims for money damages. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Thus, the first two harms are irreparable. The third harm is irreparable because there is no way to get those lost services back.

The minimum salary levels in the 2024 Rule would also impose unrecoverable compliance costs. "[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016). And if the Rule is not stayed, Texas will need to review discrimination policies statewide, revise and reissue policies that conflict with the 2024 Rule, draft new overtime policies, and develop and distribute training and educational materials for supervisors and employees.

Together, therefore, the injuries to Texas's financial and sovereign interests are irreparable and should be protected with a permanent injunction.

### C. The balance of equities and public interest favor Texas.

When the government is a party, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). A court therefore must weigh whether "the threatened injury outweighs any harm that may result from the injunction to the non-movant" and whether "the injunction will not undermine the public interest." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). The non-movant will not be harmed at all by enjoining the Rule. And an

13

injunction against an illegal rule cannot undermine the public interest. The public has no interest in the enforcement of illegal rules.

### D. The Court should also postpone the effective date of the 2024 Rule pending final briefing.

The APA empowers reviewing courts to "postpone the effective date of an agency action" in lieu of a preliminary injunction. "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. Texas merits relief under Section 705 for the same reasons it satisfies the standard for a TRO and/or preliminary injunction. *See*, *e.g.*, *Texas v. EPA*, 829 F.3d at 435 (applying preliminary injunction factors to Section 705 analysis).

### V. Conclusion

For the foregoing reasons, the Court should either temporarily enjoin Defendants from enforcing the minimum salary requirements in the 2024 Rule or postpone the effective date of the minimum salary requirements of the 2024 Rule.

Date: June 3, 2024

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**RYAN D. WALTERS**
Chief, Special Litigation Division

Respectfully submitted.

*/s/ KATHLEEN T. HUNKER*
**KATHLEEN T. HUNKER**
Special Counsel
Tex. State Bar No. 24118415

**SUSANNA DOKUPIL**
Special Counsel
Tex. State Bar No. 24034419

**GARRETT GREENE**
Special Counsel
Tex. State Bar No. 24096217

**MUNERA AL-FUHAID**
Special Counsel
Tex. State Bar No. 24094501

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Kathleen.Hunker@oag.texas.gov
Susanna.Dokupil@oag.texas.gov
Garrett.greene@oag.texas.gov
Munera.Al-fuhaid@oag.texas.gov

**COUNSEL FOR PLAINTIFF STATE OF TEXAS**

**CERTIFICATE OF CONFERENCE**

I certify that on June 3, 2024, the Plaintiff's Counsel conferred with Defendant's Counsel, and they communicated that their clients are opposed to this motion.

*/s/ Kathleen T. Hunker*
**KATHLEEN T. HUNKER**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 3, 2024 and that all counsel of record were served by CM/ECF.

*/s/ Kathleen T. Hunker*
**KATHLEEN T. HUNKER**