**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS,<br><br>         Plaintiff,<br><br>   v.<br><br>U.S. DEPARTMENT OF LABOR, *et al.*,<br><br>        Defendants. | Case No. 4:24-cv-499 |

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND/OR TO
POSTPONE THE EFFECTIVE DATE OF THE 2024 RULE</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    1.    Statutory Background ................................................................................... 3

    2.    Pre-2024 Regulatory History ...................................................................... 5

    3.    2024 Final Rule ........................................................................................... 8

LEGAL STANDARD ........................................................................................................ 10

ARGUMENT ..................................................................................................................... 11

    1.    Texas Fails to Establish That Any Irreparable Harm Will Occur Before This
          Court Has the Opportunity to Resolve This Case on the Merits................................ 11

    2.    Plaintiffs Are Unlikely to Succeed on the Merits Because the Wage Growth
          Update to the Salary Level Test Is Lawful. .............................................. 13

        A.    The Fifth Circuit has already upheld the Department's authority to use a
             salary level test................................................................................. 14

        B.    The salary level test is wholly consistent with, and certainly not manifestly
             contrary to, the FLSA. ...................................................................... 15

        C.    Congress has ratified the salary level test. ............................................ 18

        D.    The 2024 EAP Rule's wage growth update uses the same methodology as
             the 2019 EAP Rule, which is not arbitrary and capricious. .................................. 21

    3.    The Public Interest and Balance of the Equities Disfavor Preliminary Relief. .......... 23

    4.    Texas's Requested Relief Is Vastly Overbroad. ....................................... 25

        A.    Any preliminary remedy may only run to Texas as an employer......................... 25

        B.    Any preliminary remedy may only address the wage growth update.................. 27

        C.    A Section 705 stay must be limited according to equitable principles. ............... 28

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987)................................................................................. 28

*Alstate Constr. Co. v. Durkin*,
    345 U.S. 13 (1953)............................................................................. 19, 23

*Auer v. Robbins*,
    519 U.S. 452 (1997)................................................................................. 17

*Big Tyme Invs., L.L.C. v. Edwards*,
    985 F.3d 456 (5th Cir. 2021) ................................................................... 10

*BioTE Med., LLC v. Jacobsen*,
    406 F. Supp. 3d 575 (E.D. Tex. 2019) ..................................................... 11

*Butts v. Aultman*,
    953 F.3d 353 (5th Cir. 2020) ................................................................... 13

*Byrum v. Landreth*,
    566 F.3d 442 (5th Cir. 2009) ................................................................... 23

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)................................................................................. 25

*Canal Auth. of Fla. v. Callaway*,
    489 F.2d 567 (5th Cir. 1974) ................................................................... 10

*CFTC v. Schor*,
    478 U.S. 833 (1986)................................................................................. 20

*Chamber of Commerce v. Hugler*,
    No. 3:16-cv-1476-M, 2017 WL 1062444 (N.D. Tex. Mar. 20, 2017)...................................... 12

*Chamber of Com. of the U.S. v. CFPB*,
    No. 6:22-CV-00381, 2023 WL 5835951 (E.D. Tex. Sept. 8, 2023),
    *appeal filed*, No. 23-40650 (5th Cir. Nov. 8, 2023) ........................................ 29, 30

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*,
    467 U.S. 837 (1984)........................................................................... 15, 16

*Costanzo v. Tillinghast*,
    287 U.S. 341 (1932)................................................................................. 20

*Fanelli v. U.S. Gypsum Co.*,
   141 F.2d 216 (2d Cir. 1944)..........................................................................14, 20

*FDA v. All. for Hippocratic Med.*,
   602 U.S. —, 2024 WL 2964140 (June 13, 2024) ....................................... 27

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005)............................................................................ 12

*GBX Assocs., LLC v. United States*,
   No. 1:22-cv-401, 2022 WL 16923886 (N.D. Ohio Nov. 14, 2022)......................... 30

*Haaland v. Brackeen*,
   599 U.S. 255 (2023)........................................................................................ 25

*Kentucky v. Biden*,
   57 F.4th 545 (6th Cir. 2023) ........................................................................ 26

*L.W. ex rel. Williams v. Skrmetti*,
   73 F.4th 408 (6th Cir. 2023) ........................................................................ 26

*Labrador v. Poe ex rel. Poe*,
   144 S. Ct. 921 (2024)...................................................................................... 25

*Lakedreams v. Taylor*,
   932 F.2d 1103 (5th Cir. 1991) ...................................................................... 13

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007)..................................................................................16, 17

*Louisiana v. Becerra*,
   20 F.4th 260 (5th Cir. 2021) ........................................................................ 25

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ...................................................................... 13

*Mayfield v. U.S. Dep't of Labor*,
   No. 1:22-cv-792-RP, 2023 WL 6168251 (W.D. Tex. Sept. 20, 2023),
   *appeal pending*, No. 23-50724 (5th Cir.)..................................................... 8, 15

*MD/DC/DE Broads. Ass'n v. FCC*,
   236 F.3d 13 (D.C. Cir. 2001) ........................................................................ 28

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
   456 U.S. 353 (1982)........................................................................................ 20

*Miami Beach Fed. Sav. & Loan Ass'n v. Callander*,
   256 F.2d 410 (5th Cir. 1958) ....................................................................11, 22

iii

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
  760 F.2d 618 (5th Cir. 1985) ................................................................. 27, 28

*Mitchell v. Ky. Fin. Co.*,
  359 U.S. 290 (1959) ................................................................................. 18, 19

*Mitchell v. Sizemore*,
  No. 09-cv-348, 2010 WL 457145 (E.D. Tex. Feb. 5, 2010) ............................ 11, 13

*Mock v. Garland*,
  75 F.4th 563 (5th Cir. 2023) ........................................................................ 25

*Morris v. McComb*,
  332 U.S. 422 (1947) ...................................................................................... 14

*Nat'l Ass'n for Gun Rts., Inc. v. Garland*,
  No. 4:23-CV-00830-O, 2023 WL 6613080 (N.D. Tex. Oct. 7, 2023),
  *appeal filed*, No 23-11138 (5th Cir., Nov. 8, 2023) ...................................... 26

*Nevada v. U.S. Dep't of Labor*,
  218 F. Supp. 3d 520 (E.D. Tex. 2016) .............................................................. 7

*Nevada v. U.S. Dep't of Labor*,
  275 F. Supp. 3d 795 (E.D. Tex. 2017) ........................................................ 7, 15

*Pension Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*,
  374 F.3d 362 (5th Cir. 2004) ........................................................................ 23

*Prakash v. American Univ.*,
  727 F.2d 1174 (D.C. Cir. 1984) ..................................................................... 14

*Real Truth About Abortion, Inc. v. FEC*,
  681 F.3d 544 (4th Cir. 2012) ........................................................................ 30

*Restaurant Law Ctr. v. U.S. Dep't of Labor*,
  66 F.4th 593 (5th Cir. 2023) ........................................................................ 13

*Sampson v. Murray*,
  415 U.S. 61 (1974) ...................................................................................... 29

*Sebelius v. Auburn Reg'l Med. Ctr.*,
  568 U.S. 145 (2013) ..................................................................................... 20

*Skyworks, Ltd. v. CDC*,
  542 F. Supp. 3d 719 (N.D. Ohio 2021) ........................................................... 30

*Southdown, Inc. v. Moore McCormack Res., Inc.*,
  686 F. Supp. 595 (S.D. Tex. 1988) ................................................................ 24

iv

*Star Satellite, Inc. v. City of Biloxi*,
  779 F.2d 1074 (5th Cir. 1986) ............................................................. 24

*Starbucks Corp. v. McKinney, et. al*,
  602 U.S. —, 2024 WL 2964141 (2024) ................................................ 29

*Steiner v. Mitchell*,
  350 U.S. 247 (1956).............................................................................. 19

*Sw. Elec. Power Co. v. U.S. EPA*,
  920 F.3d 999 (5th Cir. 2019) ............................................................... 28

*Texas v. Becerra*,
  577 F. Supp. 3d 527 (N.D. Tex. 2021) ................................................. 30

*Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  No. 6:23-CV-00013, 2023 WL 7116844 (S.D. Tex. Oct. 27, 2023),
  *appeal filed*, No 23-40685 (5th Cir, Dec. 1, 2023) ............................... 26

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) .......................................................... 12, 13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).............................................................................. 26

*United States v. Texas*,
  599 U.S. 670 (2023).............................................................................. 26

*Va. Soc'y for Hum. Life, Inc. v. FEC*,
  263 F.3d 379 (4th Cir. 2001) ............................................................... 30

*Walling v. Morris*,
  155 F.2d 832 (6th Cir. 1946) .......................................................... 14, 20

*Walling v. Yeakley*,
  140 F.2d 830 (10th Cir. 1944) ..................................................... 14, 17, 20

*Watterson v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  No. 4:23-CV-80, 2024 WL 897595 (E.D. Tex. Mar. 1, 2024) ............... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)............................................................. 10, 11, 17, 18

*Wirtz v. Miss. Publishers Corp.*,
  364 F.2d 603 (5th Cir. 1966) ...................................................... 7, 14, 15

## Statutes

5 U.S.C. § 705 ................................................................................................ 10, 28, 29

29 U.S.C. § 206(a)(1) .............................................................................................. 3

29 U.S.C. § 213(a)(1) ...................................................................................... 3, 5, 13

29 U.S.C. § 213(a)(15) ...................................................................................... 16, 17

41 U.S.C. § 6701 ................................................................................................... 19

41 U.S.C. § 6701(3)(C) ......................................................................................... 19

Pub. L. No. 87-30, 75 Stat. 65 (1961) ............................................................... 5, 20

Pub. L. No. 89-601, 80 Stat. 830 (1966) ........................................................... 5, 20

Pub. L. No. 93-259, 88 Stat. 55 (1974) ................................................................. 16

Pub. L. No. 94-489, 90 Stat. 2358 (1976) ............................................................ 19

Pub. L. No. 101-583, 104 Stat. 2871 (1990) .................................................... 5, 20

## Legislative Materials

*Administrative Procedure Act*, S. Doc. No. 79-248 (1946) ................................... 29

Fair Labor Standards Amendments of 1949, 81 Cong., 63 Stat. 920 ................... 4, 18

122 Cong. Rec. 31,566 (Sept. 21, 1976) (statement of Rep. Perkins) .................... 20

## Regulations

29 C.F.R. pt. 541 .................................................................................................... 5

29 C.F.R. § 541.100 ............................................................................................... 6

29 C.F.R. § 541.600 ............................................................................................... 8

3 Fed. Reg. 2518 (Oct. 20, 1938) ............................................................................ 5

5 Fed. Reg. 4077 (Oct. 15, 1940) ............................................................................ 5

14 Fed. Reg. 7705 (Dec. 24, 1949) ......................................................................... 6

69 Fed. Reg. 22,122 (Apr. 23, 2004) .............................................................. 6, 7, 21

81 Fed. Reg. 32,391 (May 23, 2016) ................................................................... 6, 7

84 Fed. Reg. 51,230 (Sept. 27, 2019) .................................................................. *passim*

88 Fed. Reg. 62,152 (Sept. 8, 2023) ........................................................................ 8

89 Fed. Reg. 32,842 (Apr. 26, 2024) ................................................................. *passim*

**Other Authorities**

11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. June 2024 update) ............................... 12

*Bona fide*,
   1 Oxford English Dictionary (1933 ed.) ........................................................... 18

*Capacity*,
   Oxford English Dictionary 89 (1933 ed.) ........................................................ 18

Colorado Six-Day-Week Law, 1937 Colo. Sess. Laws 418 ........................................ 4

Female Labor Act for Arkansas, Walter L. Pope & C.M. Buck, *Digest of the Statutes of Arkansas*, ch. 108, §§ 9084-9090, 1921, amended by Act 33, Laws 1937 ................................. 4

Tex. H.B. 1 (effective Sept. 1, 2024) ...................................................................... 11

H.R. 15246 ....................................................................................................... 20

**INTRODUCTION**

Since Congress enacted the Fair Labor Standards Act (FLSA) more than 80 years ago, the Department of Labor has consistently used a minimum salary level as one component of the test for identifying "executive, administrative, or professional" (EAP) employees who are not protected by the FLSA's minimum wage and overtime pay requirements. The Fifth Circuit has upheld the use of a minimum salary as a component of those regulations, and Congress has ratified that approach. The Department has periodically revised the minimum salary component of the EAP exemption regulations. The most recent update before the one at issue here occurred in 2019, when the Department updated the minimum salary to account for then-current wage data.

The 2024 EAP Rule adjusts the minimum salary component in three distinct ways that occur at different times. Although Texas challenges all the adjustments, it concedes that only one will take place on July 1, 2024: an initial update to the minimum salary level to account for current wage data (the "wage growth update"). As Texas acknowledges, this wage growth update uses the same methodology that the Department used in the 2019 EAP Rule and, like that rule, the wage growth update simply takes into account current wage data (that is, the growth in salaried worker earnings since the 2019 update to the minimum salary level).

Texas concedes that the 2024 EAP Rule's two other adjustments to the minimum salary level will have no practical application as to anyone until January 1, 2025, and then (at the earliest) July 1, 2027. Those adjustments are not properly the subject of a preliminary-injunction motion because they are not imminently applicable and instead should be addressed through expedited summary-judgment briefing. Accordingly, Defendants focus on the wage growth update.

The Court should deny the extraordinary preliminary relief that Texas seeks because the State fails to show that the wage growth update will cause it irreparable harm during the relevant

time period. Its declaration represents that, statewide, the July 1 update will cause 88 state employees to lose their exempt status, and that this figure will fall to 16 employees on September 1 due to salary increases mandated by Texas law. The declaration does not represent that any of the affected employees previously worked overtime hours or that they are substantially likely to do so in the near future, before the Court has an opportunity to resolve this case on the merits. The record is thus devoid of any basis for the Court to conclude that Texas faces an imminent risk of irreparable harm, and Texas's motion should be denied on that ground alone.

In any event, the wage growth update is a lawful exercise of the Secretary of Labor's express statutory authority to define and delimit the EAP exemption. Texas admits that this update is analogous to the 2019 EAP Rule, which Texas did not challenge. The wage growth update applies current wage data to the salary level methodology employed in the 2019 Rule—that is, the 20th percentile of weekly earnings of full-time salaried workers in the lowest-wage Census Region, currently the South, and/or in the retail industry nationally. Notwithstanding that the Department has included a minimum salary component in all EAP rules since the enactment of the FLSA in 1938, Texas now contends that the FLSA never allowed the Department to do so. That claim is foreclosed by circuit precedent. It also lacks support in the decision by another judge in this district on the 2016 EAP Rule, on which Texas relies, for there the court was careful to note that the Department has the authority to include a minimum salary component in an EAP rule.

The balance of the equities also disfavors preliminary relief. The salary threshold established in the 2019 Rule has not kept up with wage growth. Enjoining or staying the wage growth update would exclude workers from overtime protections by maintaining a salary level that recent wage growth has rendered increasingly ineffective.

Finally, even assuming that Texas could establish entitlement to preliminary relief, the

relief it seeks—enjoining or postponing enforcement of the 2024 EAP Rule with respect to all employees nationwide—is vastly overbroad. Both a preliminary injunction and a stay under 5 U.S.C. § 705 are equitable remedies that may be no broader than necessary to prevent a party's documented harm.

For all of these reasons, the Court should deny Texas's motion for preliminary relief and set an expedited schedule for summary judgment that enables the Court to decide the merits of this case before January 1, 2025.

## BACKGROUND

### 1.    Statutory Background

The FLSA generally requires covered employers to pay their employees at least the federal minimum wage (currently $7.25 an hour) for all hours worked, and an overtime premium of one and one-half times the employees' regular rate of pay for any hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1). Among other exemptions, however, Section 13(a)(1) of the FLSA exempts from both the minimum wage and overtime protections "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary[]" of Labor ("EAP exemption"). 29 U.S.C. § 213(a)(1). The FLSA does not define "bona fide executive, administrative, or professional capacity," but instead expressly authorizes the Secretary of Labor to define and delimit these terms through regulation. *Id.*

The Section 13(a)(1) exemption is premised on the understanding that individuals employed in a bona fide executive, administrative, and professional capacity typically earn salaries well above the minimum wage and enjoy other privileges to compensate them for their long hours of work, setting them apart from nonexempt workers entitled to overtime pay. *See* Report of the

Minimum Wage Study Commission, vol. IV, at 236, 240 (May 1981) ("Commission Report"); Stein Report at 19.[1] The exemption was based on provisions contained in the National Industrial Recovery Act of 1933 and state law precedents. Commission Report, vol. IV, at 240. Codes adopted under the National Industrial Recovery Act that exempted executive, administrative, and professional employees from maximum-hour requirements typically included a salary requirement. *See* Stein Report at 20. Likewise, state wage-and-hour laws in effect around the time of the FLSA's enactment often included a salary requirement in their exemptions for executive, administrative, and supervisory employees. *See, e.g.*, Female Labor Act for Arkansas, Walter L. Pope & C.M. Buck, *Digest of the Statutes of Arkansas*, ch. 108, §§ 9084-9090, 1921, amended by Act 33, Laws 1937; Colorado Six-Day-Week Law, 1937 Colo. Sess. Laws 418; *see also* Stein Report at 20 (noting ten state wage-and-hour laws in effect in 1939 that exempted executive, administrative, and supervisory employees based on a salary qualification).

When Congress amended the FLSA in 1949, it established that "[a]ny . . . regulation . . . of the Administrator of the Wage and Hour Division" then in effect under the FLSA—which, as explained below, included a salary level test for the EAP exemption—and not "inconsistent with the provisions of" the FLSA "shall remain in effect." Fair Labor Standards Amendments of 1949, 81 Cong., ch. 736, § 16(c), 63 Stat. 920. Beginning in the 1960s, Congress amended Section 13(a)(1) several times to alter the universe of executive, administrative, and professional

---

[1] In 1940, 1949, and 1958, the Department published reports when it revised its Part 541 regulations, which implement the EAP exemption. *See* Wage and Hour Division, U.S. Dep't of Labor, *Executive, Administrative, Professional . . . Outside Salesman Redefined: Report and Recommendations of the Presiding Officer [Harold Stein] at Hearings Preliminary to Redefinition* (Oct. 10, 1940) ("Stein Report"); Wage and Hour Division, U.S. Dep't of Labor, *Report and Recommendations on Proposed Revisions of Regulations, Part 541, Harry Weiss, Presiding Officer* (June 30, 1949) ("Weiss Report"); Wage and Hour Division, U.S. Dep't of Labor, *Report and Recommendations on Proposed Revision of Regulations, Part 541, Harry S. Kantor, Presiding Officer* (Mar. 3, 1958) ("Kantor Report").

employees eligible for the exemption. *See* Pub. L. No. 87-30 § 9, 75 Stat. 65, 71 (1961) (adjusting for expansion of FLSA coverage to retail employees); Pub. L. No. 89-601 § 214, 80 Stat. 830, 837 (1966) (exempting teachers and academic administrative personnel); Pub. L. No. 101-583 § 2, 104 Stat. 2871 (1990) (instructing the Secretary to promulgate regulations exempting computer professionals). None of these amendments precluded use of a salary level test, nor did they instruct the Department to use a test for exemption based solely on job duties.

### 2.    Pre-2024 Regulatory History

For over 80 years, the Department's Part 541 regulations generally have used three criteria to define and delimit the terms "bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1). With some exceptions, for an employee to be exempt, (1) the employee must be paid on a salary basis (salary basis test); (2) the employee must receive a minimum salary amount (salary level test); and (3) the employee's job must primarily involve executive, administrative, or professional duties (duties test). *See* 29 C.F.R. pt. 541.

The original 1938 regulations set the minimum compensation level at $30 per week for exempt executive and administrative employees. 3 Fed. Reg. 2518 (Oct. 20, 1938). Two years later, following extensive public hearings, the Department retained the $30 per week level for executive employees and established a $50 per week ($200 per month) salary level for administrative and professional employees. *See* 5 Fed. Reg. 4077 (Oct. 15, 1940); Stein Report at 1-2. During the hearings, the view that the Administrator lacked authority to use a salary level test "had little support," and stakeholders—including many employers—generally agreed on the desirability of a salary level test. *See* Stein Report at 5, 19.[2]

---

[2]  This consensus has endured. *See* 89 Fed. Reg. 32,842, 32,850 (Apr. 26, 2024) ("the overwhelming majority of commenters did not oppose the use of salary criteria in the [2024] part 541 regulations or address the Department's authority, and a number of employer representatives

The Department has always paired the salary level test with a duties test that a worker also must meet to be subject to the EAP exemption.  Under the duties test, the employee's job duties must primarily involve executive, administrative, or professional duties, as defined and delimited in the Department's regulations. *See* 29 C.F.R. §§ 541.100, 541.200, 541.300. Since 1940, the regulations also have required that the employee be paid on a salary basis, defined as a predetermined and fixed salary that is not subject to reduction because of variations in the quality or quantity of work performed.  *See id.* § 541.602.

In 1949, the Department developed a two-tiered structure for assessing compliance with the salary level and duties tests.  14 Fed. Reg. 7705 (Dec. 24, 1949). Employers could satisfy either a "long" test based on the pre-1949 test, which combined a more rigorous duties test with a lower salary level, or a "short" test, which combined a less rigorous duties test and a higher salary level. *Id.* at 7706; 84 Fed. Reg. 51,230, 51,232 (Sept. 27, 2019).  The long test contained a bright-line, 20% limit on the amount of time an employee could spend performing nonexempt work (such as manual labor or clerical tasks) and still meet the exemption.  *See* 14 Fed. Reg. at 7706. The short test, in contrast, used a primary duty test and did not limit the amount of time a higher-earning employee could spend on nonexempt duties and still be treated as exempt.  *See id.*; *see also* Weiss Report at 22-23.  In justifying the pairing of a higher salary level with the less rigorous short test, the Department explained that "the higher the salaries paid the more likely the employees are to meet all the requirements for exemption, and the less productive are

---

expressed general support for the use of earnings thresholds"); 84 Fed. Reg. at 51,238-39 ("commenters to the [2019] NPRM overwhelmingly agreed that the salary level should be increased"); 81 Fed. Reg. 32,391, 32,422 (May 23, 2016) ("a small number of commenters [to the 2015 NPRM] . . . suggested that the Department should eliminate the salary level test entirely[]"); 69 Fed. Reg. 22,122, 22,172 (Apr. 23, 2004) ("many commenters oppose[d]" the suggestion from "several commenters" to the 2003 NPRM to eliminate the salary level test).

the hours of inspection time spent in analysis of the duties performed." Weiss Report at 22-23. The Department retained the "long" and "short" test structure for the next five decades, updating the salary levels in 1958, 1963, 1970, and 1975.

In 2004, the Department revised the salary level and duties components of the EAP exemption regulations. 69 Fed. Reg. at 22,122. The passage of time had left the long test salary levels below the amount a minimum wage employee earned for a 40-hour week, and even the short test salary level was not far above the minimum wage. *Id*. at 22,164. The Department determined that "[r]evisions to both the salary tests and the duties tests [were] necessary to restore the overtime protections intended by the FLSA which [had] eroded over the decades." *Id.* at 22,122. The Department chose to simplify and streamline the regulations by replacing the separate long and short tests with a single "standard" test, which paired a "standard" salary level test of $455 per week with a "standard" duties test for executive, administrative, and professional employees. *See id.* at 22,122, 22,126. The salary level was equivalent to the 20th percentile of weekly earnings of full-time salaried workers in the South and/or retail industry nationwide.

In 2016, the Department published a final rule that, among other things, would have changed the methodology used to determine the minimum salary level, which would have increased the salary level from $455 to $913 per week. 81 Fed. Reg. at 32,391. That rulemaking was challenged in this district. The court enjoined the Department from implementing and enforcing the rule, and ultimately concluded that the rule's new methodology was impermissible. *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016); *Nevada v. U.S. Dep't of Labor*, 275 F. Supp. 3d 795 (E.D. Tex. 2017). But the court was careful in its summary-judgment opinion to recognize that, under binding Fifth Circuit precedent, "the Department has the authority to implement a salary-level test." 275 F. Supp. 3d at 805 & n.5 (citing *Wirtz v. Miss. Publishers*

*Corp.*, 364 F.2d 603, 608 (5th Cir. 1966)).

Although the Department appealed the *Nevada* decision, it asked the Fifth Circuit to hold the appeal in abeyance in light of new rulemaking that began after the change of administration. In 2019, the Department issued a final rule updating the EAP exemption regulations. 84 Fed. Reg. at 51,230. Commenters disagreed on how much to raise the salary level, but employee groups and employer representatives "overwhelmingly agreed that the salary level should be increased." *Id.* at 51,233, 51,238-40. In response to a few commenters who "questioned whether the Department has authority to have a salary level at all," the Department explained that it is "well established" that the "FLSA's delegation of authority to the Secretary of Labor to 'define[] and delimit[]' the terms of the section 13(a)(1) exemption includes the authority to set a salary level." *Id.* at 51,239 (citing cases). The Department updated the standard salary level by applying contemporaneous data to the methodology used in the 2004 rule. This meant that the salary level was set to match the 20th percentile of earnings of full-time salaried workers in the lowest-wage Census Region (the South) and/or in the retail industry nationally. *Id.* at 51,237. This produced the current salary level of $684 per week. *Id.* at 51,238; *see, e.g.*, 29 C.F.R. § 541.600. Texas did not sue. The U.S. District Court for the Western District of Texas recently rejected the only challenge to that rule— brought by a single employer, which did not seek preliminary injunctive relief. *Mayfield v. U.S. Dep't of Labor*, No. 1:22-cv-792-RP, 2023 WL 6168251 (W.D. Tex. Sept. 20, 2023), *appeal pending*, No. 23-50724 (5th Cir.) (argument tentatively set for week of August 5).

**3.    2024 Final Rule**

On September 8, 2023, the Department published a notice of proposed rulemaking to update and revise the EAP exemption regulations. 88 Fed. Reg. 62,152 (Sept. 8, 2023). The Department received approximately 33,300 comments and issued its final rule on April 26, 2024. 89 Fed. Reg. at 32,842, 32,847. As in prior rules, the Department agreed with the "overwhelming

majority" of commenters that, explicitly or implicitly, endorsed maintaining a role for the salary level in determining whether employees are employed in a bona fide executive, administrative, or professional capacity. *Id.* at 32,868. The Department disagreed with the small number of commenters asserting that a salary level test was unauthorized, reiterating in part its explanation from its 2019 Rule that an employee's salary level "is a helpful indicator of the capacity in which an employee is employed." *Id.* at 32,867 (quoting 84 Fed. Reg. at 51,239).

The 2024 EAP Rule makes distinct adjustments to the standard salary level test. To account for the significant growth in salaried worker earnings since the Department last updated the salary level test more than four years ago, the 2024 EAP Rule increases the salary level beginning July 1, 2024, by applying current wage data to the 2019 EAP Rule's methodology for setting the salary level—*i.e.*, the 20th percentile of earnings of full-time salaried workers in the lowest-wage Census Region (the South) and/or in the retail industry nationally. *Id.* at 32,855. This results in a salary level of $844 per week. The Department observed that the size of the initial increase ($160 per week) is less than the $229 per week increase implemented by the 2019 EAP Rule, and the 23% salary level increase is less than the 24% growth in earnings for full-time wage and salary workers nationally that has occurred since the issuance of the 2019 EAP Rule. *Id.* at 32,848-49, 32,855.

In the 2024 EAP Rule, the Department also establishes a new methodology for setting the minimum salary level, which will become applicable on January 1, 2025. That methodology sets the salary level at the 35th percentile of weekly earnings of full-time workers in the lowest-wage Census Region (the South). The Department sought to accomplish two objectives by using this methodology. First, the Department wanted to fully restore the salary level's function of screening obviously nonexempt employees from the exemption—a function requiring a salary level equivalent to at least the historic long test salary level ($942 per week using current data). *Id.* at

32,868-69. Second, the Department aimed to account for the shift in the 2004 rule from a two-test to a one-test system by selecting a methodology that would restore overtime eligibility for many individuals who perform substantial amounts of nonexempt work and historically would have been protected by the long test, while also addressing concerns that the salary level should not be determinative of exemption status for too many individuals. *Id.* at 32,870. The Department explained that its approach would more effectively identify who is employed in a bona fide EAP capacity and more reasonably distribute the impact of the shift to a one-test system between employers and employees. *Id.* at 32,870. The new methodology produces a salary level of $1,128, which the 2024 EAP Rule makes applicable on January 1, 2025.

## LEGAL STANDARD

Preliminary injunctive relief—whether in the form of a TRO, preliminary injunction, or a stay under 5 U.S.C. § 705—is an "extraordinary and drastic remedy." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). As such, it "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021). To obtain preliminary injunctive relief, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that a balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for a stay under § 705 is the same as the standard for issuing a preliminary injunction. *See Watterson v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 4:23-CV-80, 2024 WL 897595, at *20 (E.D. Tex. Mar. 1, 2024).

## ARGUMENT

**1.    Texas Fails to Establish That Any Irreparable Harm Will Occur Before This Court Has the Opportunity to Resolve This Case on the Merits.**

The purpose of a preliminary injunction is to maintain the status quo and prevent irreparable harm that will occur before the court has the opportunity to resolve a dispute on the merits. *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958). Texas's declaration fails to demonstrate any such harm. That declaration represents that 88 state employees will lose exempt status on July 1 due to the wage growth update, and that this number will fall to 16 state employees on September 1, due to salary increases required by Texas law.[3]

Even as to this small number of affected state employees, the declaration does not represent that any of those employees is routinely assigned to work overtime hours or will be assigned to work overtime hours before this Court has the opportunity to decide this case on the merits. The declaration thus fails to demonstrate that the State will experience *any* financial effects, let alone irreparable harm, from the wage growth update during the relevant period. Texas has therefore failed to meet its burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22; *see BioTE Med., LLC v. Jacobsen*, 406 F. Supp. 3d 575, 584 (E.D. Tex. 2019) (movant "must demonstrate" "threat of irreparable harm by independent proof[]"); *Mitchell v. Sizemore*, No. 09-cv-348, 2010 WL 457145, at *3 (E.D. Tex. Feb. 5, 2010) ("vague and conclusory" allegations of harm do not suffice).

Texas contends that it would otherwise be harmed if it chose to raise the referenced employees' salaries "to the minimum salary level" or "prohibit[]" those employees "from working

---

[3] Under Texas law, state employee salaries will increase by 5%, or at minimum $3,000, starting September 1, 2024. *See* Tex. H.B. 1 (effective Sept. 1, 2024); Decl. of Murl E. Miller, ¶¶ 12–13, ECF No. 2-1.

more than 40 hours per week." Pl.'s Mot. for TRO at 13, ECF No. 2 ("Mot."). But the wage growth update does not require any employer to raise any employee's salary or to prohibit any employee from working overtime hours. Voluntary actions do not establish irreparable harm. 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. June 2024 update) ("party may not satisfy the irreparable harm requirement if the harm . . . is self-inflicted").

As a fallback, Texas asserts that it will incur "compliance costs." But it is well established that "an injury resulting from attempted compliance with government regulation ordinarily is not irreparable harm." *Chamber of Commerce v. Hugler*, No. 3:16-cv-1476-M, 2017 WL 1062444, at *2 (N.D. Tex. Mar. 20, 2017) (citation omitted); *see also, e.g.*, *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) (collecting cases) ("Any time a corporation complies with a government regulation that requires corporation action, it spends money and loses profits; yet it could hardly be contended that proof of such an injury, alone, would satisfy the requisite for a preliminary injunction." (citation omitted)). Texas insists that "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." Mot. at 13 (quoting *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016)). But this selective quotation from *Texas v. EPA* cannot bear the weight that Texas places on it. That case involved regulatory standards that the record demonstrated would require regulated entities to either install emission controls or close facilities at a cost of $2 billion and "threaten the very existence of some of Petitioner's businesses." *Texas v. EPA*, 829 F.2d at 433. In stark contrast, here, Texas only generally alleges a hypothetical need to "review . . . policies statewide," revise its policies, and develop "training and educational materials."[4] Mot. at 13. But the FLSA already requires Texas to

---

[4] Texas's motion refers to "discrimination policies," Mot. at 13, but no discrimination policies bear any relation to the EAP Rule, and Texas offers no explanation on this point. It is similarly unclear

have overtime policies and "train[] and educat[e]" employees about those requirements. And Texas does not specify any affected policies, nor substantiate the need for training and educational materials due to the wage growth update, in either its motion or its proffered declaration. Texas's "vague and conclusory allegation[s]," *Mitchell*, 2010 WL 457145, at *3 (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991)), are insufficient to establish that it will experience "more than de minimis" harm, which is required for injunctive relief, *Restaurant Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593 (5th Cir. 2023) (quoting *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)).[5]

Moreover, Texas cannot demonstrate irreparable injury from the 2024 EAP Rule's other salary level adjustments—the January 1, 2025 increase and the subsequent updates beginning no earlier than July 1, 2027—to warrant preliminary relief, as there is sufficient time for the Court to decide the merits of those updates *before* those updates occur. Thus, those updates can be addressed at summary-judgment briefing. The State's request for preliminary relief therefore "should be denied, and there is no need for the [C]ourt to address the other requirements for a preliminary injunction." *Butts v. Aultman*, 953 F.3d 353, 361 (5th Cir. 2020).

## 2.    Plaintiffs Are Unlikely to Succeed on the Merits Because the Wage Growth Update to the Salary Level Test Is Lawful.

The FLSA explicitly authorizes the Department to "define[] and delimit[]" the terms "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Department lawfully exercised this authority in crafting the wage growth update using the methodology of the

---

whether the "training and educational materials" to which Texas refers, *id.*, is likewise applicable to unknown discrimination or other policies unrelated to the EAP Rule challenged here.

[5] The implicit suggestion that the State will incur significant expenses from adjusting materials to update one weekly salary number ($684) to another ($844) is implausible.

2019 Rule. Texas's argument that the wage growth update exceeds the Department's statutory authority because it makes salary determinative of exemption status for an additional one million employees boils down to a claim that the Department has no statutory authority to use *any* minimum salary as a component of the EAP regulations. This argument is foreclosed by circuit precedent. The text and structure of the FLSA support the Department's approach, as does Congress's repeated ratification of the salary level test. Texas is therefore not likely to succeed on the merits of its statutory-authority claim. Texas is equally unlikely to succeed in its duplicative effort to label the wage growth update's salary level as arbitrary.

A.    **The Fifth Circuit has already upheld the Department's authority to use a salary level test.**

Binding circuit precedent forecloses Texas's claim that the Department may not rely on a salary test to help define and delimit the EAP exemption. In *Wirtz v. Mississippi Publishers Corp.*, the Fifth Circuit expressly rejected the contention that "the minimum salary requirement is not a justifiable regulation under Section 13(a)(1) of the Act because [it was] not rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity.'" 364 F.2d at 608. The court reasoned that "[t]he statute gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide executive . . . capacity,'" and it rejected the argument "that the minimum salary requirement is arbitrary or capricious." *Id*. (citation omitted). Indeed, every circuit court to consider the question has upheld the Department's use of a salary level test. *See Walling v. Yeakley*, 140 F.2d 830, 832-33 (10th Cir. 1944); *Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216, 218 (2d Cir. 1944); *Walling v. Morris*, 155 F.2d 832, 836 (6th Cir. 1946), *vacated on other grounds*, *Morris v. McComb*, 332 U.S. 422 (1947); *Prakash v. American Univ.*, 727 F.2d 1174, 1177-78 & 1178 & n.19 (D.C. Cir. 1984).

Texas's motion fails even to cite—let alone grapple with—*Wirtz*, notwithstanding that this

14

"Court recognizes *Wirtz* is controlling and stands for the proposition that the Department has the authority to implement a salary-level test." *Nevada*, 275 F. Supp. 3d at 805 n.5. In its Complaint, Texas dismisses *Wirtz* as "conclusory." Compl. ¶ 124, ECF No. 1. But binding authority from the court of appeals cannot be brushed off so easily. As another judge recently explained in rejecting a challenge to the 2019 EAP Rule, the Fifth Circuit's decision in *Wirtz* was "expressly based on fidelity to the statutory text." *Mayfield*, 2023 WL 6168251, at *3. Contrary to Texas's suggestion, the Fifth Circuit in *Wirtz* (1) cited the FLSA, (2) directly quoted the statute, and (3) held that the EAP regulations' salary requirement clearly accorded with the statute. 364 F.2d at 608 (rejecting the contention that the Department's use of a salary-level test "is not a justifiable regulation" because salary level is "not rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity'"). No more is required for an appellate court to decide a legal question. *See Nevada*, 275 F. Supp. 3d at 805 n.5. *Wirtz* dooms Texas's claim.

## B.    The salary level test is wholly consistent with, and certainly not manifestly contrary to, the FLSA.

In addition to being foreclosed by circuit precedent, Texas's position fails on its own terms. Texas's *Chevron* argument misses the mark because *Chevron* steps one and two apply only when Congress *implicitly* grants an agency authority. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 844 (1984) ("Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."). Here, however, Congress *expressly* granted the Department the authority to define and delimit the EAP exemption. *See id.* at 843-44 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). Regulations implementing Section 13(a)(1), therefore,

"are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844.[6] Texas falls well short of establishing that the salary level test is manifestly contrary to Section 13(a)(1).

The Supreme Court underscored the importance of the FLSA's express delegation of authority to the Department when it considered a parallel FLSA exemption for "any employee employed in domestic service employment to provide companionship services . . . *as such terms are defined and delimited by regulations* of the Secretary" of Labor. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (emphasis added) (quoting 29 U.S.C. § 213(a)(15)). The question in *Coke* was whether this exemption applies to employees who are hired by "third-party employers" such as home care agencies. *Id*. at 174-75. The Supreme Court held that this question was a matter for the agency to decide. It explained that "the FLSA explicitly leaves gaps, for example, as to the scope and definition of statutory terms such as 'domestic service employment' and 'companionship services,'" and that it "provides the Department with the power to fill these gaps through rules and regulations." *Id*. at 165 (citing 29 U.S.C. § 213(a)(15); Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (1974)). The Court emphasized that "[t]he subject matter of the regulation in question concerns a matter in respect to which the agency is expert, and it concerns an interstitial matter, *i.e.*, a portion of a broader definition, the details of which, as we said, Congress entrusted the agency to work out." *Id*.

Here, too, the question whether to treat a salary level as an attribute of "bona fide executive, administrative, or professional capacity" is an interstitial matter that Congress entrusted to the Secretary. The question is not whether that phrase explicitly requires a salary level test, but whether

---

[6] Accordingly, the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, No. 22-451 (filed Nov. 10, 2022), and *Relentless, Inc. v. Department of Commerce*, No. 22-1219 (filed June 14, 2024), are unlikely to affect this case.

the salary level test is manifestly contrary to the statute. In the absence of any such manifest conflict, "the FLSA entrusts matters of judgment such as this to the Secretary, not the federal courts." *Auer v. Robbins*, 519 U.S. 452, 458 (1997). "Congress did not see fit to leave embraced within the exempted employments every employee who might fall within the general meaning of the phrases employed, but directed the Administrator to specifically define *and delimit* such phrases." *Walling*, 140 F.2d at 832 (emphasis added). It is thus beside the point that Congress did not mention a salary test in Section 13(a)(1). *Contra* Compl. ¶ 108; *see Coke*, 551 U.S. at 168 (noting that "the text of the FLSA does not expressly answer the third-party-employment question" in rejecting argument that third-party employment regulation was inconsistent with FLSA's text). As the Supreme Court explained in *Coke*, Congress did not address whether third-party-paid workers were "employed in domestic service employment," but rather specifically called for the Secretary of Labor to define those terms. 551 U.S. at 166-67 (citing 29 U.S.C. § 213(a)(15)). The Court recognized that the case raised many questions: "Should the FLSA cover all companionship workers paid by third parties?"; "should the FLSA cover some such companionship workers[?]"; "[s]hould it cover none?" *Id.* at 167. Yet these questions did not limit the Department's discretion, in light of Congress's express grant of rulemaking authority. *Id.* at 166-68.

As discussed above, the Department has long understood the statutory phrase "bona fide executive, administrative, or professional capacity" to connote a status not attained by lower-wage workers. Stein Report at 5 (hearing participants recognized that the language of Section 13(a)(1) implies a "status" not attained by workers whose pay is close to the minimum wage); *id.* at 19 (explaining that the "term 'executive' implies a certain prestige, status, and importance"); Kantor Report at 2 ("[E]xecutive . . . impl[ies] a certain prestige, status, and importance[.]"). Contemporary dictionaries substantiate the Department's understanding. "Capacity" means

"position." *Capacity*, Oxford English Dictionary 89 (1933 ed.). An employee's position involves their work duties, but also is understood to include their pay. *See* 84 Fed. Reg. at 51,237 ("Salary is a helpful indicator of the capacity in which an employee is employed[.]").

The statute's inclusion of the term "bona fide" requires an employer's "good faith," "sincerity," or "genuine[ness]." *Bona fide*, 1 Oxford English Dictionary (1933 ed.). That requirement also reinforces the Department's longstanding interpretation of Section 13(a)(1) as permitting a salary level test, for the Department has long found that such good faith can be demonstrated through the salary the employer pays. *See* Stein Report at 5 (explaining that "the good faith specifically required by the act is best shown by the salary paid"); *id.* at 19 (explaining that the salary an employer pays an executive employee provides "a valuable and easily applied index to the 'bona fide' character of the employment for which exemption is claimed"). As both the 2019 and 2024 EAP Rules affirm, "salary level is helpful to determine who is not an exempt executive, administrative or professional employee." 84 Fed. Reg. at 51,237; *see* 89 Fed. Reg. at 32,867. In so doing, the salary test ensures that the Section 13(a)(1) exemption does not "invite evasion" of the minimum wage and overtime requirements for "large numbers of workers to whom the wage-and-hour provisions should apply." Stein Report at 19.

### C.    Congress has ratified the salary level test.

In any event, Congress's ratification of the salary level test rebuts any suggestion that Congress has not contemplated salary level rules in the Section 13(a)(1) context. By 1949, the EAP exemption regulations applying a salary level test had been in place for over a decade. "When Congress amended the [FLSA] in 1949 it provided that pre-1949 rulings and interpretations by the Administrator should remain in effect unless inconsistent with the [1949 statutory amendments]." *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 292 (1959); *see* Fair Labor Standards Amendments of 1949, ch. 736, § 16(c), 63 Stat. at 920 (ratifying "[a]ny order, regulation, or interpretation of the

Administrator of the Wage and Hour Division" then in effect under the FLSA). Indeed, Congress endorsed the Administrator's regulations knowing full well that outside groups had varying views on the wisdom of the salary level test. During hearings preceding those amendments, Congress received competing input from business groups and employee advocates. For example, the Chamber of Commerce urged *Congress*—rather than the Secretary—to set the salary level, *see* H. Subcomm. No. 4 of the Comm. of Education and Labor, Minimum Wage Standards, vol. 2, at 1019 (Oct. 28, 1947); another employer organization asked that the "the salary limitation which is now included by the Administrator" "be stricken" because it "is wholly artificial," *see id.* vol. 2, at 1375; and an employee advocacy organization proposed statutorily increasing the salary level for exemption, *see id.* at vol. 5, 1071-72. Congress accordingly "underst[ood]" and ratified the regulations imposing the salary level requirement. *See Steiner v. Mitchell*, 350 U.S. 247, 255 & n.8 (1956); *Alstate Constr. Co. v. Durkin*, 345 U.S. 13, 16-17 (1953) (declining to "repudiate an administrative interpretation of the [FLSA] which Congress refused to repudiate" in 1949).

Though Congress's 1949 ratification puts to bed any doubt about the Department's statutory authority to establish a salary level test, Congress also ratified the Department's EAP exemption regulations (which included a salary level test) in 1976. That year, Congress amended the Service Contract Act, which governs benefits and other terms of employment for service employees performing services for government contracts. *See generally* 41 U.S.C. § 6701. Congress excluded from the definition of "service employee" "any person employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in part 541 of title 29, Code of Federal Regulations, as of July 30, 1976, and any subsequent revision of those regulations." Pub. L. No. 94-489, 90 Stat. 2358 (1976). In so doing, Congress ratified the Department's EAP exemption regulations, including its salary level test. *See* 41 U.S.C.

§ 6701(3)(C) (currently codified location); *see also* 122 Cong. Rec. 31,566, 31,576 (Sept. 21, 1976) (statement of Rep. Perkins) ("Bona fide executive, administrative[,] and professional employees are excluded from coverage by present departmental regulations. H.R. 15246 maintains this exclusion and does not alter the status quo with respect to any employees presently covered.").

The history of congressional inaction provides further evidence that a salary level test is permissible under Section 13(a)(1). Congress has amended the FLSA many times since 1938, including at least three amendments to Section 13(a)(1) itself. *See* Pub. L. No. 87-30 § 9, 75 Stat. 65, 71-74 (1961) (adjusting for expansion of FLSA coverage to retail employees); Pub. L. No. 89-601 § 214, 80 Stat. 830, 837 (1966) (exempting teachers and academic administrative personnel); Pub. L. No. 101-583 § 2, 104 Stat. 2871, 2871 (1990) (instructing the Secretary to promulgate regulations exempting computer professionals). None of these amendments called the Department's longstanding salary level test into question. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change[.]" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n.66 (1982).[7] Where, as here, "Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 159 (2013) (quoting *CFTC v. Schor*, 478 U.S. 833, 846 (1986)); *see also Costanzo v. Tillinghast*, 287 U.S. 341, 345

---

[7] In hearings prior to the 1949 amendments to the FLSA, the Solicitor of Labor confirmed that the salary level test was upheld in *Walling v. Yeakley*, 140 F.2d 830 (10th Cir. 1944), and that the Department's Part 541 regulations more broadly were upheld by other courts of appeals. *See* H. Subcomm. No. 4, vol. 3, at 2765. Given the Solicitor's testimony, Congress likewise was aware of, and did not disturb, the unanimous view of the courts of appeals that the salary test was lawful. *See Walling*, 140 F.2d at 832-33; *Fanelli*, 141 F.2d at 218; *Morris*, 155 F.2d at 836; *see also Merrill Lynch*, 456 U.S. at 382 n.66.

(1932) (a court "should give great weight" to the "failure of Congress to alter or amend [a statute], notwithstanding [a] consistent construction by the department charged with its enforcement" "*even if* [the court] doubt[s] the correctness of the [administrative] ruling" (emphasis added)).

Congress's repeated decision not to disturb the Department's salary level regulations is consistent with the FLSA's purpose. The minimum wage and overtime pay requirements of the FLSA are "among the nation's most important worker protections," 69 Fed. Reg. at 22,122, and the Section 13(a)(1) exemption was premised on an understanding that the exempted workers typically earn salaries well above the minimum wage, *see* Commission Report, vol. IV, at 240. Nothing in the text, history, or purposes of the statute provides a basis to overturn the 85-year-old approach used by the agency charged with implementing the FLSA.

### D.    The 2024 EAP Rule's wage growth update uses the same methodology as the 2019 EAP Rule, which is not arbitrary and capricious.

Texas does not further its position by recouching its statutory-authority claim as an arbitrary-and-capricious claim. As Texas acknowledges, the July 1 wage growth update uses the same methodology that was used in the 2019 EAP Rule, which in turn used the same methodology that was used in the 2004 EAP Rule. *See* Mot. at 8. As in 2019, the 2024 Rule's wage growth update simply applies that methodology to current wage data.

Texas never challenged the 2019 Rule, which affected more employees nationwide than the wage growth update. *Compare* Mot. at 10 (approximately 1 million currently exempt employees will gain overtime protections as the result of the wage growth update) *with* 84 Fed. Reg. at 51,302 (approximately 1.2 million employees gained overtime protection from the 2019 update). After failing to challenge the 2019 Rule's methodology, which set the salary level at the 20th percentile of weekly earnings of full-time salaried workers in the lowest-wage Census Region (the South) and/or the retail industry nationwide, Texas's entire argument in its pending motion

here that the methodology for the wage growth update in the 2024 Rule is arbitrary and capricious is as follows:

> Defendants' use of the 20th percentile of weekly earnings of fulltime salaried workers in the lowest wage Census Region, and in the retail industry nationally, is arbitrary and capricious. It bears no relation to the statutory requirement that "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the Overtime Rule, regardless of salary.

Mot. at 12. This argument simply duplicates Texas's argument that the Department lacks the statutory authority to implement *any* salary level test. But as the *Nevada* court acknowledged in 2017, *Wirtz* forecloses that argument, and as explained above, a salary level component of the EAP exemption test accords with the text of the FLSA. For the reasons stated above, the Department has statutory authority to implement a salary level test in defining and delimiting the EAP exemption, and that test is not arbitrary or capricious. Accordingly, Texas fails to establish a likelihood of success on the merits of their claim that the wage growth update is unlawful.[8]

Texas makes only passing reference to the other updates made by the 2024 Rule which, as explained above, will not become applicable until January 1, 2025 and July 1, 2027 (at the earliest). As those updates could not possibly be the basis for preliminary relief at this time—because the Court has the opportunity to resolve this dispute at summary judgment before they take effect, *Miami Beach Fed. Sav. & Loan*, 256 F.2d at 415—Defendants are not addressing their merits, which should be comprehensively addressed through summary-judgment briefing. Defendants note, however, that Texas's first argument regarding the January 1, 2025 update repeats its view that the Department lacks statutory authority to include a salary level test in defining and delimiting

---

[8] Texas does not move for preliminary injunctive relief on the basis of the other legal theories invoked in the Complaint, such as the major questions doctrine and the nondelegation doctrine, and does not address those theories in its motion. Accordingly, Texas has not even attempted to demonstrate entitlement to emergency relief on those bases, and such relief would be unwarranted.

the EAP exemption, but that view is baseless. Texas's two remaining arguments—that the 35th percentile is arbitrary and that communities have relied on the prior EAP Rule—both fail to engage with the text and rationale of the 2024 Rule. The Department explained in detail that the 35th percentile better captures the individuals employed "in a bona fide executive, administrative, and professional capacity," by "fully restor[ing] the salary level's screening function" and "more effectively account[ing] for the switch from a two-test to a one-test system, and will reasonably distribute the impact of the shift by ensuring overtime protection for some lower-salaried employees without excluding from exemption too many white-collar employees solely based on their salary level." 89 Fed. Reg. at 32,848.[9] Similarly, the EAP Rule expressly considered employers' reliance interests, alongside other factors, when setting the updated salary level. *Id.* at 32,873 ("The Department believes that employer reliance interests should inform where the salary level is set between the long and short test levels."). These unrebutted explanations—particularly when combined with Texas's insubstantial merits arguments—preclude the Court from substituting Texas's preferences for that of the Department. *Cf. Pension Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 366 (5th Cir. 2004).

**3.    The Public Interest and Balance of the Equities Disfavor Preliminary Relief.**

Because Texas has not made the required showing of either irreparable harm or a likelihood of success on the merits, there is no need for the Court to consider the final factors in the preliminary-injunction analysis. *See, e.g.*, *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

---

[9] In the 2004 EAP Rule, the Department began using the data set of all full-time salaried workers, rather than just exempt employees, as had the long test salary level. However, the long test is far from "irrelevant," Mot. at 12, because the long test has "served as the foundation for nearly all the Department's prior rulemakings, either directly under the two-test system, or indirectly as a means of evaluating the Department's salary level methodology under the one-test system." 89 Fed. Reg. at 32,864.

But should the Court reach those factors, it should find that Texas has failed to establish them as well, for Texas has failed to demonstrate—as it must—that the threatened irreparable injury outweighs the threatened harm that the injunction would cause Defendants and third parties not before the Court, and that granting the injunction would not "be adverse to public interest." *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986); *see Southdown, Inc. v. Moore McCormack Res.*, *Inc.*, 686 F. Supp. 595, 596 (S.D. Tex. 1988) (petitioner has burden to show injunction will cause "no disservice to unrepresented third parties").

The wage growth update serves an important public interest. The update is needed to account for rapid wage growth since the 2019 salary level took effect, making the current salary level much less effective in helping to identify bona fide executive, administrative, and professional employees and resulting in many workers losing overtime protections. While $684 per week corresponded to the 20th percentile of earnings of full-time nonhourly workers in the South and/or in the retail industry nationally when the 2019 Rule was promulgated, it now corresponds to just the 12th percentile of earnings of this population. 89 Fed. Reg. at 32,846. The wage growth update will thus return overtime protections to many low-wage employees who gained those protections under the 2019 EAP Rule, only to lose them as wages grew approximately 23% in the intervening five years. *See* 89 Fed. Reg. at 32,848-49.

In contrast, as explained above, Texas has failed to establish any harm, much less more than de minimis harm, resulting from the wage growth update because it provides no evidence that any newly nonexempt state employees will be required to work more than 40 hours in a week in the period between July 1, 2024, and a final decision on the merits in this case. The balance of

harms weighs squarely against preliminary relief. [10]

**4.      Texas's Requested Relief Is Vastly Overbroad.**

For the reasons stated above, Texas is not entitled to injunctive relief or a stay. If the Court

finds that Texas has established an entitlement to emergency relief, the only appropriate remedy

would be to provide the State, in its role as an employer, targeted relief against the wage growth

update with respect to the 88 newly nonexempt employees—only 16 after September 1, 2024—

that the State identified. *See* Miller Decl. ¶ 10. There is no proper basis for either a universal § 705

stay of the 2024 EAP Rule or a universal injunction. *See* Mot. at 14 (requesting universal relief).

**A.      Any preliminary remedy may only run to Texas as an employer.**

Texas sues in its capacity as an employer, and any relief the Court enters must be specific

to Texas and any injury it has proven. The Fifth Circuit has counseled that "'nationwide injunctions

are not required or even the norm.'" *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (alteration

omitted) (quoting *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam)). Since

then, three justices of the Supreme Court have concluded that a "district court's universal

injunction defied . . . foundational principles" that "a federal court may not issue an equitable

remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries."

*Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., joined by Thomas, J., and

Alito, J., concurring in the grant of the stay) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702

(1979)); *see id.* at 931 (Kavanaugh, J., joined by Barrett, J., concurring in the grant of the stay)

("prohibiting nationwide or statewide injunctions may turn out to be the right rule as a matter of

---

[10] Texas is suing in its capacity as an employer of fewer than 100 newly nonexempt employees, rather than purporting to sue to defend a sovereign interest or on behalf of its citizens (which it cannot, *see Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) ("[A] State does not have standing as *parens patriae* to bring an action against the Federal Government." (citation omitted))). Texas cannot, therefore, attempt to rely on its citizens' interests when balancing the equities.

law"); *see also L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023) (Sutton, C.J.) (Courts "must operate in a party-specific and injury-focused manner. A court order that goes beyond the injuries of a particular plaintiff to enjoin government action against nonparties exceeds the norms of judicial power." (internal citation omitted)).

Since *Mock*, district courts in this circuit have regularly granted party-specific preliminary relief, including against agency actions with nationwide operation. *See Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 6:23-CV-00013, 2023 WL 7116844, at *6 n.5, *12 (S.D. Tex. Oct. 27, 2023) (granting "party-specific [preliminary] injunctive relief" against federal rule only as to plaintiffs with standing; declining to issue injunctive relief to state plaintiff that lacked standing), *appeal filed*, No 23-40685 (5th Cir, Dec. 1, 2023); *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, No. 4:23-CV-00830-O, 2023 WL 6613080, at *21 (N.D. Tex. Oct. 7, 2023) ("declin[ing] Plaintiffs' invitation to extend the scope of the injunctive relief nationwide . . . [and instead] cover[ing] only the parties in this lawsuit"), *appeal filed*, No 23-11138 (5th Cir., Nov. 8, 2023).

This case has been brought by one employer allegedly facing irreparable harm from the wage growth update; that one employer, at most, should benefit from an injunction against the wage growth update. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff." (citation omitted)). Because "an injunction limited to [the State] can adequately protect the [employer's] interests while the case is pending disposition on the merits, the district court [would] abuse[] its discretion in extending the preliminary injunction's protection to non-party [employers]." *Kentucky v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023); *see United States v. Texas*, 599 U.S. 670, 703 (2023) (Gorsuch, J., Thomas, J., and Barrett, J., concurring) ("[C]ourts of appeals must do their part, too, asking whether party-specific relief can adequately protect the plaintiff's interests. If so, an appellate

26

court should not hesitate to hold that broader relief is an abuse of discretion.").

Party-specific relief in this case also "protect[s] the autonomy of those who are most directly affected" by the wage growth update "so that they can decide whether and how to challenge the defendant[s'] action." *See FDA v. All. for Hippocratic Med.*, 602 U.S. —, 2024 WL 2964140, at *5 (June 13, 2024) (internal quotation omitted)( plaintiff's "desire to make a drug less available *for others*" did not satisfy the requirements of Article). For instance, the business plaintiffs in the related case, *Plano Chamber of Commerce v. Department of Labor*, 4:24-cv-468 (E.D. Tex. filed May 22, 2024), have not filed a motion to preliminarily enjoin the wage growth update. Granting relief that goes beyond Texas as an employer would not only be inequitable and overly burdensome to Defendants, but also would fail to respect the "autonomy" and decisionmaking of other employers who do not believe they are unlawfully burdened by the EAP Rule. *See All. for Hippocratic Med.*, 2024 WL 2964140, at *6 (this is the "proper—and properly limited—role of the courts in a democratic society." (citation omitted)).

### B.    Any preliminary remedy may only address the wage growth update.

As explained above, "[t]he purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985). According to Texas's motion, only the wage growth update could possibly injure the State before January 1, 2025, when the second increase in the salary level becomes applicable. Mot. at 8, 13. Enjoining or staying any part of the 2024 EAP Rule other than the wage growth update would be unwarranted because the Court has sufficient time before January 1, 2025, to reach a merits decision on the lawfulness of the 2024 EAP Rule as a whole. Accordingly, an injunction is not necessary to prevent irreparable injury from any other aspect of the EAP Rule. Regardless of whether the Court finds Texas has established an entitlement to preliminary relief—and it should not—Defendants

respectfully request that the Court defer consideration of relief as to any aspect of the EAP Rule beyond the wage growth update and enter an expedited briefing schedule for cross-motions for summary judgment that allows the Court to issue a merits decision on the 2024 EAP Rule as a whole in advance of January 1, 2025.[11]

Importantly, the EAP Rule contains a "[s]everability" section expressing the Department's intent "that each of this rule's provisions be considered separate and severable and operate independently from one another." 89 Fed. Reg. at 32,886. If the Court preliminarily enjoins the wage growth update, "the Department intends that . . . the [severability] provision be construed to continue to give the maximum effect to the provision permitted by law." *Id.* Typically, "[w]hether the offending portion of a regulation is severable depends upon [1] the intent of the agency and [2] upon whether the remainder of the regulation could function sensibly without the stricken provision." *MD/DC/DE Broads. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001); *accord Sw. Elec. Power Co. v. U.S. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (vacating only "the portions of the final rule" the court decided were unlawful). The EAP Rule's severability section makes clear the Department's intentions with respect to severability. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987). Thus, to the extent the Court finds any "objectionable provision[s]" in the rule, such provision should be temporarily enjoined while the remainder of the rule persists. *Id.*

### C.    A Section 705 stay must be limited according to equitable principles.

Although Texas asks for both an injunction and a stay under 5 U.S.C. § 705, it does not

---

[11] For example, Texas's motion for summary judgment could be due on July 18, Defendants' opposition and cross motion could be due on August 8, Texas's opposition and reply could be due on August 29, and Defendants' reply could be due on September 19. Defendants had proposed that the business organizations' challenge follow a similar briefing schedule, the business organizations preliminarily agreed to such a schedule, and conversations between the parties about a proposed schedule are ongoing. *See* Defs.' Advisory at 2, ECF No. 13.

meaningfully address § 705. Mot. at 14 ("Texas merits relief under Section 705 for the same reasons it satisfies the standard for a TRO."). Texas is correct that a § 705 stay is subject to the same equitable limits as an injunction: § 705 was designed "to reflect existing law . . . and not to fashion new rules of intervention for District Courts." *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974). The Supreme Court has recently instructed that "[w]hen interpreting a statute that authorizes federal courts to grant" preliminary relief, courts "do not lightly assume that Congress has intended to depart from established principles" of equity. *Starbucks Corp. v. McKinney, et. al*, 602 U.S. —, 2024 WL 2964141, at *4 (2024) (citation omitted). The APA's plain language requires courts to consider relief that merely "preserve[s] status or rights pending conclusion of the review proceedings" tailored only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. In limiting such relief "to the extent necessary to prevent irreparable injury," *id.*, the statute directs courts to apply traditional equitable principles, which include tailoring relief to be no more intrusive than necessary to prevent irreparable harm to the parties. Indeed, the House Report for the APA indicates that relief under § 705 should "normally, if not always, be limited to the parties complainant." *Administrative Procedure Act*, S. Doc. No. 79-248, at 277 (1946). So, Texas cannot receive broader relief under § 705 than it is entitled to under traditional equitable principles.

Here, to the extent the court finds that Texas has supported its claim of irreparable harm, a § 705 stay is not necessary to prevent that injury because the narrower remedy of temporarily enjoining the wage growth update as to Texas would suffice. *Cf. Chamber of Com. of the U.S. v. CFPB*, No. 6:22-CV-00381, 2023 WL 5835951, at *11 (E.D. Tex. Sept. 8, 2023) ("Enjoining an agency from acting as to only the plaintiffs, rather than vacating agency action as to even non-plaintiffs, would be the narrower path[.]"), *appeal filed*, No. 23-40650 (5th Cir. Nov. 8, 2023). At

most, Texas has alleged imminent harm from the wage growth update. Granting a stay of the EAP Rule's other provisions is significantly broader than necessary to remedy that alleged injury. *See id.*

Furthermore, if the court were to enter a § 705 stay, it should be limited to the Rule's application to Texas. Texas may argue that the APA does not allow for such party-specific relief, but that is incorrect. *See Texas v. Becerra*, 577 F. Supp. 3d 527, 562 (N.D. Tex. 2021) (rejecting the view that "nationwide [preliminary] relief was necessary because the APA instructs courts to 'set aside' unlawful agency action"). Ample precedent supports this Court's authority to provide equitable remedies under the APA only for the parties that have standing. *See, e.g.*, *GBX Assocs., LLC v. United States*, No. 1:22-cv-401, 2022 WL 16923886, at *18 (N.D. Ohio Nov. 14, 2022) (setting aside agency action only as to the plaintiff); *Skyworks, Ltd. v. CDC*, 542 F. Supp. 3d 719, 735-36 (N.D. Ohio 2021) ("the lack of a firm foundation for nationwide vacatur in the language, structure, and history of the [APA] is striking;" accordingly, setting aside agency action only as to "the parties and their members"); *cf. Va. Soc'y for Hum. Life, Inc. v. FEC*, 263 F.3d 379, 394 (4th Cir. 2001) (holding that "[n]othing in the language of the APA" requires universal vacatur and directing the district court to limit the scope of its permanent injunction to the plaintiff), *overruled on other grounds by Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012).

The Court would err if it entered any relief that goes beyond remedying Texas's alleged injury caused by the wage growth update making 88 employees nonexempt.

## CONCLUSION

For the foregoing reasons, the Court should deny Texas's motion for preliminary relief and enter a briefing schedule for the parties to file cross-motions for summary judgment that allows the Court to decide the merits of Texas's claims in advance of January 1, 2025.

Dated: June 17, 2024                       Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           JULIE STRAUS HARRIS
                                           Assistant Director, Federal Programs Branch

                                           /s/ Brian Rosen-Shaud
                                           BRIAN C. ROSEN-SHAUD
                                           CHRISTINE L. COOGLE
                                           Trial Attorneys
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L. Street, NW
                                           Washington, D.C. 20005
                                           (202) 305-7667
                                           brian.c.rosen-shaud@usdoj.gov




<u>Certificate of Service</u>

I certify that a true and accurate copy of this brief was filed electronically (via CM/ECF) on June 17, 2024 and that all counsel of record were served by CM/ECF.



                                           /s/ Brian Rosen-Shaud
                                           Brian C. Rosen-Shaud