IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STATE OF TEXAS, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. DEPARTMENT OF LABOR, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § §  Civil Action No.  4:24-cv-499 |

**PLANO CHAMBER OF COMMERCE *ET AL.*'S BRIEF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND/OR TO POSTPONE THE EFFECTIVE DATE OF THE 2024 RULE**

*/s/ Robert F. Friedman*
Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
(214) 880-8101 (Fax)
rfriedman@littler.com

Maurice Baskin (*pro hac vice* to be filed)
James A. Paretti, Jr. (*pro hac vice* to be filed)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
jparetti@littler.com

*Counsel for Amici Curiae*

*Amici Curiae*, a broad coalition of Texas and national trade associations and businesses, (hereafter the "Business *Amici*"),[1] file this brief in support of Plaintiff the State of Texas's ("Texas") Motion for Temporary Restraining Order and/or Preliminary Injunction and/or to Postpone the Effective Date of the 2024 Rule, ECF No. 2.[2]

## INTRODUCTION

Texas has filed suit challenging a rule issued by the U.S. Department of Labor ("DOL") that would dramatically—and unlawfully—raise the minimum salary required for executive, administrative, or professional ("EAP") employees to be classified as exempt from overtime pay under the Fair Labor Standards Act ("FLSA"). *See* "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 89 Fed. Reg. 32842 (April 26, 2024) (the "2024 Overtime Rule" or "2024 Rule"). The Business *Amici* have filed their own suit in this Court, *Plano Chamber of Commerce et al. v. Su*, Case No. 4:24-cv-468, likewise seeking to enjoin and vacate the DOL's unlawful rule. While the two cases have not yet been consolidated, the Business *Amici* in this brief express their support for the Texas suit and the State's motion for temporary restraining order, in order to preserve the *status quo* while the cases are jointly decided on expedited cross-motions for summary judgment.

In 2016, this Court enjoined and in 2017 struck down in its entirety a strikingly similar regulation (the "2016 Overtime Rule" or "2016 Rule") which attempted to dramatically raise the

---

[1] The Business *Amici*, as identified in their complaint, are as follows: Plano Chamber of Commerce, American Hotel and Lodging Association, Associated Builders and Contractors, International Franchise Association, National Association of Convenience Stores, National Association of Home Builders, National Association of Wholesaler-Distributors, National Federation of Independent Business, Inc., National Retail Federation, *Restaurant Law Center, Texas Restaurant Association, Cooper General Contractors, and DASE Blinds. Plano Chamber of Commerce v. Su*, Case No. 4:24-cv-468, ECF No. 1.
[2] No party or counsel to a party or other person aside from the *amici* and their counsel authored any part of this brief nor contributed money for its preparation.

1

EAP threshold. *See State of Nevada et al. v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016) *(Nevada I)*; 275 F. Supp. 3d 795 (E.D. Tex. 2017) (*Nevada II*). The *Nevada* Court found that the 2016 rule unlawfully increased the minimum salary for exemption to a level that "essentially make[s] an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level." *Id*. at 806. It likewise struck down the Rule's provision indexing automatic future increases in the salary threshold without notice or comment. *Id.* at 808.

In promulgating the 2024 Rule, defying the *Nevada* Court's previous order, DOL has issued another rule raising the minimum salary for the EAP exemption far beyond a level which it is permitted to adopt, and again including an unlawful "escalator" provision.[3] Like its predecessor, the 2024 Rule will once more "essentially make an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level," and will unlawfully "make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity employee' should be exempt from overtime pay." *Nevada II*, 275 F. Supp. 3d at 806, 807. Moreover, under the 2024 Rule, this threshold will be automatically adjusted every three years, even though DOL lacks any authority to increase this threshold in the future without providing notice and an opportunity for public comment under the Administrative Procedures Act ("APA"). *See* 89 Fed. Reg. at 32973 (29 C.F.R. § 541.607). The first phase of the

---

[3] When fully effective as of January 1, 2025, the new Overtime Rule will increase the minimum annual EAP salary threshold from the current $35,568 to $58,656, an increase of 65%. *See* 89 Fed. Reg. 32971 (29 C.F.R. § 541.600). It likewise will increase the minimum salary for exempting "highly compensated employees" ("HCEs") from $107,432 to $151,164 as of January 1, 2025 (a 41% increase over the current HCE threshold). *Id.* at 32972 (29 C.F.R. § 541.601). Specifically, the 2024 Rule first increases the EAP threshold from the current $35,568 annually to $43,888 effective July 1, 2024, with the full 65% increase to $58,656 becoming effective on January 1, 2025. 89 Fed. Reg. 32971 (29 CFR 541.600). The threshold will then increase automatically as of July 1, 2027, and every three years thereafter. *See* 29 C.F.R. 541.607. Likewise, it first raises the HCE threshold from $107,432 to $132,964 effective July 1, 2024, with the full 41% increase to $151,164 becoming effective January 1, 2025, and indexed every three years thereafter.

increased salary threshold is scheduled to take effect on July 1, 2024—less than ten days from now—with its full impact felt a mere six months later on January 1, 2025. Immediate injunctive relief is necessary to avoid irreparable harm to Texas, as well as the Business *Amici* and their members.

### INTEREST OF *AMICI CURIAE*

As noted above, the Business *Amici* are each plaintiffs in the related case in this Court challenging the 2024 Rule, *Plano Chamber of Commerce et al. v. Su*, Case No. 4:24-cv-468. Many of them were plaintiffs in the successful challenge of the 2016 Overtime Rule discussed above. The Business *Amici* include national, state, and local trade associations representing thousands of businesses employing millions of employees across the country, together with local individual businesses whose principal places of business are located in this District. Collectively and individually the Business *Amici* employ many workers who are currently exempt under the established salary threshold, whose exempt status will be jeopardized under the 2024 Rule.

The Business *Amici* intend to seek expedited summary judgment vacating the challenged 2024 Rule, and have engaged in communications with the Defendants' attorneys towards agreeing on a stipulated briefing schedule. But summary judgment briefing cannot be completed prior to July 1. Hence, granting the Texas motion for temporary restraining order will serve the valuable function of maintaining the status quo while the summary judgment motions are briefed by the parties and decided by the Court. The Business *Amici* submit that this is the most efficient way to minimize irreparable harm in the form of unrecoverable compliance costs arising from the 2024 Rule, while the parties are briefing their cross-motions. The Business *Amici* will show below that there is a strong likelihood of success in challenging the 2024 Rule, and that Texas and the Business *Amici* will suffer irreparable harm as well as meeting the public interest criteria involved

in both cases, justifying this Court's granting of Texas's motion.

## ARGUMENT

I. **Texas Is Substantially Likely to Succeed on the Merits of Its Challenge.**

Texas has shown that the 2024 Rule fails to carry out Congress's unambiguous intent and is arbitrary and capricious in violation of the APA, and is thus substantially likely to succeed on the merits of its challenge. The Business *Amici* wish to amplify certain points in further support of vacating the 2024 Rule.

A. **The 2024 Overtime Rule's Minimum Salary Threshold Exceeds DOL's Statutory Authority Under the FLSA.**

The APA directs a reviewing court to "hold unlawful and set aside agency action … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Like the invalidated 2016 Rule, the 2024 Rule goes beyond DOL's statutory authority in contravention of the intent of Congress and in violation of the APA.

The FLSA states that its overtime requirement "shall not apply" to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(l). As the *Nevada* Court previously recognized, to ascertain how the Congress that enacted the FLSA in 1938 understood these terms, a court must look to their commonly understood meanings at the time. *See Nevada II*, 275 F. Supp. 3d at 804, citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012). In directing DOL to promulgate standards identifying those employed in an "executive, administrative, or professional capacity," the assignment from Congress is to identify those employees who perform executive, administrative, or professional *functions*. This court has previously come to exactly this conclusion. *See Nevada I*, 218 F. Supp. 3d at 529 ("After reading these plain meanings in conjunction with the statute, it is clear … Congress defined the EAP exemption with regard to *duties*") (emphasis added).

4

Since it first interpreted the FLSA, DOL has consistently recognized that its authority "to define and delimit" the exemptions for "executive, administrative or professional" employees requires it to define these exemptions by reference to the job functions of employees and that, rather than merely adopting a "salary only" test, DOL may only use salary as a proxy for those job functions. *See* 2016 Overtime Rule, 81 Fed. Reg. 32446 n.84 (stating that a salary only approach is "precluded by the FLSA"); *see also* 69 Fed. Reg. at 22173 (DOL "does not have authority under the FLSA to adopt a 'salary only' test ... The Department has always maintained that the use of the phrase 'bona fide executive, administrative or professional capacity' in the statute *requires the performance of specific duties*.") (emphasis added).

While the *Nevada* Court acknowledged DOL's use of a "permissible minimum salary level" under the Fifth Circuit's holding in *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966) (now being revisited by the Fifth Circuit in *Mayfield v. U.S. Dept. of Labor*, No. 23-50724 (5th Cir.) (appeal pending, briefing completed)),[4] it rightly found that DOL's longstanding policy requires the minimum salary level to be used only as a floor to "screen[] out the obviously nonexempt employees, making an analysis of duties in such cases unnecessary." *Nevada II*, 275 F. Supp. 3d at 806, citing Harry Weiss, Report and Recommendations on Proposed Revisions of Regulations, Part 541, at 7-8 (1949). The *Nevada* Court accordingly held that "any new figure recommended should also be somewhere near the lower end of the range of prevailing salaries for these employees." *Id.*, citing Weiss, at 11-12.

---

[4] *See also Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39, 67 (Kavanaugh, J. dissenting) ("The [FLSA] focuses on whether the employee performs executive duties, not how much an employee is paid or how an employee is paid. So it is questionable whether DOL's regulations—which look not only at an employee's duties but also at how much an employee is paid and how an employee is paid—will survive if and when the regulations are challenged as inconsistent with the Act.").

The 2024 Overtime Rule's resemblance to the 2016 Rule which the *Nevada* Court struck down cannot be understated. In 2016, DOL unlawfully used a methodology based on the 40th percentile of all salaried workers in the lowest wage census region (the South),[5] eliminating the exemption for 4.2 million workers. In the 2024 Rule, it has made only the most minor adjustment to that methodology, relying as of January 1, 2025 on the 35th percentile of all salaried workers in the same region. At $1,128 per week, the new minimum salary level will result in defeating the exemption for more than four million individuals who could reasonably be classified as bona fide executive, administrative, or professional employees on the basis of their duties.[6] *See* 89 Fed. Reg. at 32882 (when 2024 Rule is fully implemented, more than 4 million workers will "without some intervening action by their employers, become entitled to overtime protection as a result of the combined effect of the initial update and the subsequent application of that new standard salary level in this rule.").

Even before the 2024 Rule is fully implemented, its initial increase of the EAP threshold—scheduled to become effective on July 1, 2024—will defeat the exemption for one million employees. *See id.* at 32843. In other words, in less than ten days, one million employees' duties, functions, tasks, and activities will not matter at all with respect to their exempt status. Thus, the Rule creates a *de facto* salary-only test for any employee earning less than $1,128 per week—a non-functional litmus test that DOL has acknowledged Congress did not authorize, *see, e.g.*, 81 Fed. Reg. at 32432-33 (salary only approach is "precluded by the

---

[5] Notably, DOL's metric for the "South" improperly includes Maryland, the District of Columbia, and Virginia, which are three of the top ten median income states.

[6] DOL projects that in the first year that the 2024 Rule is effective, more than four million employees all over the country will lose their exempt status. *See* 89 Fed. Reg. at 32900 Table 4. By Year 10, because of the automatic increases to the minimum salary level, DOL predicts that almost 6 million employees will have lost their exempt status. *Id*. These numbers are closely proximate to the number of employees whom the *Nevada* Court found would unlawfully be deprived of their exempt status in 2017.

6

FLSA")—and which this court has twice rejected. Just as in 2016, the 2024 Rule's new salary threshold is so high that it is no longer a plausible proxy for delimiting which jobs fall within the statutory terms "executive," "administrative," or "professional," contradicting the congressional requirement to exempt such individuals from the minimum wage and overtime requirements of the FLSA. Because DOL's salary test would exclude so many employees who perform these functions, it fails to perform the task required by the statute and therefore conflicts with the clear mandate of the statute. Likewise, because the salary test excludes millions of exempt employees irrespective of their job duties, DOL's Rule is not a reasonable interpretation of the FLSA.[7] By exceeding its statutory authority and adopting an unreasonable interpretation of the statute, DOL has acted arbitrarily and capriciously in violation of the APA.

**B. The 2024 Overtime Rule's Automatic Indexing Provision Exceeds DOL's Authority Under the FLSA.**

The *Nevada* Court held—twice—that a provision automatically updating the minimum salary exemption level was unlawful. *See Nevada I*, 218 F. Supp. 3d at 808; *Nevada II*, 275 F. Supp. 3d at 532. As it did in 2016, the 2024 Overtime Rule's automatic indexing provision exceeds DOL's authority under the FLSA for two reasons. First, DOL has no statutory authority to put adjustments to the EAP salary threshold on auto-pilot. Second, it may not adjust the minimum salary thresholds without comporting with the notice-and-comment requirements of the APA.

---

[7] To the extent DOL may seek to rely on so-called "*Chevron* deference" to its interpretation of the FLSA in defense of the 2024 Rule, the *Nevada* Court already determined— twice—that it is entitled to no such deference here. *See Nevada I*, 218 F. Supp. 3d at 530-531; *Nevada II*, 275 F. Supp. 3d at 806-07. Furthermore, it bears noting that the U.S. Supreme Court is expected to rule shortly on whether and to what extent *Chevron* remains good law. *See Loper Bright Enterprises v. Raimondo*, S. Ct. Docket No. 22-451 (oral argument held Jan. 17, 2023).

1. **<u>DOL Lacks Authority to Index the 2024 Overtime Rule's Minimum Salary Threshold Under the FLSA.</u>**

The plain terms of 29 U.S.C. § 213(a)(l) authorize the Secretary of Labor to "define[] and delimit[]" the meaning of the "executive, administrative, or professional" categories "*from time to time by regulations*" (emphasis added). To be sure, this authorizes the Secretary to revise the regulations setting forth the duties and functions that may legitimately be encompassed within a "bona fide executive, administrative, or professional capacity." But even if increasing the salary threshold by almost 65 percent bears some plausible connection to changes in duties performed by exempt employees today—and it does not—there is absolutely no basis to conclude that an automatic revision to the threshold triggered only three years from now will have anything to do with changes in duties. To the contrary, the indexing provision in the Rule is tied exclusively to a percentile of average salary levels for salaried employees, in a specific part the country, regardless of duties. *See* 89 Fed. Reg. at 32973 (2024 Rule § 541.607). Thus, the indexing provision in the Rule is wholly unmoored from the functions specified in the FLSA that Congress intended to serve as the lodestar for the Secretary to use in updating the EAP regulations.

And, as with the 2024 Rule's effective imposition of a discredited "salary only" test, here too DOL contradicts its prior position and legal conclusions. DOL previously disclaimed that it has the authority to use indexing when setting the salary level under the FLSA's overtime provisions. In 2004, the DOL stated that adopting a method of automatic increases is "contrary to congressional intent." 69 Fed. Reg. at 22172. "Further, the Department [found] nothing in the legislative or regulatory history that would support indexing or automatic increases." *Id.* at 22171. And, as recently as 2019, DOL declined to adopt an automatic indexing provision, citing both its conclusions in 2004 and the *Nevada* Court's invalidation of such a provision. *See* 84 Fed. Reg. 51244, 51251. Undeterred by the absence of affirmative statutory authority, DOL now asserts that

8

its prior considered view was wrong and that, after all, it may set adjustments to the salary threshold automatically because Congress has failed to expressly *prohibit* the use of indexing in 29 U.S.C. § 213(a)(l). *See* 89 Fed. Reg. at 32857. But this has it exactly backwards.

As the Fifth Circuit has repeatedly stated, the courts "do not merely presume that a power is delegated if Congress does not expressly withhold it, as then agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 269 (5th Cir. 2015) (quoting *Texas v. US. Dep't of the Interior,* 497 F.3d at 503); *accord Louisiana. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act ... unless and until Congress confers power upon it."). Thus, DOL's construction of the FLSA is not entitled to any form of interpretive deference "merely by demonstrating that 'a statute does not expressly *negate* the existence of a claimed administrative power *(i.e.,* when the statute is not written in 'thou shalt not' terms)." *Contender Farms*, 779 F.3d at 269 (quoting *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.,* 29 F.3d 655, 671 (D.C. Cir. 1994) *(en banc*; emphasis in original)). Surely, "Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). Like the underlying EAP increase, the escalator provision exceeds DOL's authority under the FLSA in violation of the APA.

### 2. DOL May Not Automatically Index Its Overtime Regulations Without Complying with the Requirements of the APA.

With certain exceptions that are not relevant here, the APA mandates that agency rules having the force and effect of law must go through the notice and comment process. 5 U.S.C. § 553(b), (c). The "notice-and-comment provisions of the APA enable [] the agency promulgating [a] rule to educate itself before establishing rules and procedures which have a

9

substantial impact on those regulated." *Global Van Lines, Inc. v. ICC,* 714 F.2d 1290, 1299 n.9 (5th Cir. 1983) (citation omitted). The 2024 Overtime Rule's indexing provision fails to comply with the FLSA because it does not follow the requirements of the APA expressly incorporated by reference into 29 U.S.C. § 213(a)(l). Under that provision, DOL may only define and delimit the exemption "as such terms are defined and delimited *from time to time* by *regulations*" promulgated by the Secretary and subject to the requirements of the APA. 29 USC 213(a) (emphases added). [8]

By design, the 2024 Overtime Rule's indexing provision forces the salary level test to automatically adjust every three years, while evading notice and comment on the change. The DOL has not hidden its desire to use indexing to avoid "difficulty with updating the earnings thresholds" as frequently as it wouldof. 89 Fed. Reg. at 32858. But the APA's notice and comment provisions must be followed regardless of whether an agency finds them "difficult." *See US. Steel Corp. v. EPA,* 595 F.2d 207,214 (5th Cir. 1979) (discussing 5 U.S.C. § 553(b)(B)). Any increase in the salary level must be based upon the comments submitted and the actual facts and information existent at the time of the increase. *Id.* The DOL cannot lawfully put the salary level test on auto-pilot and effectively immunize itself, in the absence of any authorization from the FLSA, from the procedural obligations of the APA.

Indeed, in prior rulemaking efforts, the DOL took a position consistent with the APA that changes to the salary level test should be data dependent. In 2019, DOL declined to adopt a

---

[8] DOL attempts to argue that since future updates will use the same (flawed) methodology to set the EAP threshold set forth in this regulation, it need not engage in notice-and-comment rulemaking for any future increases generated by the automatic escalator provision. *See* 89 Fed. Reg. 39,827. It cites absolutely no authority for this proposition, which in any case is undone by the text of the statute. "Statutory construction begins with the language of the statute, 'the specific context in which the language is used, and the broader context of the statute as a whole.'" *Nevada I*, 218 F. Supp. 3d at 528, citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

provision that would have committed it to engage in notice-and-comment rulemaking to increase the EAP exemption every four years, concluding that "prevailing economic conditions, rather than fixed timelines, should drive future updates." 2019 Overtime Rule, 84 Fed. Reg. 51252. This is in line with its prior conclusion that "salary levels should be adjusted when wage survey data and other policy concerns support such a change." 2004 Overtime Rule, 69 Fed. Reg. at 22171. Where, as here, an agency has reversed longstanding regulatory policy, the Supreme Court has recently reaffirmed that the agency is required to acknowledge, explain and justify its reversal, and such explanation must take into account the strong reliance interests of the regulated community concerning the original regulation. *See Encino Motorcars, LLC v. Navarro,* 136 S. Ct. 2117 (2016) (vacating DOL's reversal of policy with regard to the "service advisors" exemption from the FLSA's overtime requirements); DOL has made no credible effort to do so. The automatic escalator provision of the 2024 Rule should be set aside.

**3.    The 2024 Overtime Rule is Arbitrary, Capricious, and Otherwise Contrary to Law in Violation of the APA.**

Under the APA, a court shall hold unlawful and set aside agency action that is "arbitrary, capricious … or otherwise contrary to law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Luminant Generation Co. v. EPA,* 675 F.3d 917, 925 (5th Cir. 2012). "[S]ignificant and viable alternatives" to a proposed regulatory action must be considered, *10 Ring Precision, Inc. v. Jones,* 722 F.3d 711, 724 (5th Cir. 2013) (quotation marks omitted), and the agency must articulate a "satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor*

11

*Vehicle Manufacturers Association of US., Inc. v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43 (1983) (quotation marks omitted). If an agency fails to "cogently explain why it has exercised its discretion in a given manner," its action will be invalidated. *Id.* at 48. The 2024 Overtime Rule is arbitrary and capricious here for at least two reasons.

First, where an agency has reversed longstanding regulatory policy, the Supreme Court has recently reaffirmed that the agency is required to acknowledge, explain and justify its reversal, and such explanation must take into account the strong reliance interests of the regulated community concerning the original regulation. *See Encino Motorcars, LLC v. Navarro,* 136 S. Ct. at 2125-26 (vacating DOL's reversal of policy with regard to the "service advisors" exemption from the FLSA's overtime requirements).

The 2024 Overtime Rule disregards decades of regulatory and judicial precedent holding that the EAP exemption turned on the job functions defined in the FLSA, yet DOL failed to meaningfully address this shift. Furthermore, it is apparent from the Preamble to the Rule that DOL relied on factors that Congress did not intend for it to consider, specifically by excluding far more than the "obviously non-exempt employees" and instead excluding, based on salary alone, four million employees who are "employed in a bona fide executive, administrative, or professional capacity" who are performing exempt job duties. 89 Fed. Reg. at 32843. DOL failed to provide a reasoned explanation, consistent with this court's prior holdings and Congress's expressed intentions in the FLSA, for dramatically increasing the minimum salary standard to a level that will exclude a high percentage of all salaried employees nationally, regardless of job duties, geographic area, or size of business. To the extent that DOL acknowledged at all the regulatory change imposed by the 2024 Overtime Rule, the agency improperly minimized its departure from decades of precedent, this court's orders, and Congressional intent. DOL likewise based its new 35th percentile salary standard on grounds that run counter to the evidence before

12

the agency, specifically the false claim that the current salary threshold was improperly paired with the obsolete long duties test. *See* 89 Fed. Reg. at 32848.

Second, and relatedly, the new Overtime Rule fails to consider the strong reliance interests of the regulated community—consisting of millions of employers across the country whose business models have been built on the consistently-applied salary levels for exempt status established over the past 75 years. The methodology of 2024 Rule increases the historical benchmark applied almost universally in the past by 75 percent, raising the 20th percentile threshold applied in the past, *see supra*, to the 35th percentile as of 2025 and thereafter. *Encino Motorcars, LLC*, 136 S. Ct. at 2125-26 ("In explaining its changed position, an agency must ... be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account .... [A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy."). Again, ignoring decades of precedent and policy, DOL has violated the APA by failing to take into account long-standing reliance interests.

## II.   Texas and the Business *Amici* Will Suffer Irreparable Injury If the 2024 Rule Goes Into Effect.

If the 2024 Rule is allowed to go into effect as scheduled, in less than ten days Texas, the Business *Amici*, and employers throughout the nation will face a Hobson's Choice: either immediately increase roughly one million employees' salaries to maintain their exempt status, or reclassify them as non-exempt and pay them overtime. Once those higher salaries or overtime wages are paid, the employers are powerless to get them back. The Fifth Circuit has recognized that "substantial financial injury" may be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016). And between now and July 1, these employers will incur the costs of analyzing their exempt workforce, determining how the July 1 increase impacts it, and determining as a legal and business matter how best to comply, even though

13

"complying with a regulation later held invalid almost always produces irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433.

## CONCLUSION

For each of the reasons set forth above, the Business *Amici* respectfully request that the Court grant Plaintiff State of Texas's Motion for Temporary Restraining Order and/or Preliminary Injunction and/or to Postpone the Effective Date of the 2024 Rule.

Respectfully submitted,

*/s/ Robert F. Friedman*
Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
(214) 880-8101 (Fax)
rfriedman@littler.com

Maurice Baskin (*pro hac vice* to be filed)
James A. Paretti, Jr. (*pro hac vice* to be filed)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com

*Counsel for the Business Amici*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 21, 2024, the foregoing brief *amici curiae* was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following counsel for Defendants:

    Brian C. Rosen-Shaud
    U.S. Department of Justice-Civ
    Federal Programs Branch
    1100 L Street NW
    Room 12202
    Washington, D.C. 20530
    (202) 305-7667
    brian.c.rosen-shaud@usdoj.gov

    Christine L. Coogle
    U.S. Department of Justice-Civ
    Federal Programs Branch
    1100 L Street NW
    Washington, D.C. 20005
    (202) 880-0282
    christine.l.coogle@usdoj.gov

            */s/ Robert Friedman*
            Robert Friedman