### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| STATE OF TEXAS<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR, JULIE A. SU, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF LABOR, THE WAGE AND HOUR DIVISION OF THE DEPARTMENT OF LABOR AND JESSICA LOOMAN IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE WAGE AND HOUR DIVISION.,<br><br>*Defendants.* | CIVIL ACTION NO. 4:24-CV-00499 |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION
AND/OR TO POSTPONE THE EFFECTIVE DATE OF THE 2024 RULE**

1

## INTRODUCTION

The Department of Labor ("DOL"), in 2016, attempted to introduce a salary level test that "essentially ma[d]e an employee's duties, functions, and tasks irrelevant" when determining whether an employee qualified for the EAP Exemption to overtime pay. *Nevada v. Dep't of Labor*, 275 F. Supp.3d 795, 807 (E.D. Tex. 2017) ("Nevada II"). The regulation never took effect. This Court concluded that the test was not based on a permissible construction of the Fair Labor Standards Act ("FLSA"). It therefore preliminarily enjoined the rule, *Nevada v. Dep't of Labor*, 218 F.Supp.3d 520 (E.D. Tex. 2016) ("Nevada I"), before finding it to be unlawful and not entitled to *Chevron* deference. *See Nevada II*, 275 F. Supp.3d at 807–08.

Not content with the Court's ruling, DOL has since adopted a substantially similar salary level test in the hopes of securing a different outcome. The illegality of DOL's approach, however, remains unchanged. In their response in opposition, Defendants never distinguish the challenged overtime rule from its 2016 predecessor; nor do Defendants confront the arguments this Court cited when it held DOL's inordinate salary level test in conflict with the statute. Instead, Defendants simply assert that DOL has the authority to "define[] and delimit[]" what it means to be employed in a "bona fide executive, administrative, or professional capacity." *See* ECF 22 at 13 (quoting 29 U.S.C § 213(a)(1).

As this Court ruled in *Nevada* II, DOL's modest grant of authority cannot overcome the incongruence between the agency's policy and the statute defining the EAP Exemption. The FLSA refers only to duties, not salary. Even if DOL was at liberty to impose a minimum salary requirement (it is not), DOL does not have authority under the FLSA to make compensation the predominate factor such that it supplants a duty-based analysis and excludes from the exemption millions of employees who Congress decided should be exempt. *See* 89 Fed. Reg. 32880. (noting

that only "25.3 million out of a total of approximately 30.0 million" who meet the standard duties test earn at least the new salary level).

In addition, Defendants contend that Texas has not established an irreparable harm because DOL staggered its increases to the salary level. Defendants therefore insist that this Court wait while Texas accumulates additional injuries before granting relief. That is not the standard governing Texas's motion. When "the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction." *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). Texas has shown that it will have to spend taxpayer dollars to implement the overtime rule. Those funds are significant, and because of sovereign immunity, unrecoverable.

Texas, in short, satisfies each of the prerequisites for preliminary relief. The effective date for the overtime rule should be postponed pending a full hearing on the merits and any review by the appellate courts. In the alternative, the rule should be enjoined.

ARGUMENT

## I.    Texas is Likely to Succeed on the Merits.

### A. The Fifth Circuit Opinion, *Wirtz v. Mississippi Publishers Corp.*, Does Not Preclude Texas's Claim.

Defendants make much of the Fifth Circuit's decision in *Wirtz v. Mississippi Publishers Corp*; the decision, however, is a red herring that should have minimal bearing on the current dispute. *Wirtz* involved the narrow question of whether a minimum salary requirement was arbitrary and capricious. 364 F.2d 603, 608 (5th Cir. 1966). It did not address whether a salary requirement exceeded DOL's statutory authority in the first place. *See Thomas v. Tex. Dep't of Criminal Justice,* 297 F.3d 361, 370 n.11 (5th Cir. 2002) (noting that "[w]here an opinion fails to

3

address a question squarely, we will not treat it as binding precedent"). Furthermore, even if such a holding could be implied, it answers a question that this Court need not ask to grant Texas relief.

By its own admission, DOL lacks the power to adopt a "salary only" test for the exemption. *See*, *e.g.*, 81 Fed. Reg. 32446, 69 Fed. Reg. 22173. The plain language of the FLSA grounds the EAP Exemption to the duties that employees perform; the determination of whether an employee meets the exemption therefore should involve at least some consideration of the employee's duties. In the case of the new overtime rule, however, DOL has set the salary threshold so high that it: (1) excludes large numbers of bona fide EAP employees from the exemption; and (2) relegates the duties test to irrelevancy in favor of the employee's compensation level. The overtime rule is therefore unlawful even if DOL has the authority to utilize salary tests as a general matter. *Wirtz* provides no guidance on this front.[1]

This Court only need look at its earlier decision in *Nevada II* to appreciate that *Wirtz* poses no obstacle to Texas's claim. There, the Court noted that DOL historically utilized a minimum salary level as a floor to "screen[ ] out the obviously nonexempt employees." 275 F.Supp.3d at 806 (quoting Harry Weiss, *Report and Recommendations on Proposed Revisions of Regulations*, Part 541, at 7–8 (1949)). It concluded that such a practice was consistent with Congress's intent so long as the threshold was near the lower end of the range of prevailing salaries for EAP employees. *Id.* Nevertheless, the court held that the 2016 salary level test contravened the FLSA because DOL

---

[1] It is doubtful that the holding in *Wirtz* has any precedential weight. The panel only offered a conclusory remark at the end of its opinion, absent a substantive analysis of the statute's text or the parties' arguments. *Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021) (ruling that precedent is controlling only when the panel gives issue "reasoned consideration"). The opinion was also issued before the Supreme Court's decision in *Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984) and the Court's instruction to apply traditional tools of statutory construction.

had raised the threshold so high that it no longer acted as a plausible proxy for the job duties of an EAP employee. *Id.* at 806–807.

The same is true here. DOL estimates that "of the 12.7 million full-time salaried white-collar workers who earn less than $1,128 per week, 38 percent—about 4.8 million workers—meet standard duties test."[2] 89 Fed. Reg 32880. This means that 4.8 million workers employed in executive, administrative, and professional capacities, will nonetheless lose their EAP exemption once the new overtime rule takes effect solely because of the compensation they receive.[3] That result cannot be reconciled with the FLSA, which describes the EAP Exemption purely in terms of duties.

### B.  DOL Cannot Sidestep the Plain Language of the FLSA.

The next argument Defendants offer is that DOL has express authority to "define[] and delimit[]" what it means to be employed in a "bona fide executive, administrative, or professional capacity." ECF 22 at 13 (quoting 29 U.S.C § 213(a)(1). Defendants interpret this delegation to mean that *Chevron* does not apply and that Texas must show the challenge rule is "arbitrary, capricious, or manifestly contrary to the statute" to succeed on its claims. *Id.* at 15–16. This is incorrect as a minimum salary test does not unambiguously fall in the definition of "executive, administrative, or professional capacity." To the contrary, the ordinary, plain meaning of those

---

[2] DOL acknowledges in the same paragraph that 16 percent of all full-time salaried white-collar workers who meet the standard duties test earn below the salary level imposed by the new rule.

[3] DOL projects that in the first year that the 2024 Rule is effective, more than four million employees all over the country will lose their exempt status. See 89 Fed. Reg. 32900 & Table 4. By Year 10, because of the automatic increases to the minimum salary level, DOL predicts that almost 6 million employees will have lost their exempt status. *Id.* These numbers are closely proximate to the number of employees who this Court found would unlawfully be deprived of their exempt status because of the 2016 rule.

terms "relate to a person's performance, conduct, or function without suggesting salary." *Nevada I*, 218 Supp.3d at 529.

Texas's position is advanced by the statute's use of the words, "capacity" and "bona fide." The former is understood to mean "[t]he role in which one performs an act." BLACK'S LAW DICTIONARY 220 (8th ed. 2004); *see also* 2 THE OXFORD ENGLISH DICTIONARY 89 (1933 ed.) (defining "capacity" as ""position, condition, character, relation"). The latter means "[i]n good faith, with sincerity; genuinely." 1 THE OXFORD ENGLISH DICTIONARY (1st ed. 1933). Taken together, the FLSA presumably gives the DOL significant leeway in establishing the types of duties that might qualify for the exemption to ensure that the workers are in fact EAP employees. But to the extent that DOL has authority to institute a minimum salary test, the power is at best implied.[4]

Because the Court must identify "the gap" that Congress intended DOL to fill, Defendants belabor a distinction without a difference. Either way, this Court must apply traditional tools of statutory construction at Chevron step one and two to ascertain whether DOL's interpretation of its authority is in line with the statute.[5] However, even if the Court were to adopt the proposed standard, the 2024 overtime rule would still collapse under the weight of the statute. FLSA does not contemplate that only some EAP employees would be exempt from overtime pay. It specifies

---

[4] In the 2016 litigation, DOL conceded that Section 213(a)(1) was ambiguous in its scope. *See* Defendants' Response in Opposition to Plaintiffs' Emergency Motion For Preliminary Injunction, ECF 31 at 21–22, *Nevada v. Dept. of Labor* (E.D. Tex Oct. 31, 2016).

[5] Texas maintains that the 2024 overtime rule fails both *Chevron* steps for the reasons laid out in its prior briefing. *See* ECF 1 ¶ 60; ECF 2 at 11.

that "*any* employee employed in a bona fide executive, administrative, or professional capacity" qualifies for the exemption. 29 U.S.C § 213(a)(1) (emphasis added). Texas contends that this language precludes DOL from considering an employee's compensation altogether; at minimum, it means any salary requirement must constitute a very close and accurate proxy for EAP duties.

The challenged rule fails both rubrics. The salary cutoff ($1,128 per week) misclassifies upwards of 38 percent of the workers who make below that amount. 89 Fed. Reg 32880. The result is that about 4.8 million employees who meet the current duties test will lose their exempt status in the first year alone. *Id.* Defendants try to salvage the situation by citing to previous rulemakings, but the new salary cutoff differs in degree and kind from its predecessors. Until recently, DOL purposefully set the salary cutoff low so to avoid denying an exemption to "any substantial number of individuals that could reasonably be classified" as an EAP employee. Weiss Report at 9.  It was only in 2016 and 2024 that DOL departed from historic practice and fixed the salary cutoff at such a high rate that it ejected millions of genuine EAP employees from the exemption.

**C.  Congress Did Not Ratify Overtime Rules That Are Inconsistent with the FLSA.**

Defendants also assert that Congress has "ratified" its extratextual interpretation of Section 213(a)(1). *See* ECF 22 at 18. But that is not the case. To be sure, Congress can ratify administrative orders and similar actions on technical matters with explicit statutory language. But Congress cannot retroactively bless substantive regulations like this one that ignores "Congress's intent by raising the minimum salary level such that it supplants the duties test." *Nevada* I at 530. *See Forbes Pioneer Boat Line v. Bd. of Comm'rs of Everglades Drainage Dist.*, 258 U.S. 338, 339 (1922) (stating that ratification deals with "slight technical defect[s,]" but refusing to recognize a

ratification that would alter legal relations between parties).[6] Nor can Congress ratify the Secretary's preferred interpretative lens for the EAP Exemption. *Cf. Graham v. Goodcell*, 282 U.S. 409, 430 (1931) (ratifying a tax collected after a limitations period because this merely remedied "mistakes and defects in the administration of government. . . ."). And ratification is not forward-looking. *See Black's Law Dictionary* (11th ed. 2019) (defining "ratification" as "[c]onfirmation and acceptance of a *previous* act.") (emphasis added). So even if Congress ratified the DOL's salary-level regulations as they existed in 1949 or 1976, (at 18–19) that would not mean that Congress has written a blank check for the Secretary to modify salary level rules in whatever manner he might find fit going forward.

This leaves only DOL's claim that Congress has never explicitly rejected its interpretation. ECF 22 at 20–21. But this Court should not give any weight to Congress's inaction regarding the DOL's longtime use of a salary level test.[7] Indeed "[i]t is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law." *Girouard v. United States*,

---

[6] Ratification allows Congress to address errors such as an expired tariff, *U.S. v. Heinszen*, 206 U.S. 370, 377 (1907), or taxes collected after a statute of limitations has run due to procedural delays, *Graham*, 282 U.S. at 414–18. It does not exist to wave through massive, unauthorized agency action that amounts to de facto legislation with serious economic ramifications. *Cf. Van Emmerik v. Janklow*, 454 U.S. 1131, 1133 (1982) ("[Supreme Court's prior cases] stand for the proposition that administrative, procedural, and technical defects unrelated to the underlying policy may be remedied by curative legislation, *while legislative policy may not be changed retroactively*.") (White, J., dissenting from denial for lack of jurisdiction) (emphasis added).

[7] There are many reasons why Congress may not take action to repudiate a misconstruction of a statute, "[a]mong them may be the sheer pressure of other and more important business." *Cleveland v. United States*, 329 U.S. 14, 22–23 (1946) (Rutledge, J., concurring). For this reason, courts require explicit congressional approval of an agency interpretation before it is viewed as statutorily mandated. *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Brock*, 835 F.2d 912, 915–16 (D.C. Cir. 1987) (the DOL's regulation was not "frozen into law" without a "strong affirmative indication" from Congress).

328 U.S. 61, 69 (1946). *See also Jones v. Liberty Glass Co.*, 332 U.S. 524, 533 (1947) ("The doctrine of legislative acquiescence is as best only an auxiliary tool for . . . interpreting ambiguous statutory provisions"); *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1196 (11th Cir. 2019) ("'[L]egislative silence is a poor beacon to follow' in construing a statute. And [the Supreme Court] has repeatedly warned that congressional silence alone is ordinarily not enough to infer acquiescence.").

And legislative acquiescence—if relevant at all—cannot trump text-based canons of construction. *See supra* I(B); *see also Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 524 (6th Cir. 2021) (concluding that "mere congressional acquiescence in the [agency's] assertion that [a national eviction moratorium] was supported by [law] . . . does not make it so, especially given that the plain text . . .indicates otherwise.").

Nor does DOL point to any Supreme Court precedent accepting the interpretation of a Final Rule where—as here—a "significant increase to the salary level creates essentially a de facto salary-only test." *Nevada* I at 531. In other words, DOL's extratextual reading of Section 213(a)(1) is not the type of longstanding and settled judicial construction on which legislative acquiescence may be premised. *See Wilkins v. United States*, 598 U.S. 152, 165 (2023) (where Supreme Court had not ruled, there was "no definitive judicial interpretation to which Congress could acquiesce").

**D. DOL Cannot Justify Its New Rule by Pointing to the 2019 Regulations.**

Defendants cannot salvage their extratextual reading of Section 213(a)(1) by claiming the

2024 EAP Rule uses the "same methodology" as the 2019 EAP Rule.[8]  ECF 22 at 21. While Texas does assert that DOL "lacks the statutory authority to implement *any* salary level test," that is beside the point. (at 22) (emphasis in original). Even if DOL was allowed to impose a minimum salary requirement, DOL does not have authority under the FLSA to make compensation the predominate factor such that it supplants a duty-based analysis and excludes from the exemption millions of employees who Congress decided should be exempt. That is what the 2024 EAP Rule does. Simply put, while DOL has a broad grant of authority to issue regulations to define and delimit the terms in the EAP exemption, DOL must still act within the confines of the statute and Congressional intent.

Contrary to Defendants' claims, the 2024 EAP Rule has departed radically and significantly beyond using salary as a proxy to weed out obviously non-exempt employees, and has instead created a test that, in function, uses salary as the defining criterion for excluding millions of otherwise exempt employees from the EAP exemption. Although the 2019 Rule also strayed from the text of the FLSA, the 2024 Rule's increase in the salary level sets the salary floor even higher, and further removes salary level from its role as a proxy in identifying non-exempt employees. In other words, it presents even more of a "de facto salary-only test." *Nevada I* at 531, with an even greater minimum salary percentile increase (20th to 35th) than was present in the 2019 Rule. 89 Fed. Reg. at 32971.

---

[8] The fact that Texas did not challenge the 2019 EAP Rule (at 21) has no bearing on this litigation. The decision to initiate a lawsuit involves many different factors and says nothing about the merits of *this* case. Especially whereas here, the 2024 EAP Rule strays even further from the FLSA than the 2019 Rule did.

But above all, when this Court set aside the minimum salary levels in the 2016 Rule, it was unconcerned about how DOL came up with that number. Rather the Court held that the minimum salary for the EAP Exemption—however derived— "essentially make[s] an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level." *Nevada II* at 806.  In other words, *any* percentile would have failed unless it resulted in a salary level '"somewhere near the lower end of the range of prevailing salaries"' and that '"screen[ed] out the obviously nonexempt employees."' *Nevada II* at 806 (quoting Weiss Report at 7–8, 11–12). So too here, this Court should set aside the 2024 Rule's minimum salary level because, like the 2016 Rule, it "would exclude so many employees who perform exempt duties, [which shows that Defendants] fail[ed] to carry out Congress's unambiguous intent." *Nevada II* at 807.

## II.   The Remaining Factors Support Preliminary Injunctive Relief

### A.  Texas is Irreparably Injured by the New Overtime Rule

Texas will suffer irreparable harm. In determining whether costs are irreparable, the key inquiry is "not so much the magnitude but the irreparability." *Texas v. United States Env't Prot. Agency*, 829 F.3d 405, 433–34 (5th Cir. 2016) (quoting *Enter. Int'l Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)). Even purely economic costs may count as irreparable harm "where they cannot be recovered 'in the ordinary course of litigation.'" *Texas*, 829 F.3d at 434 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *see also In re NTE Conn., LLC*, 26 F.4th 980, 990– 91 (D.C. Cir. 2022) ("We have recognized that financial injury can be irreparable where no adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." (cleaned up)).

Even though Texas has already provided a declaration evidencing the harm brought on by the Final Rule, Defendant's want *more* evidence. ECF 22 at 11–13. But preliminary injunction

proceedings over prospective rules have never been the place to develop a comprehensive ledger of harms. Texas' allegations are more than sufficient to support a finding of a threat of irreparable injury. Especially here, where DOL projects that in the first year that the 2024 Rule is effective, more than four million employees all over the country will lose their exempt status. *See* 89 Fed. Reg. 32900 & Table 4. More than that, as the Rule itself estimates "[y]ear 1 costs for state and local governments would total $197.7 million, of which $98.9 million are direct employer costs and $98.8 million are payroll increases." *See* 89 Fed Reg. at 32968–69.[9]

Simply put, without a stay of the 2024 EAP Rule, Texas will be forced to spend significant funds just to implement the rule, make unrecoverable pay-outs to employees, juggle the employment status of thousands more, and raise taxes or cut programs. *See generally* Amended Miller Decl. ("Ex. A"); *see also id* ¶ 8 (explaining how the increase in wages under the 2024 EAP Rule will likely cause some state agencies to reduce newly created hourly staff—that in turn will "have a significant economic impact on the agencies that provide health services, legal services, criminal justice, transportation, and protect the environmental quality in our State and its

---

[9] This is more than what was stated in the 2016 Rule that was struck down, which—by DOL's estimates, resulted in "costs for state and local governments totaling $115.1 million" in the first year alone, "of which $38.8 million are direct employer costs and $76.3 million are payroll increases." 81 Fed. Reg. 32546.

citizens.").[10] These compliance costs "are unrecoverable because of the government-defendant's sovereign immunity from monetary damages. . . ." *Natl. Rifle Assn. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, No. 3:23-CV-1471-L, 2024 WL 1349307, at *9 (N.D. Tex. Mar. 29, 2024). Such "nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Id.*; *see also Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) (noting how "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs.") (quoting *Texas*, 829 F.3d at 433) (emphasis added).[11]

### B.  The Balance of Equities Favor a Stay

This novel rule presents a stark departure from the longstanding status quo that more fully protected congress's intent. Until now, Defendants have long adopted the Congressionally approved understanding of the exemption being based upon work duties rather than attempting to

---

[10] Defendants argue that since the 35th percentile does not take effect until January 1, 2025, Texas is unable to show irreparable harm from the "2024 EAP Rule's other salary level adjustments." (at 13). But aside from the Rule's admission that its implementation will cost the states millions, this underestimates the amount and degree of time and effort it will take the state to come into compliance with the Rule, as large state agencies will obviously have to start making efforts to budget well in advance of that date. And these agencies will have a difficult time adapting to the salary changes given when the State Legislature meets. Indeed, "[t]he Legislature of the State of Texas, operating under the biennial system, convenes its regular sessions at noon on the second Tuesday in January of odd-numbered years. The state budget and its appropriations are set for the entire biennium." Ex. A ¶ 8. In other words, unlike most other states, the Texas Legislature meets every two years. The next budget will not take effect until September 1, 2025—nine months after DOL's second increase to the minimum salary requirement. *See National Conference of State Legislatures*, FY 2025 State Budget Status, https://www.ncsl.org/fiscal/fy-2025-state-budget-status (last visited June 21, 2024) ("Texas begins its [2025 fiscal year] on Sept. 1").

[11] Defendants cite *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005), for the proposition that compliance costs are not "ordinarily" considered "irreparable harm." (at 12). But as the Fifth Circuit noted in *Lousiana*, the quoted language Defendants cite to from *Freedom Holdings* "appears to apply only to *recoverable* compliance costs" and that regardless, courts in this circuit are bound "by *Texas* [829 F.3d 405] and not *Freedom Holdings*."). *Louisiana v. Biden*, 55 F.4th 1017, 1034 n. 51 (5th Cir. 2022) (emphasis added).

expand the exemption to consider threshold salary alone. *See* 89. Fed. Reg. 32842. That makes sense. Federal law limits Defendants' authority to defining the terms of the statute, rather than rewriting the requirements. 29 U.S.C. § 213(a)(1). This is why for over eighty years the Department of Labor has adopted a duties-based test for determining to whom the exemption applies. *See Walling v. General Industries Co.* 330 U.S. 545, 547 (1947). As such, Defendants' previous attempts to effectively remove the Congressionally imposed and long-standing duties test from the exemption have been found to violate the Administrative Procedures Act and enjoined. *See Nevada v. United States Department of Labor,* 218 F.Supp.3d 520, 534 (2016).

There is no harm to DOL in being prevented from enforcing an illegal rule, and there is no public interest in violating long-standing overtime rules enacted by Congress.

**III.    Postponing the Rule's Effective Date Under § 705 is Proper.**

Texas ultimately seeks a vacatur of the Rule. For that reason, this Court should stay enforcement of the Rule nationwide pending a decision on the merits. To remedy an APA violation, "vacatur of an agency action is the default rule in this Circuit." *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (citations omitted). The APA allows a reviewing court to "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). "'When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.'" *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh,* 878 F.2d 484, 495 n. 21 (D.C.Cir.1989)); *see also Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2351 (2020) (explaining that, when "a provision is declared invalid," it "cannot be lawfully enforced against others").

"In the same way that a preliminary injunction is the temporary form of a permanent injunction, a stay [under section 705] is the temporary form of vacatur." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023), rev'd on other grounds, No. 23-235, 2024 WL 2964140 (U.S. June 13, 2024). And while Defendants urge that any relief under § 705 should be "party-specific" (at 30), "[n]othing in the text of Section 705" suggests that preliminary relief "needs to be limited to" the parties before the court. *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024).

Beyond that, relief under Section 705 is different than the relief sought in a "nationwide injunction." While "[a] stay [of an agency action] pending appeal certainly has some functional overlap with an injunction, particularly a preliminary one … [due to both having] the practical effect of preventing some action before the legality of that action has been conclusively determined," *Nken v. Holder*, 556 U.S. 418, 428 (2009), "a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Id*. at 428–29.[12]

Because courts have the final authority to set aside a rule completely under §706, it follows that they have the authority to stay the effective date of a rule to the same extent under §705. "[I]f a court can ultimately 'set aside' a rule for everyone once it reaches the merits, then the APA plainly

---

[12] Defendants argue that "Texas cannot receive broader relief under § 705 than it is entitled to under traditional equitable principles." ECF 22 at 29. Yet all Texas is asking for is a stay, which—like vacatur, is "less drastic" than an injunction because it does not "order the defendant to do anything." *All. for Hippocratic Med*. At 254 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)); *see also Nken*, 556 U.S. at 428–29.

authorizes the court to issue a preliminary injunction that bars the enforcement of the contested rule against anyone pending its merits decision on whether to vacate the rule." Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1126 (2020); *see also id.* at 1158 ("Modern courts reviewing agency action under the APA are therefore on firm footing when they issue universal preliminary injunctions against rules to preserve the status quo pending judicial review.").

Otherwise, the power to afford meaningful final relief in the form of vacatur would be diminished. Once an illegal rule begins to be applied, the "egg has been scrambled," *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002).[13] Postponing the effective date of the challenged overtime rule will vindicate Congressional intent, show respect for this Court's previous rejection of Defendants' flouting of the FLSA, and protect Texas' interests by preventing the Final Rule from costing the State millions in compliance costs. *See generally Nevada I* at 534 (granting preliminary relief "nationwide" to protect "both employees and employers from being subject to different EAP exemptions based on location"). The relief is proper.

## CONCLUSION

Texas respectfully requests that the Court enjoin the new overtime rule from becoming effective pending a full hearing on the merits and any review by higher courts.

---

[13] For that reason, district courts in this circuit continue to recognize that a grant of preliminary relief in an APA challenge typically affords relief nationwide. *See Nat'l Fed'n of Indep. Bus. v. Perez*, 2016 WL 3766121, at *46 (N.D. Tex. June 27, 2016) (holding, in the preliminary injunction context, that "a nationwide injunction is appropriate" in a "facial challenge" under the APA); *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016) ("A nationwide injunction is appropriate when a party brings a facial challenge to an agency action under the APA," and issuing a nationwide preliminary injunction).

Date: June 21, 2024

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**RYAN D. WALTERS**
Chief, Special Litigation Division

*/s/KATLEEN T. HUNKER*
**KATHLEEN T. HUNKER**
Special Counsel
Tex. State Bar No. 24118415

**SUSANNA DOKUPIL**
Special Counsel
Tex. State Bar No. 24034419

**GARRETT GREENE**
Special Counsel
Tex. State Bar No. 24096217

**MUNERA AL-FUHAID**
Special Counsel
Tex. State Bar No. 24094501

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Ryan.Walters@oag.texas.gov
Munera.Al-fuhaid@oag.texas.gov
Susanna.Dokupil@oag.texas.gov
Kathleen.Hunker@oag.texas.gov

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 21, 2024 and that all counsel of record were served by CM/ECF.

*/s/ Kathleen T. Hunker*
Kathleen T. Hunker