# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT
## SHERMAN DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | Civil Action No. 4:24-cv-499-SDJ |
| | § | LEAD CASE |
| Plaintiff, | § | |
| | § | |
| PLANO CHAMBER OF | § | Civil Action No. 4:24-cv-468-SDJ |
| COMMERCE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF LABOR, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS PLANO CHAMBER OF COMMERCE *ET AL.*'S MOTION FOR EXPEDITED SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
rfriedman@littler.com

Maurice Baskin (*pro hac vice*)
James A. Paretti, Jr. (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
jparetti@littler.com

*Counsel for Business Plaintiffs*

Angelo I. Amador (*pro hac vice*)
Restaurant Law Center
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Business Plaintiff*
*Restaurant Law Center*

## <u>TABLE OF CONTENTS</u>

PAGE

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

STATEMENT OF ISSUES....................................................................................................4

STATEMENT OF UNDISPUTED MATERIAL FACTS...........................................................5

STANDING AND IRREPARABLE HARM...........................................................................12

ARGUMENT.......................................................................................................................14

    I.     The 2024 Overtime Rule's Minimum Salary Threshold Exceeds DOL's
         Statutory Authority Under the FLSA in Violation of the APA...........................15

    II.    The 2024 Overtime Rule's Automatic Indexing Provision Exceeds the
         Department's Authority Under the FLSA in Violation of the APA ...................18

    III.   The 2024 Overtime Rule Is Arbitrary, Capricious, or Otherwise Contrary
         to Law in Violation of the APA........................................................................23

    IV.   The 2024 Rule Must Be Vacated Pursuant to APA Section 706 and/or
         Enjoined on a Nationwide Basis.......................................................................27

CONCLUSION....................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*10 Ring Precision, Inc. v. Jones*,
    722 F.3d 711 (5th Cir. 2013) ................................................................23

*Associated General Contractors v. U.S. Dep't of Labor*,
    Civ. Action No. 5:23-cv-00272 (N.D. Tex. June 24, 2024) ...................28

*Braidwood Mgmt., Inc. v. Becerra*,
    --- F.4th ---, 2024 WL 3079340 (5th Cir. June 21, 2024) ....................27

*BST Holdings, LLC v. OSHA*,
    17 F.4th 604 (5th Cir. 2021) ..................................................................28

*Career Colleges & Schools of Texas v. U.S. Dep't of Educ.*,
    98 F.4th 220 (5th Cir. 2024) ..................................................................27

*Chamber of Commerce of the U.S. v. NLRB*,
    No. 6:23-cv-00553, 2024 WL 1203056 (Mar. 8, 2024) ........................28

*Chamber of Commerce of United States v. Consumer Fin. Prot. Bureau*,
    2023 U.S. Dist. LEXIS 159398 (E.D. Tex. Sept. 8, 2023)....................13

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
    779 F.3d 258 (5th Cir. 2015) ................................................... 12, 15, 20

*Data Mktg. P'ship, LP v. DOL*,
    45 F.4th 846 (5th Cir. 2022) ..................................................................27

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) .............................................................. 22, 23, 25

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ..............................................................................20

*Franciscan Alliance, Inc. v. Becerra*,
    47 F.4th 368 (5th Cir. 2022) ..................................................................27

*Girling Health Care, Inc. v. Shalala*,
    85 F.3d 211 (5th Cir. 1996) ...................................................................14

*Global Van Lines, Inc. v. ICC*,
    714 F.2d 1290 (5th Cir. 1983) ...............................................................21

*Helix Energy Solutions Group, Inc. v. Hewitt*,
    598 U.S. 39 (2023) ............................................................................................4

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977) .........................................................................................13

*La. Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) .........................................................................................20

*Loper Bright Enters. v. Raimondo*,
    603 U.S. ---, 2024 WL 3208360 (June 28, 2024) ............................................15

*Luminant Generation Co. v. EPA*,
    675 F.3d 917 (5th Cir. 2012) ...........................................................................23

*Mayfield v. U.S. Dep't of Labor*,
    No. 23-59724 (5th Cir.) ............................................................................4, 7, 16

*Motor Vehicle Mfrs. Assoc. of US., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...........................................................................................23

*Nat'l Ass'n of Priv. Fund Managers v. SEC*,
    103 F.4th 1097 (5th Cir. 2024) ........................................................................27

*Nevada v. U.S. Dep't of Labor*,
    218 F. Supp. 3d 520 (E.D. Tex. 2016) ............................................... 2, 16, 22, 29

*Nevada v. U.S. Dep't of Labor*
    Labor, 275 F. Supp. 3d 795 (E.D. Tex. 2017) ..........................................*passim*

*Plano Chamber of Commerce v. Su*,
    4:24-cv-468, ECF No. 1 (May 22, 2024) ...........................................................2

*Ragsdale v. Wolverine World Wide, Inc.*,
    535 U.S. 81 (2002) ...........................................................................................15

*Talbert v. Am. Risk Ins. Co.*,
    405 Fed. Appx. 848 (5th Cir. 2010) .................................................................18

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ...........................................................................28

*U.S. Steel Corp. v. EPA*,
    595 F.2d 207 (5th Cir. 1979) ...........................................................................22

*Util. Air Reg. Grp. v. EPA*,
    134 S. Ct. 2427 (2014) .....................................................................................22

*West Virginia v. EPA*,
    577 U.S. 1126 (2016) ........................................................................................28

*Wirtz v. Mississippi Publishers Corp.*,
    364 F.2d 603 (5th Cir. 1966) .......................................................................7, 16

**Statutes**

5 U.S.C.
    § 553(b)...........................................................................................................21
    § 553(b)(B) .....................................................................................................22
    § 553(c)...........................................................................................................21
    § 706 ........................................................................................................*passim*
    § 706(2)............................................................................................................1
    § 706(2)(A) ...............................................................................................23, 27
    § 706(2)(C) ...............................................................................................15, 27

16 U.S.C. § 497c(b)(3) ........................................................................................21

29 U.S.C.
    § 203(m).............................................................................................................8
    § 206 ...........................................................................................................5, 21
    § 207 .................................................................................................................5
    § 213(a)...........................................................................................................21
    § 213(a)(1) ....................................................................................................5, 8
    § 213(a)(17) ......................................................................................................8
    § 213(a)(l) .................................................................................... 15, 19, 20, 21
    § 213(b)(24) ....................................................................................................21
    § 1083(c)(7)(D)(vii) ........................................................................................20

43 U.S.C. § 1337(a)(3)(C)(vii) ............................................................................21

Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.*....................................*passim*

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*..........................................*passim*

**Other Authorities**

Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook
    Handbook, First-line Supervisors of Entertainment and Recreation Workers,
    Except Gambling Services, available at: https://www.bls.gov/ooh/about/data-
    for-occupations-not-covered-in-detail.htm#391014; ..........................................18

Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook
    Handbook, Preschool and Childcare Directors, available at:
    https://www.bls.gov/ooh/management/preschool-and-childcare-center-
    directors.htm ...................................................................................................17

Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook
     Handbook,First-Line Supervisors of Retail Sales Workers, available at:
     https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-
     detail.htm#411011 ........................................................................................................ 18

Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook
     Handbook,First-Line Supervisors of Security Workers, at:
     https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-
     detail.htm#331091 ........................................................................................................ 18

Defining and Delimiting the Exemptions for Executive, Administrative,
     Professional, Outside Sales, and Computer Employees, 69 Fed. Reg. 22121
     (Apr. 23, 2004) ................................................................................. 9, 16, 17, 20

Defining and Delimiting the Exemptions for Executive, Administrative,
     Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32391
     (May 23, 2016) .......................................................................................... 16, 17

Defining and Delimiting the Exemptions for Executive, Administrative,
     Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230
     (Sept. 27, 2019) ........................................................................................ 6, 7, 20

Defining and Delimiting the Exemptions for Executive, Administrative,
     Professional, Outside Sales, and Computer Employees, 89 Fed. Reg. 32842
     (Apr. 26, 2024) ............................................................................................*passim*

### BUSINESS PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
### (ORAL ARGUMENT REQUESTED)

Business Plaintiffs, a broad coalition of Texas and national trade associations and employers,[1] hereby move for summary judgment on all counts of their Complaint challenging the U.S. Department of Labor ("DOL" or the "Department")'s rule "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 89 Fed. Reg. 32842 (April 26, 2024) (the "2024 Overtime Rule" or "2024 Rule"). The Business Plaintiffs ask this Court to declare that the 2024 Rule violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 *et seq.*, because it exceeds DOL's statutory authority under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and is arbitrary and capricious. The Business Plaintiffs further ask the Court to vacate the 2024 Rule pursuant to Section 706 of the APA, 5 U.S.C. § 706(2), and/or permanently enjoin enforcement of the 2024 Rule by the Department on a nationwide basis.

### BRIEF IN SUPPORT OF BUSINESS PLAINTIFFS' MOTION

### INTRODUCTION

On June 28, 2024, this Court preliminarily enjoined the Department from enforcing the 2024 Rule against Plaintiff State of Texas ("Texas") in its capacity as an employer under the FLSA. ECF No. 28 (slip op.). In so doing, the Court held that Texas had established a likelihood of success on the merits of its claim that in promulgating the 2024 Rule, the Department exceeded its statutory

---

[1] The Business Plaintiffs, as identified in their Complaint, are Plano Chamber of Commerce, American Hotel and Lodging Association ("AHLA"), Associated Builders and Contractors ("ABC"), International Franchise Association ("IFA"), National Association of Convenience Stores ("NACS"), National Association of Home Builders ("NAHB"), National Association of Wholesaler-Distributors ("NAW"), National Federation of Independent Business, Inc. ("NFIB"), National Retail Federation ("NRF"), Restaurant Law Center ("RLC"), Texas Restaurant Association ("TRA"), Cooper General Contractors, and DASE Blinds. *Plano Chamber of Commerce v. Su*, Case No. 4:24-cv-468, ECF No. 1. Where material to distinguish, those Business Plaintiffs that are trade associations are identified as the "Trade Association Business Plaintiffs."

1

authority to define and delimit the FLSA's executive administrative, and professional ("EAP") overtime exemption (commonly referred to as the "white-collar overtime exemption"). Slip op. at 20. The Business Plaintiffs have brought a materially identical claim that the 2024 Rule exceeds DOL's statutory authority and is arbitrary and capricious in contravention of the APA, *see* Compl. ¶¶ 47-55 (*Plano Chamber of Commerce v. Su*, 4:24-cv-468, ECF No. 1 (May 22, 2024)). As further shown below, the 2024 Rule is causing irreparable injury to the hundreds of thousands of businesses represented by the Business Plaintiffs, not only in Texas but nationwide, and therefore they are entitled to nationwide relief under Section 706 of the APA.

## **BACKGROUND**

In 2017, this Court permanently enjoined a strikingly similar regulation (the "2016 Overtime Rule" or "2016 Rule") which attempted to dramatically raise the minimum salary required for the white-collar overtime exemption, and declared unlawful DOL's attempt to automatically increase the salary threshold on a triennial basis thereafter. *See Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016) (preliminarily enjoining 2016 Rule) (*Nevada I*); *Nevada v. U.S. Dep't of* Labor, 275 F. Supp. 3d 795 (E.D. Tex. 2017) (permanently invalidating 2016 Rule) (*Nevada II*). Among other things, the *Nevada* Court found that "the Department's authority is limited by the plain meaning of the words in the [FLSA] and Congress's intent." 275 F. Supp. 3d. at 805. Accordingly, this Court prohibited the Department from increasing the minimum salary for exemption to a level that "essentially make[s] an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level." *Id.* at 806. The Court specifically found unlawful the Department's attempt to "make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional capacity employee' should be exempt from overtime pay." *Id.* at 807. Finally, the *Nevada* Court

2

struck down the Rule's automatic indexing of the threshold without notice or comment as required by law. *Id.* at 808.

In granting the Preliminary Injunction in the present case, this Court came to exactly the same conclusion regarding the 2024 Overtime Rule: "As was true of the 2016 Rule, the salary level thresholds imposed under the 2024 Rule 'effectively eliminate' consideration of whether an employee performs 'bona fide executive, administrative, or professional capacity' duties in favor of what amounts to a salary-only test." Slip op. at 25. Insofar as the 2024 Rule "make[s] salary predominate over duties for millions of employees, the changes exceed the authority delegated by Congress to define and delimit the relevant terms." *Id.* at 26. The Court readily concluded that Texas was likely to succeed on its claim that the 2024 Rule exceeded DOL's statutory authority under the FLSA, and enjoined its enforcement against Texas. *Id.* at 35.

The Business Plaintiffs now request that the Court take the necessary further action of granting summary judgment in order to prevent the unlawful 2024 Overtime Rule from causing irreparable harm to hundreds of thousands of employers nationwide whom the Trade Association Business Plaintiffs represent, along with the individual Texas businesses identified in their Complaint. Absent such relief, as of January 1, 2025, the 2024 Overtime Rule will increase the minimum annual EAP salary threshold from the prior $35,568 to $58,656, an increase of 65%. *See* 89 Fed. Reg. 32971 (29 C.F.R. § 541.600). It likewise will increase the minimum salary for exempting "highly compensated employees" ("HCEs")[2] from $107,432 to $151,164 as of January 1, 2025 (a 41% increase over the prior HCE threshold). *Id.* at 32972 (29 C.F.R. § 541.601).[3] These

---

[2] Under the highly compensated employee exemption, an employee is deemed exempt if they earn a specified, higher level of compensation; are paid on a salary basis; and customarily and regularly perform at least one exempt duty or responsibility of an exempt EAP employee.

[3] The new Rule has already increased the EAP threshold from the current $35,568 annually to $43,888 effective July 1, 2024, with the full 65% increase to $58,656 becoming effective on

changes are not merely a matter of degree. Rather, they fundamentally alter the focus of the exemption analysis, shifting the test from one focused primarily on the job *functions* identified by Congress in the FLSA to one that turns almost entirely on a salary threshold that is not a plausible proxy for those statutorily defined job functions. And by automatically adjusting the salary threshold every three years in perpetuity, the 2024 Rule ensures that this disconnect will only grow greater over time.

The 2024 Rule's EAP salary thresholds far exceed the limits of the statutory authority recognized first by the *Nevada* Court and again by this Court.[4] Moreover, DOL has failed to adequately justify the dramatic change in policy embodied in the Rule, failed to take into account the strong reliance interests of the regulated community, and failed to meaningfully consider reasonable alternatives, all in violation of the APA. For each of these reasons the Court should grant summary judgment in favor of Plaintiffs on each of their claims.

## STATEMENT OF ISSUES

I.      Whether the 2024 Overtime Rule's minimum salary threshold exceeds the Department's statutory authority under the FLSA in violation of the APA.

---

January 1, 2025. 89 Fed. Reg. 32971, 29 CFR 541.600. The threshold will then increase automatically as of July 1, 2027, and every three years thereafter. *See* 29 C.F.R. 541.607. It also first raised the HCE threshold from $107,432 to $132,964 effective July 1, 2024, with the full 41% increase to $151,164 effective January 1, 2025, and indexed every three years thereafter. 29 C.F.R. 541.601, 607.

[4] Indeed, as further discussed herein, the Fifth Circuit is presently considering whether the FLSA authorizes *any* minimum salary thresholds at all. *See Mayfield v. U.S. Dept. of Labor*, No. 23-50724 (5th Cir.) (appeal pending, briefing completed); *see also Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. 39, 67 (2023) Kavanaugh, J. dissenting) ("The [FLSA] focuses on whether the employee performs executive duties, not how much an employee is paid or how an employee is paid. So it is questionable whether the Department's regulations—which look not only at an employee's duties but also at how much an employee is paid and how an employee is paid—will survive if and when the regulations are challenged as inconsistent with the Act.").

II.     Whether the 2024 Overtime Rule's automatic indexing provision exceeds the Department's statutory authority under the FLSA in violation of the APA.

III.    Whether the 2024 Overtime Rule is arbitrary, capricious, or otherwise contrary to law in violation of the APA.

IV.     Whether the Court should set aside and/or enjoin the 2024 Overtime Rule on a nationwide basis or at least with regard to the Business Plaintiffs' members nationwide.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The FLSA generally requires covered employers to pay their employees at least the federal minimum wage (currently $7.25 per hour) for all hours worked, and requires overtime pay to nonexempt employees at one and one-half an employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 206 (minimum wage), § 207 (overtime).

2.      Among many other exemptions from the minimum wage and/or overtime requirements, Congress created the EAP exemption for "any employee employed in a bona fide executive, administrative, or professional capacity … as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of [the APA]." 29 U.S.C. § 213(a)(1). Congress did not make reference to any minimum salary test to further restrict the EAP exemption.

3.      As this Court in the *Nevada* case observed when it struck down the 2016 Overtime Rule:

> Congress unambiguously intended the exemption to apply to employees who perform 'bona fide executive, administrative, or professional capacity' duties . . . . Specifically, the Department's authority is limited to determining the essential qualities of, precise signification of, or marking the limits of those "bona fide executive, administrative, or professional capacity" employees who perform exempt duties and should be exempt from overtime pay. *With this said, the Department does not have the authority to use a salary-level test that will effectively eliminate the duties test as prescribed by Section 213(a)(1) . . . . Nor does the Department have the authority to categorically exclude those who perform "bona*

*fide executive administrative, or professional capacity" duties based on salary level alone.* In fact, the Department admits, "the Secretary does not have the authority under the FLSA to adopt a 'salary only' test for exemption."

*Nevada II*, 275 F. Supp. 3d at 805-06 (emphasis added).

4.      This Court in *Nevada* rightly found the Department's longstanding policy requires the minimum salary level to be used only as a floor to "screen[] out the obviously nonexempt employees, making an analysis of duties in such cases unnecessary." *Nevada II*, 275 F. Supp. 3d at 806 (citing Harry Weiss, Report and Recommendations on Proposed Revisions of Regulations, Part 541, at 7-8 (1949)), and held that "any new figure recommended should also be somewhere near the lower end of the range of prevailing salaries for these employees." *Id.* (citing Weiss, at 11-12).[5] Based upon the foregoing legal analysis, the *Nevada II* Court found that it was unlawful for the Department to increase the minimum salary level from $455 per week ($23,660 annually) to $913 per week ($47,476 annually). The *Nevada* Court took particular note that "entire categories of previously exempt employees who perform bona fide executive, administrative, or professional capacity duties would now qualify for the EAP exemption based on salary alone." 275 F. Supp. 3d at 806 (citing 2016 Rule's estimate that 4.2 million workers would have lost their exempt status solely because of the increased salary threshold).

5.      In 2019, after notice-and-comment rulemaking, the Department issued a new regulation, raising the EAP salary threshold to $35,568 and the HCE threshold to $107,432. *See*

---

[5] Consistent with this holding, between 1940 and 2019, DOL has with few exceptions set the minimum salary level for exemption by studying the salaries actually paid to exempt employees and setting the minimum salary at no higher than the 20th percentile in the lowest-wage regions, the smallest size establishment groups, the smallest-sized cities, and lowest-wage industries. *See* "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 84 Fed. Reg. 51230, 51235-37 (Sept. 27, 2019) (detailing historic development and application of salary test methodology). The unlawful 2016 Rule sought to set the minimum EAP salary at the 40th percentile of earnings of full-time salaried workers in the lowest wage Census region (the South).

6

"Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees," 84 Fed. Reg. 51230 (Sept. 27, 2019) (the "2019 Rule"). The 2019 Rule used the identical methodology used in the 2004 Rule, setting the threshold at the 20th percentile of full-time salaried workers in the lowest-wage census region (the South) and/or in the retail industry nationally using current data.[6]

6.      Notwithstanding the statutory mandate, longstanding regulatory precedent, and prior decisions of this Court, on April 26, 2024, DOL published the 2024 Overtime Rule. Just as the invalidated 2016 Overtime Rule purported to do, the 2024 Rule establishes a minimum salary test that will exclude from the white-collar exemption millions of currently exempt EAP workers. This time, the Department has adopted, without a rational basis, a minimum salary set at the 35th percentile of all salaried workers in the southern census region (which includes Maryland, the District of Columbia, and Virginia, three of the top ten median income states). Under the 2024 Rule, effective January 1, 2025, the minimum salary for exempt employees will increase 65 percent, from the prior $684 per week to $1,128 per week ($35,568 to $58,656, annualized). *See* 89 Fed. Reg. at 32971.

7.      At $1,128 per week, the new minimum salary level will defeat the exemption for more than four million individuals who would be classified as exempt bona fide EAP employees on the basis of their duties. Just as in the 2016 Rule, the Department's new salary threshold is so high that it is no longer a plausible proxy for delimiting which jobs fall within the statutory terms "executive," "administrative," or "professional." The 2024 Overtime Rule thus contradicts the

---

[6] That increase was nevertheless challenged in *Mayfield v. U.S. Dep't of Labor*, No. 23-59724 (5th Cir.) (appeal pending, briefing completed), on the ground that the statute does not authorize any minimum salary threshold for EAP exemption. The district court declined to enjoin the rule under the precedent of *Wirtz*, and the appeal from that decision is pending before the Fifth Circuit.

congressional requirement to exempt such individuals from the minimum wage and overtime requirements of the FLSA.

8.     As noted above, the 2024 Rule also establishes an indexing provision, which automatically sets in motion an update to the minimum salary requirements to even higher levels every three years. 89 Fed. Reg. 32973 (29 C.F.R. § 541.607). The Rule's automatic indexing will cause the salary threshold to even further depart from any meaningful approximation of the terms "executive," "administrative," and "professional" within a short period of time, without any notice or comment requirement.

9.     There is no basis to conclude that Congress authorized DOL to index the EAP salary level test under Section 213(a)(1). Congress has provided for automatic indexing in numerous other statutes, such as cost of living increases for Social Security benefits in the Social Security Act, P.L. 106-554. But in the 80+ year history of the FLSA, Congress has never provided for automatic increases of the minimum wage. Congress also has never indexed the minimum hourly wage for exempt computer employees under 29 U.S.C. § 213(a)(17), the tip credit wage under 29 U.S.C. § 203(m), or any of the alternative wage thresholds in the FLSA. Most important, Congress has never indexed the minimum salary threshold for the white-collar exemption.

10.    Likewise, there is no precedent for indexing the minimum salary threshold in the regulatory history of Part 541. In its 2004 rulemaking, the DOL rejected indexing as contrary to congressional intent and as disproportionately affecting lower-wage geographic regions and industries, stating:

> [T]he Department finds nothing in the legislative or regulatory history that would support indexing or automatic increases. Although an automatic indexing mechanism has been adopted under some other statutes, Congress has not adopted indexing for the Fair Labor Standards Act . . . . *The Department believes that adopting such approaches in this rulemaking is both contrary to congressional intent and inappropriate.*

69 Fed. Reg. at 22171-72 (emphasis added).

11.    DOL projects that in the first year the rule is effective, more than four million employees across the country will lose their exempt status. *See* 89 Fed. Reg. at 32900 Table 4. By Year 10, because of the automatic increases to the minimum salary level, DOL predicts that almost 6 million employees will have lost their exempt status. *Id.*[7] Similarly, by Year 10, the Rule will have imposed a cost of almost $3.4 billion on employers. *Id.*

12.    On June 28, 2024, this Court concluded that Texas was likely to succeed on the merits of its claim that the 2024 Rule exceeds the Department's statutory authority under the FLSA. Slip op at 26. Specifically, this Court held that the 2024 Rule "effectively displace[s] the FLSA's duties test with a predominant, if not exclusive salary-level test." Slip op. at 21. Explaining further, this Court noted that "a Department-invented test, untethered to the text of the FLSA, that systematically deprives employees of the EAP exemption when they otherwise meet the FLSA's duties test, is necessarily unlawful." *Id.* at 25. "By any measure, a salary requirement that effectively displaces the only EAP exemption test authorized by statutory text, i.e., the duties test, flatly contravenes the Department's authority under the FLSA." *Id.* at 21.

13.    Many of the Trade Association Business Plaintiffs challenging the 2024 Overtime Rule were plaintiffs in the successful challenge of the 2016 Rule, and again have brought their claims on behalf of their members and on behalf of themselves as employers under the FLSA. *See* Compl. ¶¶ 7-17.  In *Nevada II*, the court specifically found that these and other similarly situated business associations and their members "would incur significant payroll, accounting, and legal costs to comply with the Final Rule, both before and after its effective date" and an increase in the

---

[7] These numbers are closely proximate to the number of employees whom the *Nevada* Court found would unlawfully be deprived of their exempt status in 2017.

salary threshold "would affect how [the associations] and their members manage executive, administrative, and professional capacity employees who now qualify for overtime pay." 275 F. Supp. 3d at 800. As such, the Trade Association Business Plaintiffs have associational standing to bring a claim on behalf of their members ("It is clear the Final Rule directly affects both Business Plaintiffs and the employers they represent."). *Id.*

14.     In their public comments opposing the 2024 Rule and in numerous declarations attached to this Motion, the Trade Association Business Plaintiffs have established that hundreds of thousands of their members—in Texas and nationwide—will suffer (and already are suffering) injury and irreparable harm from the Rule. Such harm consists of increased costs they will suffer under the Rule, including required minimum wage and overtime wages for exempt employees who will be converted to non-exempt status; the costs of foregone labor by employees reclassified as non-exempt and whose hours may now be limited so as to avoid overtime payment; and substantial legal, accounting and other costs as they modify their businesses to comply and to account for those risks. *See, e.g.*, Exhibit 1, Declaration of Chirag Shah ¶¶ 7-13 (on behalf of AHLA and its 64,000+ hotel member properties) & Ex. A (explaining harm to identified AHLA member); Exhibit 2, Declaration of Ben Brubeck ¶¶ 4-8 (on behalf of ABC and its 23,000+ construction industry employer members) & ¶4 (noting harm to identified ABC member); Exhibit 3, Declaration of Sarah Davies ¶¶ 5-9 (on behalf of IFA and its 10,000+ franchise business owner members) & Exs. A-I (detailing harm to identified IFA members); Exhibit 4, Declaration of Doug Kantor ¶¶ 4-7 (on behalf of NACS and its 2,900+ employer members) & Exs. A-B (setting forth harm to identified NACS members); Exhibit 5, Declaration of Bradley Mannion ¶¶ 7-11 (on behalf of NAHB and its more than 140,000 members); Exhibit 6, Declaration of Brian Wild ¶¶ 12-15 (on behalf of NAW and 35,000 member companies) & ¶13 (identifying individual harmed NAW

member); Exhibit 7, Declaration of Elizabeth Milito ¶¶ 4-7 (on behalf of NFIB and its more than 300,000 member companies) & Ex. A (demonstrating harm to identified NFIB member); Exhibit 8, Declaration of David French ¶¶ 4-6 (on behalf of NRF and the 3.8 million retail establishment members it represents); Exhibit 9, Declaration of Angelo Amador ¶¶ 16-25 (on behalf of RLC and its 44,000+ members, including harm caused to identified RLC members); Exhibit 10, Declaration of Kelle Marsalis ¶¶ 4-6 (on behalf of 1,100+ members of Plano Chamber of Commerce, explaining harm of 2024 Rule). *See also* Comments filed in the Administrative Record, discussed further below and attached to Trade Association Business Plaintiffs' declarations.

15.     The Department has conceded and the costs set forth in the Rule, which include compliance costs, regulatory familiarization costs, and management costs, as well as the costs of increased salaries, overtime pay, or foregone labor. *See* 2024 Rule, 89 Fed. Reg. at 32908 (discussing familiarization costs), 32910 (discussing workforce management and reclassification costs). This Court has already rejected DOL's arguments that such costs are "de minimis," even as to the smaller portion of costs imposed on Texas alone.[8]

16.     In any event, the undisputed direct costs found by the Court with regard to Texas alone are dwarfed by the costs the Rule will inflict in Year One on the Business Plaintiffs' members nationwide. The Department estimates that in that first year alone, private-sector employes will face more than $1.4 *billion* in compliance costs and $1.5 *billion* in payroll increases, with almost 3.9 million private-sector employees affected by the 2024 Rule. *See* 89 Fed. Reg. 32900 Table 4. Inasmuch as the Business Trade Association Plaintiffs collectively represent hundreds of

---

[8] The Court properly found that in its first year alone the 2024 Rule imposed $98.8 million in increased payroll costs and $98.9 million in compliance costs on state and local governments, and that some portion of these costs—even if not immediately clear how much—would be imposed on Texas. Slip Op. at 27.

thousands of employers who employ the bulk of those 3.9 million employees nationwide, it is mathematically impossible to claim that the unrecoverable costs to the Business Plaintiffs and their trade association members are trivial or "de minimis."

## STANDING AND IRREPARABLE HARM

The Business Plaintiffs are effectively the object of regulation under the 2024 Rule, and as such, will be directly injured by the Rule, both as trade association representatives of hundreds of thousands of businesses nationwide and/or as organizations themselves employing exempt employees impacted by the Rule. *See, e.g., Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) ("If a plaintiff is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992)). The harms incurred by the Business Plaintiffs and their members are even greater than the harms incurred by Texas alone, which this Court has already found to be irreparable and unrecoverable compliance and increased payroll costs of the 2024 Rule. Slip Op. at 27. Those harms are greatly magnified due to their impact on the hundreds of thousands of employers represented by the Trade Association Business Plaintiffs. *See* Undisputed Facts, ¶14 *supra.*

The Trade Association Business Plaintiffs have associational standing to bring a challenge insofar as their members have standing to sue in their own right due to increased costs they will suffer under the Rule, including required minimum wage and overtime wages for exempt employees who will be converted to non-exempt status; the costs of foregone labor by employees reclassified as non-exempt and whose hours may now be limited so as to avoid overtime payment; and substantial legal, accounting and other costs as they modify their businesses to comply and to account for those risks. *See* Statement of Undisputed Facts ¶ 14 *supra* (citing declarations

establishing harms of 2024 Rule to hundreds of thousands of Trade Association Business Plaintiffs' members).

The 2024 Rule conflicts with each Trade Association Business Plaintiffs' policy objectives; challenging the Rule is germane to each association's purpose; and neither the claims asserted nor the relief requested requires the associations' individual members to participate, as this Complaint raises questions of law based solely on the Administrative Record. Accordingly, the Trade Association Business Plaintiffs each have associational standing. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

The Trade Association Business Plaintiffs' members, and the Business Plaintiffs themselves as employers covered by the 2024 Rule, have already suffered, and will continue to suffer, irreparable harm from the 2024 Rule's increase in the EAP threshold that took effect on July 1, 2024, and they will be likewise harmed if the Rule's scheduled January 1, 2025 increase is allowed to go into effect.

In addition to their associational standing as described above, each Business Plaintiff has organizational standing in its own right sufficient to sustain a challenge to the 2024 Rule, although it is only necessary for just one of them to have standing in order to do so. "Only one plaintiff needs to have standing for the court to issue relief to all plaintiffs against the same defendant on the same legal theory . . . ." *Chamber of Commerce of United States v. Consumer Fin. Prot. Bureau*, 2023 U.S. Dist. LEXIS 159398, *13-14 (E.D. Tex. Sept. 8, 2023). *See, e.g.*, Ex. 2, Brubeck Decl. ¶¶ 9-12 (setting forth examples of how 2024 Rule has impacted ABC as an employer); Ex. 6, Wild Decl. ¶¶ 7-10 (setting forth examples of how 2024 Rule has impacted NAW as an employer). In addition, the local businesses named as co-plaintiffs clearly have standing to challenge the 2024 Rule.

In sum, the Business Plaintiffs have both associational and organizational standing to challenge all aspects the 2024 Rule, and to seek nationwide relief on behalf of their members and themselves.

## ARGUMENT

This case presents purely legal questions of statutory authority and administrative law that may be resolved at the summary judgment stage based upon the administrative record before the agency. It is well established in this circuit that summary judgment is the way to resolve these purely legal issues. *See, e.g., Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 214 (5th Cir. 1996) ("We have consistently upheld, without comment, the use of summary judgment as a mechanism for review of agency decisions.").

The Business Plaintiffs are entitled to summary judgment for three related reasons. First*,* as this Court correctly found in granting the preliminary injunction, the Rule's revision to the minimum salary threshold exceeds DOL's authority. The 2024 Overtime Rule raises the minimum salary threshold so high that the new salary threshold is no longer a plausible proxy for the categories of employees that Congress intended to exempt. As a result, the exemption is lost for millions of salaried EAP employees whose job duties unambiguously qualify them as exempt. Second, though not squarely addressed in the Court's preliminary injunction decision, the 2024 Overtime Rule exceeds DOL's regulatory authority under the FLSA by establishing an unprecedented "escalator" provision that will dramatically increase the minimum salary threshold over time. Third, the 2024 Rule is arbitrary, capricious, and otherwise contrary to law because it fails the basic requirements of reasoned decision making imposed by the APA. Finally, the Business Plaintiffs explain below why they should be entitled to nationwide relief, vacating the 2024 Rule pursuant to Section 706 of the APA.

I.      __The 2024 Overtime Rule's Minimum Salary Threshold Exceeds DOL's Statutory
Authority Under the FLSA in Violation of the APA__

         The APA directs a reviewing court to "hold unlawful and set aside agency action . . .  in
excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C.
§ 706(2)(C). As this Court has correctly recognized, "[c]ourts must exercise their independent
judgment in deciding whether an agency has acted within its statutory authority." Slip op. at 12
(quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. ---, 2024 WL 3208360, at *6 (June 28,
2024)). Even where an agency is granted some degree of discretion in interpreting a statute, "the
role of the reviewing court under the APA is, as always, to independently interpret the statute" and
ensure that the agency's decision-making falls within the bounds of its statutory authority. *Id.*; *see
also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002) (overturning DOL's
exercise of rulemaking authority, where agency "exercise[d] its authority in a manner that is
inconsistent with the administrative structure that Congress enacted into law"); *Contender
Farms*, 779 F.3d at 273 (even a "broad grant of general rulemaking authority does not allow [the]
agency to make amendments to statutory provisions").

         In granting Texas's preliminary injunction, this Court properly held that the Department is
not authorized by the FLSA to promulgate a rule that makes overtime status turn solely on a salary
threshold that is not a plausible proxy for the job duties of an EAP employee. Slip Op. at 25-26.
This holding is compelled by the plain language of the FLSA, which states that its overtime
requirement "shall not apply" to "any employee employed  in  a  bona  fide  executive,
administrative,  or  professional  capacity." 29  U.S.C. § 213(a)(l). As recognized by this Court,
in directing the Department to promulgate standards identifying those employed in an "executive,
administrative,  or  professional  capacity," the  assignment  from  Congress  is  to  identify  those
employees who perform executive, administrative, or professional *functions. See* slip op. at 17

("The plain meaning of these terms makes clear that the proper inquiry into whether someone works in an executive administrative, or professional capacity must turn on that person's functions and duties."). And in *Nevada I* and *II*, this Court came to exactly this conclusion. *See Nevada I*, 218 F. Supp. 3d at 529 ("After reading these plain meanings in conjunction with the statute, it is clear Congress defined the EAP exemption with regard to *duties*.") (emphasis added); *Nevada II*, 275 F. Supp. 3d at 805 (determining same).

Congress did not authorize DOL to define the EAP exemptions based solely on salary thresholds that are not reasonably related to the job functions described  by the statute. Indeed, since it first interpreted the FLSA, DOL has consistently recognized that its authority "to define and delimit" the exemptions for EAP employees requires it to define these exemptions by reference to the job functions of employees and that it may not adopt a "salary only" test. *See* 2016 Overtime Rule, 81 Fed. Reg. at 32432-33;  *id.* at 32446  n.84 (a salary only approach is "precluded by the FLSA"); *see also* 69 Fed. Reg. at 22,173 (DOL "does not have authority under the FLSA to adopt a 'salary only' test . . . . The Department has always maintained  that the use of the phrase  'bona fide executive,  administrative or professional capacity'  in the statute requires the performance of specific duties.").

While the *Nevada* decision acknowledged the Department's use of a "permissible minimum salary level" under the Fifth Circuit's holding in *Wirtz v. Mississippi Publishers Corp*., 364 F.2d 603, 608 (5th Cir. 1966) (now being revisited by the Fifth Circuit in the *Mayfield* case), it rightly found that the Department's longstanding policy requires the minimum salary level to be used only as a floor to "screen[] out the obviously nonexempt employees, making an analysis of duties in such cases unnecessary." 275 F. Supp. 3d at 806 (citing Harry Weiss, Report and Recommendations on Proposed Revisions of Regulations, Part 541, at 7-8 (1949)).

When the 2024 Rule is fully implemented, more than four million workers, many of whom are employed by the Trade Association Business Plaintiffs' members, will "without some intervening action by their employers, become entitled to overtime protection as a result of the combined effect of the initial update and the subsequent application of that new standard salary level in this rule." 89 Fed. Reg. at 32882. In other words, an employee's duties, functions, tasks, and activities will not matter at all below the new salary threshold. Thus, just as in 2017, the 2024 Rule creates a de facto salary-only test for any employee earning less than $1,128 per week—a non-functional litmus test that the DOL has acknowledged Congress did not authorize. *See, e.g.*, 81 Fed. Reg. at 32432-33 (salary only approach is "precluded by the FLSA"); 69 Fed. Reg. at 22,173 (DOL "does not have authority under the FLSA to adopt a 'salary only' test . . .").

DOL attempts to justify its disregard for the duties performed by employees earning less than $1,128 weekly by asserting that it has "long recognized that the salary level test is a useful criterion for helping identify bona fide EAP employees." 89 Fed. Reg. 32844.  But that claim cannot be squared with DOL's own projection that, as a result of the new salary level, at least four million employees who meet the standard duties test will be denied the EAP exemption within the first year after the Rule takes effect.  *Id.* at 32404, 32393 & 32394.   Nor can it be squared with DOL's own estimates of the median incomes in 2023 for various jobs that fall squarely within the category of "administrative" positions under the FLSA.  For example, DOL estimates that the median income for "Preschool and Childcare Center Director" in 2023 was $54,290 per year.[9] The median income for "first-line supervisors" in the entertainment and recreation industry was $46,040; in the retail sales industry $46,730, and in the security industry

---

[9] Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, Preschool and Childcare Directors, available at: https://www.bls.gov/ooh/management/preschool-and-childcare-center-directors.htm.

sector $54,850 per year.[10]  These jobs clearly involve the duties associated with an "administrative" position.  *See e.g., Talbert v. Am. Risk Ins. Co.*, 405 Fed. Appx. 848, 852 (5th Cir. 2010) (assistant claims adjuster earning $32,000 per year deemed exempt).  DOL cannot plausibly defend its salary test as a "useful criterion" for exempt job duties where its test departs so widely from the actual salaries tied to the duties in question.

In sum, the clear statutory language of the FLSA directs DOL to exempt from overtime employees performing "bona fide executive, administrative, or professional" duties.  Because the 2024 Rule's salary test would exclude so many employees who perform these functions, it fails to perform the task required by the statute and therefore conflicts with the clear mandate of the statute.  Likewise, because the salary test excludes millions of exempt employees when a lower standard coupled with a duties test would more accurately fit the job functions described by the statute, the 2024 Rule is not a reasonable interpretation of the FLSA and must be permanently vacated.

## II.    The 2024 Overtime Rule's Automatic Indexing Provision Exceeds the Department's Authority Under the FLSA in Violation of the APA

As this Court further held in 2017, imposition of an automatic indexing provision exceeds the Department's authority under the Act; and the 2024 Rule must be set aside on this ground as well.  First, DOL has no authority under the FLSA to put adjustments to the minimum salary threshold on auto-pilot.  Second, the Department may not adjust the minimum salary thresholds

---

[10] Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, First-line Supervisors of Entertainment and Recreation Workers, Except Gambling Services, available at: https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm#391014; First-Line Supervisors of Retail Sales Workers, available at: https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm#411011; First-Line Supervisors of Security Workers, at: https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm#331091.

without comporting with the notice-and-comment requirements of the APA as specified in the FLSA.

As to the first point, the plain terms of 29 U.S.C. § 213(a)(l) authorize the Secretary of Labor to "define[] and delimit[]" the meaning of the "executive, administrative, or professional" categories "*from time to time by regulations*" (emphasis added). To be sure, this authorizes the Secretary to revise the regulations setting forth the duties and functions that may legitimately be encompassed within a "bona fide executive, administrative, or professional capacity." But there is absolutely no basis to conclude that the automatic revision to the threshold triggered only three years from now will have anything to do with changes in duties. To the contrary, the indexing provision in the Rule is tied exclusively to a percentile of average salary levels for salaried employees, in a specific part the country, regardless of duties. *See* 89 Fed. Reg. at 32973 (29 C.F.R. § 541.607). Thus, the indexing provision in the Rule is wholly unmoored from the functions specified in the FLSA that Congress intended to serve as the lodestar for the Secretary to use in updating the EAP regulations. As this Court put succinctly, because of the 2024 Rule's automatic indexing, "[O]n July 1, 2027, and every three years thereafter, millions more employees will have their statuses changed. Nothing about these employees' jobs will have changed. Their duties and salaries will be identical both before and after the increases. Rather, the only changes determining their statuses and making them non-exempt will be increases to the minimum salary level . . . ." Slip op. at 23.

As with the 2024 Rule's effective imposition of a discredited "salary only" test, here too the Department contradicts its prior position and legal conclusions. DOL previously disclaimed that it has the authority to use indexing when setting the salary level under the FLSA's overtime provisions. In 2004, DOL stated that adopting automatic increases is "contrary to congressional

intent." 69 Fed. Reg. at 22171-72. "Further, the Department [found] nothing in the legislative or regulatory history that would support indexing or automatic increases." *Id.* at 22171. And in 2019, the Department declined to adopt an automatic indexing provision, citing both its conclusions in 2004 and the *Nevada* Court's invalidation of such a provision. *See* 84 Fed. Reg. 51251.

Undeterred by the absence of affirmative statutory authority, the Department now asserts that its prior considered view was wrong and that, after all, it may set adjustments to the salary threshold on auto-pilot because Congress has failed to expressly *prohibit* the use of indexing in 29 U.S.C. § 213(a)(l). *See* 89 Fed. Reg. at 32857. But this has it exactly backwards. As the Fifth Circuit has repeatedly stated, courts "do not merely presume that a power is delegated if Congress does not expressly withhold it, as then agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Contender Farms*, 779 F.3d at 269 (quoting *Texas v. US. Dept. of the Interior,* 497 F.3d 491, 503 (5th Cir. 2007)); *accord La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it."). Thus, the Department's construction of the FLSA is not entitled to any form of interpretive deference "merely by demonstrating that 'a statute does not expressly *negate* the existence of a claimed administrative power (*i.e.,* when the statute is not written in 'thou shalt not' terms).'" *Id.* (quoting *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (*en banc*; emphasis in the original)). Surely, "Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000).

Indeed, Congress clearly knows how to expressly authorize indexing when that is what it wants, including in the labor context. *See, e.g.,* 29 U.S.C. § 1083(c)(7)(D)(vii) (indexing amount

of excess employee compensation related to "Minimum funding standards for single-employer defined benefit pension plans"); *see also* 16 U.S.C. § 497c(b)(3) (indexing ski area permit rental charges); 43 U.S.C. § 1337(a)(3)(C)(vii) (indexing oil and gas leases).  But neither 29 U.S.C. § 213(a)(l) specifically, nor the FLSA generally, provide indexing for wage rates.  Tellingly, Congress has not indexed the minimum wage, 29 U.S.C. § 206, the hourly wage for computer employees, 29 U.S.C. § 213(a)(17), or the annual compensation for "nonprofit parents," 29 U.S.C. § 213(b)(24).  The absence of express statutory language authorizing indexing in Section 213(a)(l), especially in light of other provisions elsewhere in the United States Code, firmly establishes that Congress never authorized indexing to evade the requirement to define and delimit the EAP exemption "from time to time by regulation."

The Department's automatic indexing requirement also violates the APA's notice and comment requirements. 5 U.S.C. § 553(b), (c).  The "notice-and-comment provisions of the APA enable the agency promulgating a rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated." *Global Van Lines, Inc. v. ICC*, 714 F.2d 1290, 1299 n.9 (5th Cir. 1983). The 2024 Overtime Rule's indexing provision fails to comply with the FLSA because it does not follow the requirements of the APA expressly incorporated by reference into 29 U.S.C. § 213(a)(l).  Under that provision, the only power granted by Congress is the authority to define and delimit the exemption "as such terms are defined and delimited *from time to time by regulations*" promulgated by the Secretary and subject to the requirements of the APA. 29 USC § 213(a) (emphasis added).[11]

---

[11]The Department appears to argue that since future updates will use the same (flawed) methodology to set the EAP threshold set forth in this regulation, it need not engage in notice-and-comment rulemaking for any future increases generated by the automatic escalator provision of the rule. *See* 89 Fed. Reg. 39827. It cites absolutely no authority for this novel proposition, which in any case is undone by the text of the statute. "Statutory construction begins with the language

By design, the 2024 Overtime Rule's indexing provision forces the salary level test to automatically adjust every three years, while evading notice and comment on the change. The DOL has not hidden its desire to dispense with "difficulty with updating the earnings thresholds" as frequently as it would by indexing the salary level test. 89 Fed. Reg. at 32858. But the APA's notice and comment provisions must be followed regardless of whether an agency finds them "difficult." *See U.S. Steel Corp. v. EPA*, 595 F.2d 207, 214 (5th Cir. 1979) (discussing 5 U.S.C. § 553(b)(B)). Any increase in the salary level must be based upon the comments submitted and the facts and information existent at the time of the increase. *Id.* DOL cannot lawfully put the salary level test on auto-pilot and effectively immunize itself from the procedural obligations of the APA.

Where, as here, an agency has reversed longstanding regulatory policy, the Supreme Court has made clear that the agency is required to acknowledge, explain and justify its reversal, and such explanation must take into account the strong reliance interests of the regulated community concerning the original regulation. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) (vacating DOL's reversal of policy with regard to "service advisors" exemption from FLSA's overtime requirements); *see also Util. Air Reg. Grp. v. EPA*, 134 S. Ct. 2427, 2446 (2014) ("[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate."). DOL has made no credible effort to do so. The automatic escalator provision of the 2024 Rule must be set aside.

---

of the statute, 'the specific context in which the language is used, and the broader context of the statute as a whole.'" *Nevada I*, 218 F. Supp. 3d at 528 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

## III.     The 2024 Overtime Rule Is Arbitrary, Capricious, or Otherwise Contrary to Law in Violation of the APA

Under the APA, a court shall hold unlawful and set aside agency action that is "arbitrary, capricious . . . or otherwise contrary to law."  5 U.S.C. § 706(2)(A).  Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012).  "[S]ignificant and viable alternatives" to a proposed regulatory action must be considered, *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 724 (5th Cir. 2013) (quotation marks omitted), and the agency must articulate a "satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assoc. of US., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted).  If it fails to "cogently explain why it has exercised its discretion in a given manner," its action will be invalidated. *Id.* at 48.

The 2024 Overtime Rule is arbitrary and capricious for multiple reasons.

First, where an agency has reversed longstanding regulatory policy, the Supreme Court has made clear that the agency is required to acknowledge, explain and justify its reversal, and such explanation must take into account the strong reliance interests of the regulated community concerning the original regulation. *See Encino Motorcars,* 136 S. Ct. at 2125-26 (vacating DOL's reversal of policy with regard to the "service advisors" exemption from the FLSA's overtime requirements). Here, DOL failed to provide a reasoned explanation, consistent with this Court's prior holdings and Congress's expressed intentions in the FLSA, for dramatically increasing the minimum salary standard to a level that will exclude a high percentage of all salaried employees nationally,

regardless of job duties, geographic area, or size of business. To the extent that DOL acknowledged at all the regulatory change imposed by the 2024 Rule, the agency improperly minimized its departure from decades of precedent, this Court's orders, and Congressional intent.

The Department likewise acted arbitrarily, capriciously, and otherwise not in accordance with the law by increasing the HCE exemption almost 41%, increasing the gap in real dollars between the standard exemption and the HCE exemption from almost $72,000 to nearly $93,000. Increasing the gap between the standard salary threshold and the HCE threshold will require employers to dedicate significant resources on administrative, human resources, and legal efforts to determine more precisely whether an employee is exempt under to the HCE exemption. Employers will be burdened with reviewing the basis on which each such employee was accorded exempt status, including employees for whom the exempt status decision was made a decade ago and who may be among the most highly paid employees in the company. As a result, regional variations within the same business may result in different employees in the same classification being afforded different exempt-status based almost entirely upon the location in which they work. Moreover, when HCE employees must be reclassified as non-exempt, the issues associated with reclassification are compounded by the increased compensation level and status of such positions in the business, as these employees are likely to have various levels of advanced education and have come to expect to be treated as salaried professionals. Each of these facts were made clear to the Department during the rulemaking process, *see* Ex. 3, Attachment J, Partnership to Protect Workplace Opportunity Comments at 11-12. The 2024 Rule unlawfully fails to meaningfully analyze or address these tangible and intangible costs to employers. *See, e.g., Ohio v. EPA*, 603 U.S. ---, 2024 WL 3187768, at *8 (June 27, 2024) (agency's failure to address significant concern raised in notice and comment period renders final rule arbitrary and capricious).

As described in detail above, the Rule disregards decades of regulatory and judicial precedent holding that the white collar exemption turned on the job functions defined in the FLSA. Yet DOL failed to meaningfully address this shift. Furthermore, it is apparent from the preamble to the Rule that DOL relied on factors that Congress did not intend for it to consider, specifically by excluding far more than the "obviously non-exempt employees" and instead excluding, based on their salary alone, four million employees who are "employed in a bona fide executive, administrative, or professional capacity" who are performing bona fide exempt job duties. 89 Fed. Reg. at 32843-20. DOL likewise based its new 35th percentile salary standard on grounds that run counter to the evidence before the agency, specifically the false claim that the current salary threshold was improperly paired with the obsolete long duties test. *See* 89 Fed. Reg. at 32848.

Second, and relatedly, the 2024 Overtime Rule fails to consider the strong reliance interests of the regulated community, which is comprised of hundreds of thousands of employers across the country whose business models have been built on the consistently-applied salary levels for exempt status established over the past 75 years. The methodology of the 2024 Rule increases the historical benchmark applied almost universally in the past by 75 percent, raising the 20th percentile threshold applied in the past, *see supra*, to the 35th percentile as of 2025 and thereafter. *Encino Motorcars, LLC*, 136 S. Ct. at 2125-26 ("In explaining its changed position, an agency must . . . be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account . . . . [A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy."). As noted in the Undisputed Facts ¶14, *supra*, comments filed by the Trade Association Business Plaintiffs and their members discussed the disruptive aspects of the proposed Rule.[12]

---

[12] *See, e.g.,* Ex. 1, Attachment B, AHLA Comments at 3 (increased cost of proposed rule "would likely force hospitality businesses across the country to reclassify at least 35% of the workforce from salaried to hourly, eliminate middle management positions, cut workers' hours, consolidate

*Third*, the arbitrary and capricious nature of the Rule is further exposed by DOL's treatment of bonuses, incentives, and commissions. The Rule allows employers to satisfy only up to ten percent of the minimum salary level with nondiscretionary bonuses, incentives, and commissions, and only if such payments are made annually or more frequently. And the Rule further excludes nondiscretionary bonuses, incentives and commissions paid less frequently than quarterly and other types of compensation (e.g., discretionary bonuses, profit-sharing, stock options, employer-funded retirement benefit, deferred compensation). Yet such distinctions bear no rational relationship to the statutory task of defining exempt job functions. Non-discretionary bonuses and incentive pay are all part of an employee's compensation package and do not demonstrate that the functions performed by the employee are any less compatible with the job functions defined by the statute. An employee earning in excess of the new salary threshold including a 20 percent non-discretionary bonus is no less likely to be performing non-exempt tasks than an employee earning only a 10 percent bonus. For these reasons as well, the 2024 Overtime Rule is arbitrary and capricious, and should be held unlawful and set aside.

---

jobs, and create considerable upward pressure across the entire party scale"), Ex. 4, Attachment C, NACS Comments at 1-2 (noting how proposed salary threshold exceeds weighted mean salary of first- and second-line managerial employees); Ex. 6, Attachment A, NAW Comments at 2-3 (detailing harmful impacts proposed Rule has on NAW members), Ex. 7, Attachment B, NFIB Comments at 5 (explaining particular adverse impacts on small businesses); *see also* Ex. 1, Shah Declaration, at ¶ 6 (explaining how 2024 Rule's EAP threshold exceeds median annual wages of first-line supervisors of housekeeping and janitorial workers); Ex. 4, Attachment C, NACS Comments at 1-2 (noting how proposed salary threshold exceeded weighted mean salary of first- and second-line managerial employees); Ex. 9, Amador Declaration ¶¶ 29-33 (showing how 2024 Rule's EAP salary threshold compares to mean wages across the country) & Attachment A, RLC Comments at 5 (explaining how proposed salary threshold would exceed median basis salary for crew and shift supervisors and many restaurant managers).

## IV.  The 2024 Rule Must Be Vacated Pursuant to APA Section 706 and/or Enjoined on a Nationwide Basis

Section 706 of the APA provides that a reviewing court "*shall* . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; [or] in excess of statutory jurisdiction, authority, or limitations . . . ." 5 U.S.C. § 706(2)(A), (C) (emphasis added). Section 706 is more prescriptive than Section 705, which addresses only interim relief during the pendency of an APA challenge.

With respect to the final adjudication on the merits of an APA claim, the Fifth Circuit has recognized, under section 706 of the APA, that when a court holds an agency rule violates the APA, it "'shall'—not may—'hold unlawful and set aside' [the] agency action." *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097, 1114 (5th Cir. 2024) (citation omitted); *see also, e.g.*, *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."); *Data Mktg. P'ship, LP v. DOL*, 45 F.4th 846, 859 (5th Cir. 2022) (vacatur is not only the "proper remedy," but the "default" one). Indeed, as this Court itself recognized, Section 706 is the "default remedy for unlawful agency action," and has "nationwide effect, is not party-restricted, and affects persons in all judicial districts equally." Slip op. at 32 n.28 (citing *Braidwood Mgmt., Inc. v. Becerra*, --- F.4th ---, 2024 WL 3079340, at *13-14 (5th Cir. June 21, 2024)).[13] *See also Career Colleges & Schools*

---

[13] The Fifth Circuit declined to uphold the lower court's vacatur of the subject rule in *Braidwood* only because plaintiffs there had not alleged a violation of the APA. *See* 2024 WL 3079340, at *13 (discussing and quoting *Deanda v. Becerra*, 96 F.4th 750, 755 (5th Cir. 2024) ("We know of no authority . . . authorizing a court to vacate a regulation under 706(2) in the absence of an APA claim.")). Additionally, the request for vacatur in *Braidwood* was "never pleaded" and came at "the last stage of proceedings." *Id.* That is in stark contrast to this case, in which Business Plaintiffs have sought Section 706 vacatur *ab initio*, *see* Complaint ¶ 69, and have consistently argued that DOL's actions were in violation of the APA and that the 2024 Rule should be vacated in its entirety.

*of Texas v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (noting Section 706 is "not party-restricted and allows a court to 'set aside' an unlawful agency action") (citation omitted); *id.* (discussing U.S. Supreme Court stay of Clean Power Plan without party limitation in *West Virginia v. EPA*, 577 U.S. 1126 (2016) and Fifth Circuit stay of OSHA vaccine mandate without party limitation in *BST Holdings, LLC v. OSHA*, 17 F.4th 604 (5th Cir. 2021)).

In addition to its power to vacate the 2024 Rule pursuant to Section 706 of the APA, this Court has jurisdiction to enter an injunction prohibiting DOL from enforcing the Rule on a nationwide basis. *See Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) ("[T]he Constitution vests the District Court with 'the judicial Power of the United States.' That power is not limited to the district wherein the court sits but extends across the country. It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction." (citations omitted)). And courts within the Fifth Circuit have concluded that a nationwide injunction is appropriate where a plaintiff brings a facial challenge to a final rule that exceeds the agency's authority and violates the APA. *See, e.g., Chamber of Commerce of the U.S. v. NLRB*, No. 6:23-cv-00553, 2024 WL 1203056 (Mar. 8, 2024) (vacating NLRB rule challenged by national trade association because "'vacatur of an agency action is the default rule' in the Fifth Circuit when it is found to be discordant with the law or arbitrary and capricious" (citing *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir.) (en banc) (2023), *affirmed*, 602 U.S. 406 (2024)); *Associated General Contractors v. U.S. Dep't of Labor*, Civ. Action No. 5:23-cv-00272 (N.D. Tex. June 24, 2024) (granting nationwide injunctive relief where plaintiff trade association was likely to succeed on the merits of its claim that challenged DOL regulation under Davis-Bacon Act was in excess of the Department's authority).

Such an approach would comport with the *Nevada* Court's treatment of the unlawful 2016 Overtime Rule which granted injunctive and final relief on a nationwide basis. The *Nevada* Court first preliminarily enjoined the 2016 Rule on a nationwide basis, holding that "[a] nationwide injunction is proper in this case," because the irreparable injury caused by the Rule extended nationwide. *Nevada I*, 218 F. Supp. 3d at 534. As the court further explained, "A nationwide injunction protects both employees and employers from being subject to different EAP exemptions based on location." *Id.* With respect to final judgment, the *Nevada II* Court, recognizing that "Business Plaintiffs [were] local, state, or national trade associations representing hundreds of thousands of employers throughout the country," 275 F. Supp. 3d at 800, declared the 2016 Rule "invalid" in all respects to all parties subject to it. *Id.* at 808.

This Court should readily come to the same conclusion as the *Nevada* Court. The Business Plaintiffs now, as then, represent hundreds of thousands of employers employing millions of employees throughout Texas and the United States. They have adduced undisputed evidence of harm to their members throughout the country as well as to themselves as employers. *See, e.g.,* Undisputed Facts ¶14, Exs. 1-9 & attachments (demonstrating harm to Trade Association Business Plaintiffs and their members). Insofar as the Business Plaintiffs represent hundreds of thousands of employer members employing millions of employees in in all fifty states, a nationwide injunction and vacatur of the 2024 Rule is the only means of affording Business Plaintiffs and their members complete relief.[14]

---

[14] Indeed, as a matter of economic reality, nationwide relief is necessary to afford the Business Plaintiffs the relief to which they are entitled. Enjoining enforcement of the 2024 Rule against some employers (*e.g.*, Trade Association Business Plaintiffs' members) but not others would ignore the fact that if businesses who are subject to the Rule are required to increase their employees' salaries to maintain their exempt status, employers as to whom enforcement of the Rule is enjoined would be likewise forced to raise their employees' salaries as a matter of economic competitiveness, thus rendering the injunctive relief they obtained ineffective.

**<u>CONCLUSION</u>**

For each of the reasons set forth above, the Business Plaintiffs respectfully request that the Court grant this motion for expedited summary judgment on all counts of their Complaint; hold the 2024 Overtime Rule unlawful; vacate and set aside the 2024 Overtime Rule pursuant to 5 U.S.C. § 706; permanently enjoin the Department from enforcing the 2024 Rule on a nationwide basis; and grant such other relief as is necessary and proper.

Dated: July 18, 2024                     Respectfully submitted,

*/s/ Robert F. Friedman*
Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
rfriedman@littler.com

Maurice Baskin (*pro hac vice*)
James A. Paretti, Jr. (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
jparetti@littler.com

*Counsel for Business Plaintiffs*

Angelo I. Amador (*pro hac vice*)
Restaurant Law Center
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913

*Counsel for Business Plaintiff*
*Restaurant Law Center*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2024, the foregoing Motion for Summary Judgment was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to all noticed counsel for Plaintiff State of Texas and for Defendants.

*/s/ Maurice Baskin*
Maurice Baskin
