# EXHIBIT 2

## DECLARATION OF BEN BRUBECK

I, Ben Brubeck, declare as follows:

1. I am over the age of 18 and competent to make this declaration. The statements in this declaration are true and within my personal knowledge and/or my review of the records of Associated Builders and Contractors ("ABC").

2. I am Vice President of Regulatory, Labor and State Affairs of ABC, which represents more than 23,000 members nationwide. Founded on the merit shop philosophy, ABC and its 67 chapters (including eight in Texas) represents all specialties within the U.S. construction industry and is comprised primarily of general contractors and subcontractors that perform work in the industrial and commercial sectors. The vast majority of ABC members are small businesses, and they employ many workers who are currently exempt under the established salary threshold, whose exempt status will be jeopardized under the Department's 2024 Rule entitled "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees," 89 Fed. Reg. 32842, which was published by the U.S. Department of Labor ("DOL" or "the Department") on April 24, 2024 ("the 2024 Overtime Rule").

3. As set forth in ABC's bylaws, Articles 1 and 3, ABC's mission is to foster and perpetuate the principles of the Merit Shop, Open Competition and Free Enterprise, and to encourage, develop, and protect the construction industry.

4. Many of ABC's members employ workers who will lose their exempt status as of January 1, 2025, because of the Rule's scheduled increase in the EAP salary threshold. Each of these members will suffer significant and irreparable harm caused by the Rule, with respect to their currently exempt employees.  One identified ABC member based in this district in Plano, Texas is Cooper General Contractors, a co-plaintiff in this lawsuit. Cooper attests that they have at least one

currently exempt employee who will lose their exempt status if the Rule remains in effect. Many more ABC members in Texas and around the country have reported the same or similar harms resulting from the new Rule.

5. Indeed, 63% of ABC members surveyed in October 2023 indicated that they would have to consider reclassifying employees as well as restructuring if the salary level were increased to $55,000. The results of the survey are described in ABC's Nov. 7, 2023 comments on the proposed Rule, as submitted to Department of Labor at regulations.gov and attached to this statement as Attachment A. The members reported that the negative consequences of reclassification include greatly restricting employee workplace flexibility in setting schedules and hours; hurting career advancement opportunities for employees; negatively impacting employee morale; and significantly increasing both legal and operational costs of ABC member firms, specifically small businesses, in order to comply with the new rule. The duties performed by these employees will not have materially changed, nor will their status as being paid on a salary basis; the only change affecting their exempt status is the EAP threshold increase.

6. Many of ABC's members also employ workers who will lose their exempt status as of January 1, 2025, because of the Rule's scheduled increase in the highly compensated employee salary threshold. 56% of ABC members surveyed in October 2023 said that $143,988 would be a significant increase for their company. Specifically, surveyed members stated the increase would result in complete changes to the pay structure that would be extremely costly as well as create enormous hardship on calculating weekly payroll, timesheets, etc.; overhead cost increases; less hiring of midlevel management staff; the ability to remain profitable would greatly decrease; higher costs for clients; a negative impact on the ability of small businesses to be competitive when bidding

jobs; and a decrease in profitability, as well as the overall strength of a company, thus creating risk of layoffs. The situation will be exacerbated by the automatic indexing imposed by the new Rule.

7. ABC's members will be required to either increase the salary of those employees who have lost their exempt status solely because of the 2024 Overtime Rule, or reclassify them as non-exempt under the FLSA. With respect to employees who have lost their exempt status because of the 2024 Overtime Rule, these members will have to either (a) pay them overtime at time-and-a-half their regular rate for any hours in excess of 40 worked in a given workweek; or (b) limit their hours to no more than 40 hours per week and forego their services. The injuries to ABC's members are irreparable because, once paid, they will have no ability to recoup higher wages or overtime paid to employees, nor can they recover the loss of the services they would have provided when needed.

8. In addition, ABC's members will continue to expend payroll, accounting, and legal resources to assess the exempt status of each of these workers, and determine whether it makes sense as a business matter to increase their salary; incur the costs of overtime pay; or limit their hours to 40 per week and forego their services. These members will also have to expend resources to develop or expand scheduling and timekeeping systems for employees who will become non-exempt by virtue of the rule.

9. As an employer itself, ABC is subject to the Fair Labor Standards Act, and the 2024 rule. ABC employs a number of workers who are exempt under the FLSA insofar as they primarily perform executive, administrative, and/or professional duties; are paid on a salary basis; and earn less than $1,128 per week ($58,656 per year). Many of these employees routinely work more than 40 hours in a given workweek.

10. Like its members, as of January 1, 2025, ABC must either increase their exempt employees' salaries or reclassify them as non-exempt under the FLSA. As non-exempt employees, ABC will then have to either (a) pay them overtime at time-and-a-half their regular rate for any hours in excess of 40 worked in a given workweek; or (b) limit their hours to no more than 40 hours per week and forego their services. Once paid, ABC has no ability to recoup higher wages or overtime paid to employees, nor can it recover the loss of the services they would have provided when needed.

11. In addition, ABC has expended and will continue to expend payroll, accounting, and legal resources to assess the exempt status of each of these workers, and determine whether it makes sense as a business matter to increase their salary; incur the costs of overtime pay; or limit their hours to 40 per week and forego their services. ABC will also have to expend resources to develop or expand scheduling and timekeeping systems for employees who will become non-exempt by virtue of the rule.

12. Reclassification of ABC's employees as non-exempt is likely to result in limited work hours, reduced pay, fewer opportunities for advancement, or some combination of all three with respect to each affected employee.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED on this 17th day of July 2024.

*[signature]*

# EXHIBIT A



VIA ELECTRONIC SUBMISSION

November 7, 2023

Amy DeBisschop
Director
Division of Regulations, Legislation, and Interpretation
Wage and Hour Division
U.S. Department of Labor
Room S–3502
200 Constitution Ave. NW
Washington, DC 20210

**Re: RIN 1235-AA39, Comments on DOL's Notice of Proposed Rulemaking on Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees**

Dear Ms. DeBisschop:

Associated Builders and Contractors hereby submits the following comments to the U.S. Department of Labor's Wage and Hour Division in response to the above-referenced proposed rule published in the Federal Register on Sept. 8, 2023, at 88 Fed. Reg. 62152.

**About Associated Builders and Contractors**

ABC is a national construction industry trade association representing more than 22,000 member companies. ABC and its 68 chapters help members develop people, win work and deliver that work safely, ethically and profitably for the betterment of the communities in which ABC and its members work.

ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of general contractors and subcontractors that perform work in the industrial and commercial sectors for government and private sector customers.[1]

The vast majority of ABC's contractor members are also small businesses. This is consistent with the U.S. Census Bureau and U.S. Small Business Administration's Office of Advocacy's findings that the construction industry has one of the highest concentrations of small businesses (82% of all construction firms have fewer than 10 employees)[2] and industry workforce employment (nearly 81% of the construction industry is employed by small

---

[1] For example, ABC's 33rd National Excellence in Construction Awards program from 2023.
[2] U.S. Census Bureau 2021 County Business Patterns: https://data.census.gov/table?q=CBP2021.CB2100CBP&tid=CBP2021.CB2100CBP&hidePreview=true and https://www.census.gov/programs-surveys/cbp/data/tables.html.

businesses).³ In fact, construction companies that employ fewer than 100 construction professionals comprise 99% of construction firms in the United States and account for 69% of all construction industry employment.⁴ In addition, the vast majority of small businesses are not unionized in the construction industry.

**Background**

In 2016, the Obama DOL issued the Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees final rule,⁵ which would have changed the federal exemptions to overtime pay under the Fair Labor Standards Act for "white-collar" workers by doubling the current minimum salary level for exemption from $23,660 to $47,476 per year and automatically increasing it every three years. Throughout the rulemaking process, ABC was an active participant⁶ and urged the DOL to withdraw the 2015 proposed rule.⁷

Before the Obama administration's 2016 final rule went into effect, it was permanently enjoined on a nationwide basis and later vacated by the U.S. District Court for the Eastern District of Texas in the case of *Nevada v. Department of Labor*.⁸

In 2019, the Trump DOL issued a new final rule to update and revise the "white-collar" overtime exemption regulations,⁹ which raised the minimum salary for exemption from $455 per week ($23,660 annualized) to $684 per week ($35,568 annualized). The rule replaced the Obama administration's 2016 final rule and went into effect on Jan. 1, 2020. Overall, ABC supported the 2019 final rule, as it addressed many of the concerns expressed by ABC in its comment letter¹⁰ in response to the DOL's proposed rule.¹¹

Issued on Sept. 8, the Biden DOL's proposed rule would significantly raise the minimum salary level needed to qualify as exempt.¹² In the DOL's press release, the agency indicates that it expects that the minimum salary threshold will be at least $55,068 (annualized).¹³ However, when the DOL promulgates the final rule, the agency claims it will use the most recent data then available. Buried in a footnote in the proposed rule, the DOL projects the minimum salary threshold to be $60,209 (annualized) in the first quarter of 2024—an

---

³ 2022 Small Business Profile, U.S. Small Business Administration Office of Advocacy (2022), at page 4, https://advocacy.sba.gov/wp-content/uploads/2022/08/Small-Business-Economic-Profile-US.pdf.
⁴ U.S. Census County Business Patterns by Legal Form of Organization and Employment Size Class for the U.S., States and Selected Geographies: 2021, available at https://data.census.gov/table/CBP2021.CB2100CBP?q=CBP2021.CB2100CBP&hidePreview=true.
⁵ 81 Fed. Reg. 32391.
⁶ See ABC's Comments filed on Sept. 4, 2015 (Docket ID: WHD-2015-0001-5178).
⁷ 80 Fed. Reg. 38516.
⁸ C.A. No. 4:16-CV-731, 2017 WL 3837230 (E.D. Tex. Aug. 31, 2017).
⁹ 84 Fed. Reg. 51230.
¹⁰ See ABC's comments filed on May 21, 2019 (Docket ID: WHD-2019-0001-59217).
¹¹ 84 Fed. Reg. 10900.
¹² 88 Fed. Reg. 62152.
¹³ See https://www.dol.gov/newsroom/releases/whd/whd20230830.

increase of nearly 70% from the current $35,568 salary level.[14] ABC is using the higher value of $60,209 for the purposes of this comment letter. The new rule also proposes to increase the salary threshold for highly compensated employees and to automatically update earnings thresholds every three years.

On Sept. 25, ABC joined the Partnership to Protect Workplace Opportunity[15] in urging the DOL to extend the current 60-day comment period deadline of Nov. 7 in order to provide adequate time to analyze the proposal, solicit member feedback and provide meaningful input on the proposal.[16] Unfortunately, on Oct. 10, the DOL denied the PPWO's request for additional time, as well as other organizations, without providing any meaningful justification.[17]

ABC shares the concerns and recommendations provided in extensive comments filed to this docket by the PPWO and incorporates them into this letter by reference. Specifically, ABC's comments focus on how the proposal will negatively impact the construction industry.

**ABC's Comments in Response To DOL's Proposed Rule**

ABC has serious concerns about DOL's new overtime proposed rule and urges the department to withdraw it for the below reasons.

1) **There Is No Immediate Compelling Reason To Alter the Current Minimum Salary Threshold Since It Was Adjusted in 2019.**

As ABC mentioned at the spring 2022 DOL overtime listening sessions and, most recently, at the U.S. Small Business Administration Office of Advocacy October roundtable, at this time there is no compelling reason for an adjustment to the minimum salary threshold for exemption since it was increased roughly four years ago from $23,660 to $35,568.

Since 1938, the DOL has updated the salary level eight times, with updates occurring on average every 9.87 years, with the majority of updates in the seven- to nine-year range. The jump from $23,660 in 2019 to $60,209 in 2024, a 154% increase in a six-year span, is completely inconsistent with past updates. Previous increases in the minimum salary threshold have ranged from 5% to 50% and have never approached 154% in a six-year period.

Further, and most importantly, the DOL should recognize that the construction industry (as well as multiple other industries) is currently up against high materials prices,[18] inflationary pressures and workforce shortages. Specifically, ABC estimates that the construction

---

[14] 88 Fed. Reg. 62152-62153; footnote 3.
[15] See https://protectingopportunity.org/about-ppwo/.
[16] See https://protectingopportunity.org/wp-content/uploads/2023/09/OT-Extension-Request_Sept-2023.pdf.
[17] See https://www.regulations.gov/document/WHD-2023-0001-1785.
[18] "ABC: Monthly Construction Input Prices Increase Slightly in September, Led by Higher Energy Prices," Oct. 11, 2023.

industry needs to hire more than half a million workers in 2023 alone.[19] Further, the DOL should consider workplace changes that resulted from the COVID-19 pandemic—66% of ABC members surveyed in October 2023 indicated they had to cut budgets and are facing higher operating costs.

Virtually all of ABC's members employ some workers who qualify for exempt status and the proposed rule will result in large numbers of employees being reclassified as nonexempt. In fact, 63% of ABC members recently surveyed indicated that they would have to consider reclassifying employees as well as restructuring if the salary level is increased to $55,000.

The negative consequences of reclassification include:

- Greatly restricting employee workplace flexibility in setting schedules and hours;
- Hurting career advancement opportunities for employees;
- Negatively impacting employee morale; and
- Significantly increasing both legal and operational costs of ABC member firms, specifically small businesses, in order to comply with the new rule.

Regrettably, DOL's proposed salary level increase will further complicate the current economic situation. Moreover, because the DOL proposes to automatically increase the salary level every three years, these issues will recur repeatedly.

**2) The DOL's Proposed Increase to the Standard Salary Level Is Unlawful and Not Consistent With the Purpose of the Minimum Salary Requirement.**

ABC strongly opposes the DOL's proposed new standard salary level of $60,209, which is set in a manner inconsistent with past precedent and the district court's decision in *Nevada v. U.S. Department of Labor*, which held that the Obama DOL's 2016 final rule's salary threshold violated the FLSA by "essentially mak[ing] an employee's duties, functions or tasks irrelevant" for a wide swath of workers, in contravention of clear congressional intent.[20]

The DOL does not have the authority to exclude bona fide EAP employees from the exemption on salary alone, which the DOL has generally and fairly consistently recognized since 1940, when the agency acknowledged that the purpose of the minimum salary is to "provid[e] a ready method of screening out the obviously nonexempt employees." The law permits the DOL to set the minimum salary at a level where those earning under the minimum are clearly not exempt, but it does not permit the agency to set the minimum so high as to deprive bona fide EAP employees of exempt status. The salary test is to be a mere proxy for the duties test, not a replacement for the duties test.

The 2016 final rule arbitrarily increased the minimum salary to the 40th percentile for salaried employees—a historically high minimum salary threshold. ABC, along with several other

---

[19] "Construction Workforce Shortage Tops Half a Million in 2023, Says ABC," Feb. 2, 2023.
[20] C.A. No. 4:16-CV-731, 2017 WL 3837230 (E.D. Tex. Aug. 31, 2017).

4

business groups, sued the DOL in federal court and succeeded in blocking the rule from taking effect.

In invalidating the rule, the U.S. District Court for the Eastern District of Texas held that the $913 salary level established in the 2016 final rule violated Congress's intent and exceeded the DOL's authority to set a minimum salary level "to screen out the obviously nonexempt employees."[21] The court also ruled that the DOL "does not have authority to use a salary-level test that will effectively eliminate the duties test as prescribed by Section 13(a)(1)" [of the Fair Labor Standards Act (the Act)].[22] The court found that it would be consistent with Congress's intent to set the minimum salary level "somewhere near the lower end of the range of prevailing salaries."[23]

Based on the court's finding, it is unclear why the DOL is moving forward with an even higher threshold of $60,209, because, if finalized, it is highly likely to meet a similar fate as the 2016 final rule.

By setting the minimum salary so high regardless of geographic areas, the DOL will force construction employers to either reclassify their currently exempt employees or else increase their salaries to disproportionately high levels. In the October 2023 survey, ABC members were asked about some of the potential challenges that they would face if a higher salary threshold were implemented: 74% cited higher costs and 52% said the ability to provide merit-based raises would be limited. This will be particularly true in rural parts of the country and in areas where the cost of living is lower than average. The new proposed salary threshold of $60,209 is remarkably higher than the norm in those regions of the country where the cost of living is significantly lower than average.

In effect, the proposed rule would for all practical purposes eliminate the white-collar exemptions in significant portions of the country. This is directly contrary to congressional intent. This effective elimination of the exemption for certain low-cost-of-living areas of the country makes it clear that the DOL is once again exceeding its statutory authority. The South and Midwest will be placed at a competitive disadvantage to other regions, while employers in urban areas will be able to maintain exempt employees at a rate that far exceeds rural areas.

Smaller construction firms in the Deep South, parts of the Midwest and other rural states are likely to find that many of their supervisory positions will lose their exempt status under the proposed new salary minimum standard, even though their job duties are substantially identical to similar positions held by employees in New York and California.

To the extent that the minimum salary level is increased at all from the current amount of $35,568, the increase should be consistent with the 2004 levels. In 2004, the DOL set the minimum salary level at an amount which, at that time, represented the 20th percentile for

---

[21] Nevada, 2017 WL 38377230 at *7, citing Harry Weiss, Report and Recommendations on Proposed Revisions of Regulations, Part 541 (June 30, 1949), at 7-8.
[22] Id.
[23] Id.

salaried employees in the South geographic region and retail industry.[24] The Eastern District of Texas district court stated that adjusting the 2004 data for inflation would be consistent with the FLSA, and ABC has no objection to that approach. However, ABC believes it would be equally consistent with the Act to use the 2004 methodology for setting the salary standard. Setting the minimum salary at any higher level would be unduly disruptive to construction industry employers and would require a gradual, phased-in implementation.

### 3) Any Increase to the Highly Compensated Employee Salary Threshold Is Unnecessary Since It Was Adjusted in 2019.

The DOL should not increase the minimum salary required for application of the HCE exemption, for several of the same reasons discussed above with respect to the standard salary level.

The current HCE salary level of $107,432 is sufficient to ensure that only bona fide EAP employees qualify for exempt status. Similar to the Obama 2016 final rule, there is no compelling reason for the Biden DOL to increase the HCE total annual compensation level to $143,988 per year, a 34% increase, particularly since it was just increased roughly four years ago. When the DOL adjusted the HCE in 2019, it provided for an increase of 7.4% over the existing standard. Further, the DOL indicates that it will use the most recent data available at the time the final rule is finalized, which may lead to a much higher annual threshold and force many employers to take away the benefits and opportunities for advancement for those employees who will lose exempt status.

In fact, 56% of ABC members surveyed in October said that $143,988 would be a significant increase for their company. Specifically, surveyed members stated the increase would result in:

- Complete changes to the pay structure that would be extremely costly as well as create enormous hardship on calculating weekly payroll, timesheets, etc.
- Overhead cost increases.
- Less hiring of midlevel management staff.
- The ability to remain profitable would greatly decrease.
- Higher costs for clients.
- A negative impact on the ability of small businesses to be competitive when bidding jobs.
- A decrease in profitability, as well as the overall strength of a company, thus creating risk of layoffs.

ABC supports the current HCE salary level of $107,432 and urges the DOL to retain it. However, assuming that a new HCE salary threshold is adopted, it should be established by applying the same methodology that was adopted by the DOL in 2004.

---

[24] 69 Fed. Reg. at 22167-68 & Table 2.

### 4) Congress Has Not Authorized the DOL To Automatically Update Earnings Thresholds.

ABC opposes the DOL's proposal to automatically adjust the salary-level test and the HCE total compensation requirement every three years. As the DOL itself found in 2004, Congress did not intend the salary-level test to be indexed, as evidenced by the fact that Congress has never provided for automatic increases of the minimum wage or other exemptions to the FLSA.

Since passage of the FLSA, Congress has for many decades refused to index the minimum wage and has never authorized the DOL to index the minimum salary levels of the white-collar exemptions. By contrast, Congress expressly authorized such indexing in other statutes, including the Affordable Care Act. Thus, the proposed rule defies congressional intent that salary levels be periodically reexamined in order to avoid the inflationary results of automatically increasing them.[25]

Aside from lacking statutory authority, the DOL's proposed automatic updates are arbitrary and capricious and will impose significant new burdens on employers. The proposal will effectively require reconsideration every three years of the classification of white-collar employees. For example, if the rule goes into effect as proposed in 2024 and increases the minimum salary for exemptions to $60,209, there will be far fewer full-time salaried workers making under that amount in 2027 when the DOL performs the next update. As a result, within a few years the salary level required for exempt status will rise so far as to virtually eliminate the exemptions in low-wage regions and industries that have not already lost the practical use of the exemptions on the effective date of the final rule. The effect of indexing will be to dramatically reduce the number of exempt employees even further in the coming years.

Further, the proposed rule's provision to automatically update the salary threshold and the HCE total compensation requirement every three years violates the Administrative Procedure Act's notice and comment requirements. The salary level will mechanically adjust every three years without any rulemaking under the APA. Thus, there will not be any analysis of the necessity or justification for an increase or any input from the public.

In fact, 90% of surveyed ABC members disagreed with the DOL's proposal for automatic updates and responded that the DOL should evaluate the economic circumstances and take comments from the public through rulemaking each time it wants to update the exemptions.

The DOL concedes that, in year one, 3.4 million currently exempt employees who earn at least the current salary level of $684 per week but less than the proposed standard salary level of $1,059 per week would, absent the employer paying them at or above the new salary

---

[25] In 2004, the DOL declared that it lacked any authority to index the minimum salary. Nothing has changed to justify the DOL's arrogation of undelegated authority. See 88 Fed. Reg., at 62177-62178.
.

level, gain overtime protection.[26] Regardless of how employers respond to the new rule, the impact of automatic updates will be to dramatically reduce the number of exempt employees even further in the coming years.

### 5) The DOL's Estimate of Compliance Costs to Employers Is Absurdly Low

The DOL believes an average of one hour per entity is appropriate to review the rule because the regulated community is likely to be familiar with the content of this rulemaking.[27] However, compliance with the proposal will not be as simple as reviewing the salary level and making a one-time decision. In fact, 82% of recently surveyed ABC members disagreed with the DOL's estimate and responded that reviewing the final rule would take three hours or longer, with 47% saying it would take five hours or more.

The DOL should recognize that the time and effort associated with complying with the new rule will be considerable as employers will need to determine which positions will remain exempt or reclassified as non-exempt, as well as how to implement the conversion to non-exempt status. Further, adjustments will need to be made to time and attendance systems as well as other associated administrative issues.

It is important to note that many construction contractors are small businesses that do not have in-house legal counsel or human resources staff. They will be required to incur significantly higher expenses to comply with the rule than the agency has estimated.

### **Conclusion**

Again, ABC urges the DOL to withdraw the proposed rule, which is unlawful, is inconsistent with historic norms and will specifically harm small businesses. The district court's holding in *Nevada v. U.S. Department of Labor* is correct, and the DOL should comply with it.

Respectfully Submitted,

*[signature]*

Ben Brubeck
Vice President of Regulatory, Labor and State Affairs

Of Counsel:  Maurice Baskin Esq.
             Littler Mendelson, P.C.
             815 Connecticut Ave. NW
             Washington, DC  20006

---

[26] 88 Fed. Reg. at 62154.
[27] 88 Fed. Reg. at 62199-62200.