# EXHIBIT 6

## DECLARATION OF BRIAN WILD

I, Brian Wild, declare as follows:

1. I am over the age of 18 and competent to make this declaration.

2. I am Chief Government Relations Officer for the National Association of Wholesaler-Distributors ("NAW"), which represents the wholesale distribution industry – the essential link in the supply chain between manufacturers and retailers as well as commercial, institutional, and governmental end users. NAW is made up of direct member companies and a federation of national, regional, and state NAWs across 19 commodity lines of trade which together include approximately 35,000 companies operating nearly 150,000 locations throughout the nation. The overwhelming majority of wholesaler-distributors are small-to-medium-size, closely held businesses. As an industry, wholesale distribution generates more than $8 trillion in annual sales volume providing stable and well-paying jobs to more than six million workers.

3. NAW's mission is to deliver programs and services to help the wholesale distribution industry succeed. Members engage with NAW through our offerings in thought leadership, networking, executive education, innovation, benchmarking/research, shared resourcing, partnerships, government relations, and public affairs. NAW furthers this mission through advancing pro-business initiatives on legislation and regulation, as well as litigation against federal, state, and local governments to challenge government action that harms its members, such as its current challenge to the rule entitled "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees," 89 Fed. Reg. 32842, which was published by the U.S. Department of Labor ("DOL" or "the Department") on April 24, 2024 ("the 2024 Overtime Rule").

4. NAW submitted detailed comments to the Department during the rulemaking on the 2024 Rule, setting forth its concerns, and the concerns of its members, with the then-proposed Rule. A copy of NAW's comments are attached to this Declaration as Exhibit A.

5. The statements in this declaration are true and within my personal knowledge and/or my review of NAW's records.

6. As an employer itself, NAW is subject to the Fair Labor Standards Act and the 2024 Overtime Rule.

7. Among other things, the 2024 Overtime Rule increases the EAP exemption to $1,128 per week ($58,656 per year) as of January 1, 2024.

8. NAW employs approximately 1 worker, who is exempt under the FLSA insofar as they primarily perform executive, administrative, and/or professional duties; are paid on a salary basis; and earn at least $844 per week ($43,888 per year) but less than $1,128 per week ($58,656 per year). This employee routinely works more than forty hours in a given workweek.

9. As of January 1, 2025, with respect to this worker, NAW must either increase their salary or reclassify them as non-exempt under the FLSA. As non-exempt employees, NAW will then have to either (a) pay them overtime at time-and-a-half their regular rate for any hours in excess of forty worked in a given workweek; or (b) limit their hours to no more than forty hours per week and forego their services. Once paid, NAW has no ability to recoup higher wages or overtime paid to employees, nor can it recover the loss of the services they would have provided when needed.

10. In addition, NAW has expended and will continue to expend payroll, accounting, and legal resources to assess the exempt status of this worker and determine whether it makes sense as a business matter to increase their salary; incur the costs of overtime pay; or limit their

2

hours to forty per week and forego their services. NAW will also have to expend resources to develop or expand scheduling and timekeeping systems for employees who will become non-exempt by virtue of the rule.

11. Reclassification of NAW's employee as non-exempt is likely to result in limited work hours, reduced pay, fewer opportunities for advancement, or some combination of all three with respect to the affected employee.

12. I and other NAW staff members have had conversations with many of NAW's members at meetings and through phone calls during which they tell us that they also employ workers who were exempt prior to July 1, 2024, but are now non-exempt solely because of the 2024 Overtime Rule's July 1, 2024, increase in the EAP salary threshold, or will lose their exempt status as of January 1, 2025, because of the Rule's scheduled increase in the EAP salary threshold. Each of these members will suffer the harms outlined in paragraphs 9, 10, and 11 of this Declaration with respect to their own employees.

13. For example, Blish-Mize, a wholesale hardware distributor based in Atchison, Kansas, has informed NAW that as of July 1, 2024, approximately three of its employees lost their exempt status under the FLSA due solely to the 2024 Overtime Rule's increase in the EAP salary threshold. Blish-Mize estimates that roughly three of its employees will lose their exempt status on January 1, 2025, due to the Rule's scheduled EAP threshold increase and will also lose some of their benefits as they will be reclassified as hourly employees. The duties performed by these employees will not have materially changed; the only change affecting their exempt status is the EAP threshold increase. Additionally, on January 1, 2025, due to the Rule's scheduled Highly Compensated Employee EAP threshold increase roughly two employees will

3

have their salary increased to meet the new salary exempt salary threshold. The duties performed by these employees will not have materially changed.

14. Like NAW, these members have been or will be required to either increase the salary of those employees who have lost their exempt status solely because of the 2024 Overtime Rule or reclassify them as non-exempt under the FLSA. With respect to employees who have lost their exempt status because of the 2024 Overtime Rule, these members will have to either (a) pay them overtime at time-and-a-half their regular rate for any hours in excess of forty worked in a given workweek; or (b) limit their hours to no more than forty hours per week and forego their services. Once paid, NAW's members have no ability to recoup higher wages or overtime paid to employees, nor can it recover the loss of the services they would have provided when needed.

15. In addition, like NAW, these members have expended and will continue to expend payroll, accounting, and legal resources to assess the exempt status of each of these workers and determine whether it makes sense as a business matter to increase their salary; incur the costs of overtime pay; or limit their hours to forty per week and forego their services. These members will also have to expend resources to develop or expand scheduling and timekeeping systems for employees who will become non-exempt by virtue of the rule.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED on this _15_ th day of July 2024.

Brian Wild

4

# EXHIBIT A



By Electronic Submission                                                                                      November 7, 2023

Amy DeBisschop
Director
Division of Regulations, Legislation, and Interpretation
Wage and Hour Division
U.S. Department of Labor
Room S-3502
200 Constitution Avenue, N.W.
Washington, DC 20210

> *Re: Notice of Proposed Rulemaking, "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees" (RIN 1235-AA39) (88 Fed.Reg. 62152, Sept. 8, 2023)*

Dear Ms. DeBisschop,

The National Association of Wholesaler-Distributors ("NAW") respectfully submits these comments in response to the Wage and Hour Division's Notice of Proposed Rulemaking ("NPRM") with respect to proposed changes to the overtime pay exemptions for executive, administrative, professional, outside sales, and computer employees.[1]

**About NAW and the Wholesale Distribution Industry**

NAW is the "national voice of wholesale distribution," an association comprised of employers of all sizes and national, regional, state, and local line-of-trade associations spanning the $8 trillion wholesale distribution industry that employs over 6 million workers in the United States. Approximately 35,000 enterprises with almost 150,000 places of business in all 50 states and the District of Columbia are affiliated with NAW.

Wholesale distribution is a business-to-business industry: wholesaler-distributors purchase inventory, generally from manufacturers, and sell it to their customers, generally retailers.

---

[1] The WHD provided the public with 60 days to respond to the NPRM. On September 25, NAW and 107 other organizations requested the agency give an additional 60 days to provide the agency with meaningful comments given the magnitude of the proposal. On October 10, the agency denied the request for an extension. If the Department was concerned about receiving the best information on the impact of this proposal, it would have given additional time for stakeholders to comment.

Wholesaler-distributors buy inventory in large quantities, warehouse it, break it down into the quantities their customers want (called "breaking bulk"), and ship to those customers. Distinct from warehouse logistics companies, which move someone else's product from seller to buyer, wholesaler-distributors purchase inventory, take title to it, then re-sell it to customers.

Most wholesaler-distributors are small- to mid-sized private companies, and, except for the largest companies, few have recognized name brands like the manufacturers and retailers which are their supply chain partners. Wholesale distribution's role in the economy is often underestimated, but the industry contributes approximately one-third of U.S. gross domestic product and is essential to our economic supply chain.

**NAW's Comments in Response to WHD's Proposed Rule**

NAW is very concerned the proposed rule will negatively impact the wholesale distribution industry, especially at a time when the economy is vulnerable and we continue to deal with pervasive inflation and the ongoing threat of a recession. Our comments below outline our concerns with the proposed rule.

Proposal is Unnecessary Given 2019 Update

The Department of Labor (Department) last updated the regulations around overtime pay exemptions in 2019. In the last update, the Department raised the minimum salary level from $23,660 to $35,568. Under the new proposal, employers would see an increase to $60,209 in 2024. For the Highly Compensated Employee (HCE), the Department is proposing to increase the salary level from $107,432 to $143,988.[2] This increase is unprecedented and unnecessary. Historically, the Department has done updates between the seven-to-nine year range.

Proposal Will Negatively Impact the Wholesale Distribution Industry

Wholesaler-distributors believe this would have a significant impact on their business. Employers reported that this rule change would result in reduced opportunities for their employees' professional development, diminished workplace autonomy, and less flexibility. All are factors that employers have increasingly brought into the workplace to meet the needs of job seekers looking to improve work/life balance. After the last overtime update, our members reported many of their employees were upset about being reclassified due to the updated regulations, some resulted in employee resignations. Given the almost 70% increase in salary threshold from 2019, this current proposal will likely result in significantly more

---

[2] This assumes the proposal would be finalized in the first quarter of 2024, if a final rule were to come out in the second quarter of 2024 the salary level would be even higher.

employees being reclassified, bringing further disruption to workplaces still coping with the effects of the recent pandemic and broader economic changes.

If this proposal were finalized, employers would need to review all the job descriptions to ensure employees are properly classified, adding an unnecessary burden to our member's resources, and inserting volatility in the workplace. This proposal stands to harm the very employees the regulation intends to help by halting or even reversing the career path a worker is on as they move from hourly employee to monthly wage earner and on into management. This setback discourages employee training and growth, diminishing workplace morale and can make promotions seem more difficult or out of reach. It also ultimately hurts employee opportunities for professional development and advancement. Employers stated if they must reclassify an employee, that will likely result in less professional development for employees, such as training and travel opportunities. These types of experiences allow employees to grow and develop in their careers. This will especially hurt opportunities given to recent college graduates.

Wholesaler-distributors have implemented many changes to the workplace due to the COVID-19 public health emergency, that remain in effect. Employers noted there is a higher reliance on remote work for those exempt employees, as well as an increased ability for flexible work hours. Should a proposal like this be finalized, those exempt employees who have enjoyed the increased flexibility might be harmed if they are deemed nonexempt under the updated regulation. Forcing employers to reclassify workers will often mean that those workers will be asked to return to the office, removing the very flexibility workers have sought to adjust to their family schedules.

In addition, employers in the wholesale distribution industry noted that this proposal would result in higher costs, squeezing already incredibly tight margins, and have a real impact on opportunities to grow. Wholesaler-distributors are typically high tax, low margin businesses. Employee costs, including wages, benefits, and taxes, make up half to three-fourths of total expenses for wholesaler-distributors. Although the data varies among distributors of different product lines, a significant number of companies report after-tax profit margins of less than 1%, with the average margin of about 2%. Businesses can only absorb so much of the increased labor cost before it is inevitably passed on to the customer, adding to the inflationary pressures and negating the economic benefits the Department is attempting to create.

<u>Proposed Salary Threshold is Excessively High to Achieve its Historical Gatekeeping Purpose</u>

The Department does not have the authority to exempt bona fide executive, administrative, or professional (EAP) employees from the exemption based on salary alone. The Department tested its authority in 2016 and, a federal district court found the Department's final rule unlawful in setting a historically high minimum salary level. The court stated:

> *Specifically, the Department's authority is limited to determining the essential qualities of, precise signification of, or marking the limits of those "bona fide executive, administrative, or professional capacity" employees who perform exempt duties and should be exempt from overtime pay. With this said, the Department does not have the authority to use a salary-level test that will effectively eliminate the duties test as prescribed by Section 213(a)(1) ... Nor does the Department have the authority to categorically exclude those who perform "bona fide executive, administrative, or professional capacity" duties based on salary level alone. In fact, the Department admits, "[T]he Secretary does not have the authority under the FLSA to adopt a 'salary only' test for exemption."*
>
> *\*\*\**
>
> *The Final Rule more than doubles the Department's previous minimum salary level, increasing it from $455 per week ($23,660 annually) to $913 per week ($47,476 annually). This significant increase would essentially make an employee's duties, functions, or tasks irrelevant if the employee's salary falls below the new minimum salary level. As a result, entire categories of previously exempt employees who perform "bona fide executive, administrative, or professional capacity" duties would now qualify for the EAP exemption based on salary alone.[3]*

With this current rule, the Department again has increased the salary by almost 70 percent. Therefore forcing employers to reclassify positions that clearly meet the duties test where the regional economy cannot justify the increase. Additionally, the Department seeks to increase the salary level of U.S. territories (Puerto Rico, Guam, the U.S. Virgin Islands, and the CNMI) to be the same standard salary level that is applied to the U.S. mainland. The 2019 overtime rule preserved the 2004 salary level for employees in Puerto Rico, Guam, the U.S. Virgin Islands, and CNMI. NAW has members located in these territories; for these companies, the increase would be 154 percent. This is not the intent of the law as it will disqualify workers based on salary alone rather than taking employees' duties and functions into account.

The Department should reconsider the proposal, as the new salary level will not serve its historical gatekeeping purpose. Should the Department deem an increase to the minimum salary level appropriate, the salary level should be set at a level that is in accordance with the historical purpose of the salary level test, which is to exclude clearly non-exempt employees from further analysis.

---

[3] See *Nevada v. U.S. Department of Labor*, 275 F. Supp. 3d 795 (E.D. Tex. 2017).

<u>Proposed Automatic Updates are Not Permitted Under the Fair Labor Standards Act (FLSA) and Violates the Administrative Procedure Act's (APA) Notice and Comment Requirements</u>

The Department has proposed automatic increases every three years based on the 35th percentile of weekly earnings for full-time salaried workers in the lowest wage census region and for the HCE total annual compensation requirement to remain at the annualized weekly earnings of the 85th percentile of full-time non-hourly workers nationally. However, the Department does not have the statutory authority under the FLSA to index its EAP exemption salary threshold. Rather, it is required under the APA to engage in notice and comment rulemaking. Notice and comment periods are extremely important so the public can provide the Department with sound information to make an informed decision. As the proposal is written, it would allow the Department to go on autopilot and ignore its responsibilities to take the time and engage the public.

Additionally, the way the Department is proposing to update the minimum salary is by lowest wage census region. This would mean the minimum salary will quickly rise upwards, driving inflation rather than responding to economic circumstances. Therefore, the Department should not move forward with the automatic updates as it is not permitted under the FLSA and violates the APA's notice and comment requirements.

<u>Treatment of Inside Sales</u>

The proposal does not address the issue of inside sales personnel. We would request the Department look to address this omission. Since 2003, NAW has asked the Department to change the antiquated way it treats inside sales, this is even more apparent since the COVID-19 public health emergency. In today's technological world, sales are made across the country, and across the world, without the sales staff having to leave their desks. The assumed distinction between "inside" and "outside" sales simply no longer exists.

The net effect of current law in this area is to undermine the ability of inside sales personnel to work as they would like to maximize their own income-earning potential, because their employer must, as a matter of law, compensate them at the overtime rate when the employee has worked more than 40 hours during the week. This serves neither the interest of employers (who are clearly interested in enhanced sales of the products(s) and/or service(s) they provide) nor employees (who are clearly interested in enhanced commission income) and is particularly problematic as a practical matter for inside sales personnel who must communicate with customers a continent away.

We ask the Department to consider a simple modification in the Code of Federal Regulations to resolve this issue and recognize the value of sales personnel to a company. For a company the business of which is selling a product, such sales are very obviously related to the "general business

operations" of the company. Therefore, NAW recommends the following changes to sections 541.201(a) and (b):

(a) To qualify for the administrative exemption, an employee must perform work related to the management or general business operations of the employer or the employer's customers. The phrase "related to management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work related to assisting with the running or servicing of the business, as distinguished, for example from working on a manufacturing production line ~~or selling a product~~.

(b) Work related to management or general business operations includes, for example, work in areas such as tax, finance, accounting, auditing, insurance, quality control, purchasing, procurement, advertising, marketing, research, safety and health, personnel management, human resources, employee benefits, labor relations, public relations, government relations, <u>sales promotion, customer service, technical support</u>, and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption. For example, a tax attorney and an accountant likely are performing work that qualifies for professional exemption.

NAW urges the Department to review this issue and bring the FLSA regulations governing sales personnel into the modern age.

<u>Conclusion</u>

For all the reasons above and in the comments filed by the Partnership to Protect Workplace Opportunity (PPWO), NAW urges the Department to withdraw the proposal. This proposal is flawed and will negatively impact the wholesale distribution industry. Instead, the Department should consider our proposed changes to modernize the regulatory view on inside sales personnel.

Thank you for your consideration of NAW's views.

Respectfully submitted,

Brian Wild
Chief Government Relations Officer
National Association of Wholesaler-Distributors