# EXHIBIT 7

## **DECLARATION OF ELIZABETH MILITO**

I, Elizabeth Milito, declare as follows:

1.  I am over the age of 18 and competent to make this declaration.

2.  I am the Executive Director of the National Federation of Independent Business (NFIB)'s Small Business Legal Center. NFIB is the nation's leading small business advocacy association, representing nearly 300,000 members in all 50 states and Washington, D.C. NFIB's Small Business Legal Center is the advocate for small business in the courts, and participates in strategic litigation such as the present suit challenging the U.S. Department of Labor's 2024 Overtime Rule.

3.  The statements in this declaration are true and within my personal knowledge and/or my review of NFIB's records.

4.  NFIB's members include small businesses in Texas and throughout the United States with employees who were exempt prior to July 1, 2024, but are now non-exempt solely because of the 2024 Overtime Rule's July 1, 2024 increase in the EAP salary threshold, or will lose their exempt status as of January 1, 2025 because of the Rule's scheduled increase in the EAP salary threshold.

5.  With respect to those workers whose exempt status will be impacted by the 2024 Rule, NFIB's members must either increase these workers' salaries or reclassify them as non-exempt under the FLSA. As non-exempt employees, the company would then to either (a) pay these workers overtime at time-and-a-half their regular rate for any hours in excess of forty worked in a given workweek; or (b) limit these worker's hours to no more than forty hours per week and thus forego their services. Once paid, NFIB's members have no ability to recoup higher

wages or overtime paid to employees, nor can NFIB's members recover the loss of the services employees would have provided when needed.

6. In addition, NFIB members have expended and will continue to expend payroll, accounting, and legal resources to assess the exempt status of each of these workers, and determine whether it makes sense as a business matter to increase their salary; incur the costs of overtime pay; or limit their hours to forty per week and forego their services. NFIB members will also have to expend resources to develop or expand scheduling and timekeeping systems for employees who will become non-exempt by virtue of the rule. Reclassification of NFIB members' employees as non-exempt is likely to result in limited work hours, reduced pay, fewer opportunities for advancement, or some combination of all three with respect to each affected employee.

7. One NFIB member company directly harmed by the 2024 Rule is Graham International, Inc. The harms Graham International Inc. has suffered and will continue to suffer as a result of the 2024 Overtime Rule are set forth in the declaration of the company's CEO, Brett Graham. Mr. Graham's declaration is attached to this Declaration as Exhibit A.

8. During the rulemaking on the 2024 Overtime Rule, NFIB submitted comments detailing its concerns, and the concerns of its members, with the then-proposed Rule. A copy of these comments is attached to this Declaration as Exhibit B.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED on this 17th day of July, 2024.

_____
Elizabeth Milito

2

# EXHIBIT A

## DECLARATION OF BRETT GRAHAM

I, Brett Graham, declare as follows:

1.    I am over the age of 18 and competent to make this declaration.

2.    I am CEO of Graham International, Inc., which is in the business of truck parts sales and truck service.

3.    The statements in this declaration are true and within my personal knowledge and/or my review of Graham International's records.

4.    Graham International, Inc. is currently a member of the National Federation of Independent Business.

5.    Graham International, Inc. is an employer subject to the Fair Labor Standards Act, and the rule entitled "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees," 89 Fed. Reg. 32842, which was published by the U.S. Department of Labor ("DOL" or "the Department") on April 24, 2024 ("the 2024 Overtime Rule").

6.    Graham International, Inc. employs approximately 23 workers who were exempt under the FLSA prior to July 1, 2024, insofar as they primarily performed executive, administrative, and/or professional duties; were paid on a salary basis; and who earned at least $684 per week ($35,558 per year). Many of these employees routinely worked more than forty hours in a given workweek.

7.    As of July 1, 2024, as a direct result of the increase in the EAP salary threshold increase contained in the 2024 Overtime Rule, approximately 14 of Graham International, Inc.'s employees have lost their exempt status. They continue to perform exactly the same duties and

continue to be paid on a salary basis. However, they are paid less than $844 per week ($43,888 per year).

8. With respect to these workers, Graham International, Inc. must either increase their salary or reclassify them as non-exempt under the FLSA. As non-exempt employees, Graham International, Inc. must now either (a) pay them overtime at time-and-a-half their regular rate for any hours in excess of forty worked in a given workweek; or (b) limit their hours to no more than forty hours per week and thus forego their services. Once paid, Graham International, Inc. has no ability to recoup higher wages or overtime paid to employees, nor can it recover the loss of the services they would have provided when needed.

9. The 2024 Overtime Rule increases the EAP exemption to $1,128 per week ($58,656 per year) as of January 1, 2025.

10. Graham International, Inc. employs approximately 5 workers are exempt under the FLSA insofar as the primarily perform executive, administrative, and/or professional duties; are paid on a salary basis; and earn at least $844 per week ($43,888 per year) but less than $1,128 per week ($58,656 per year). Many of these employees routinely work more than forty hours in a given workweek.

11. As of January 1, 2025, with respect to these workers, Graham International, Inc. must either increase their salary or reclassify them as non-exempt under the FLSA. As non-exempt employees, Graham International, Inc. will then have to either (a) pay them overtime at time-and-a-half their regular rate for any hours in excess of forty worked in a given workweek; or (b) limit their hours to no more than forty hours per week and forego their services. Again, once paid, Graham International, Inc. has no ability to recoup higher wages or overtime paid to employees, nor can it recover the loss of the services they would have provided when needed.

12. In addition, Graham International, Inc. has expended and will continue to expend payroll, accounting, and legal resources to assess the exempt status of each of these workers, and determine whether it makes sense as a business matter to increase their salary; incur the costs of overtime pay; or limit their hours to forty per week and forego their services. Graham International, Inc. will also have to expend resources to develop or expand scheduling and timekeeping systems for employees who will become non-exempt by virtue of the rule.

13. Graham International, Inc. will also be forced to reduce commission in response to the rule. We will not be able to reward outstanding performance as we have in the past.

14. Reclassification of Graham International, Inc.'s employees as non-exempt is likely to result in limited work hours, reduced pay, fewer opportunities for advancement, or some combination of all three with respect to each affected employee.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED on this 3rd day of July, 2024.

*Brett Graham* (signature)
Brett Graham

# EXHIBIT B



555 12th St. NW, Ste. 1001
Washington, D.C. 20004

Via www.regulations.gov
and U.S. First Class Mail

November 1, 2023

Hon. Julie A. Su
Acting Secretary of Labor
Attn: WHD/DRLI, U.S. Department of Labor
200 Constitution Ave. NW, Rm. S-3502
Washington, DC 20210

Dear Madam Acting Secretary:

RE:  DOL/WHD Notice of Proposed Rulemaking Titled "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees," RIN 1235-AA39, 88 *Fed. Reg.* 62152 (September 8, 2023)

This letter presents comments of the National Federation of Independent Business (NFIB)[1] on the Department of Labor (Department or DOL) notice cited above relating to the Fair Labor Standards Act (FLSA). The FLSA exempts from overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations . . .) . . . ."[2] DOL regulations impose three tests to qualify for this statutory exemption: "(1) the employee must be paid a predetermined and fixed salary that is not subject to reduction because of variations in the quality or quantity of work performed (the salary basis test); (2) the amount of salary paid must meet a minimum specified amount (the salary level test); and (3) the employee's job must primarily involve executive, administrative, or professional duties as defined by the regulations (the duties test)."[3] The DOL-proposed rule hikes the salary level test amount by more than 50%, from $35,568 to $55,068, so that overtime pay requirements apply to executive, administrative, and professional employees making up to $55,068 per year. The proposed rule also calls for updates to increase that amount every three years. NFIB recommends and requests that the Department withdraw the proposed rule, because the Department lacks authority to prescribe the rule and the rule unduly burdens America's small and independent businesses.

---

[1] NFIB is an incorporated nonprofit association representing small and independent businesses. NFIB protects and advances the ability of Americans to own, operate, and grow their businesses and ensures that governments of the United States and the fifty States hear the voice of small business as they formulate public policies.

[2] Section 13(a)(1) of the FLSA, 29 U.S.C. 213(a)(1).

[3] 88 *Fed. Reg.* at 62152, col. 3.

2

### 1. The Proposed Rule Exceeds the Department's Authority Under the FLSA

The Fair Labor Standards Act exempts from overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity"[4] -- note the use of the term "capacity" and the lack of any reference to "salary." Yet, contrary to the statute, the Department's proposed rule continues to impose a salary level test, under which no employee qualifies for the executive, administrative, or professional (EAP) exemption if the employee makes $55,068 or less per year.[5]

The U.S. Supreme Court has made clear that a federal agency such as the Department of Labor has no power, unless Congress has vested that power in the agency by law.[6] While the FLSA empowers the Secretary of Labor to define and delimit terms used in the EAP exemption in section 13(a)(1) of the FLSA, the Secretary must exercise that authority within the outer limits of section 13(a)(1).[7] Section 13(a)(1) says "capacity" and not "salary" and therefore the Secretary's regulations must address the duties of executive, administrative, and professional duties ("capacity") of employees in determining their eligibility for the statutory EAP exemption and not impose a salary level test. Indeed, the U.S. Supreme Court has said that the term "capacity" in the FLSA calls for an analysis of functions.[8] As U.S. Supreme Court Justice Brett Kavanaugh noted earlier this year:

---

[4] Section 13(a)(1) of the FLSA, 29 U.S.C. 213(a)(1).

[5] Although the preamble to the proposed rule cites $55,068 per year as the proposed salary test level amount, 88 *Fed. Reg.* at 62152, col. 3, the actual amount may be substantially higher. The Department states in the preamble that "[i]n the final rule, the Department will use the most recent data available, which will change the dollar figures," noting that "in the first quarter of 2024, the Department projects that the salary threshold could be $1,158 per week or $60,209 for a full-year worker . . . ." 88 *Fed. Reg.* at 62152-53, n. 3.

[6] *NFIB v. Department of Labor, OSHA*, 142 S. Ct. 661, 665 (2022) ("Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided."); *Louisiana Public Service Commission (PSC) v. Federal Communications Commission (FCC)*, 476 U.S. 355, 374 (1986) ("First, an agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it.").

[7] See *MCI Telecomm. Corp. v. AT&T*, 512 U.S. 218, 229 (1994) ([A]n agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear...."); *United States v. Larionoff*, 431 U.S. 864, 873 (1977) ("For regulations, in order to be valid must be consistent with the statute under which they are promulgated.").

[8] *Christopher v. SmithKline Beecham Corporation*, 587 U.S. 142, 161 (2012). In *Christopher*, in determining that certain pharmaceutical sales representatives were outside salesmen exempt from overtime under the Department's regulations implementing section 13(a)(1) of the FLSA, the Court stated (emphasis added):

> We begin with the text of the FLSA. Although the provision that establishes the overtime salesman exemption does not furnish a clear answer to the question before us, it provides at least one interpretive clue: It exempts anyone "employed . . . in the capacity of [an] outside salesman." 29 U. S. C. § 213(a)(1) (emphasis added). "Capacity," used in this sense, means "[o]utward condition or circumstances; relation; character; position." Webster's New International Dictionary 396 (2d ed. 1934); see also 2 Oxford English Dictionary 89 (def. 9) (1933) ("Position, condition, character, relation"). The statute's emphasis on the "capacity" of the employee counsels in favor of a functional rather than a formal inquiry, one that views an employee's responsibilities in the context of the particular industry in which the employee works.

3

Recall that the Act provides that employees who work in a "bona fide executive . . . capacity" are not entitled to overtime pay. 29 U.S.C. § 213(a)(1). The Act focuses on whether the employee performs executive duties, not how much an employee is paid or how an employee is paid. So it is questionable whether the Department's regulations -- which look not only at an employee's duties but also at how much an employee is paid and how an employee is paid -- will survive if and when the regulations are challenged as inconsistent with the Act.[9]

In granting a preliminary injunction against the Department's use of a salary level test to implement the EAP exemption, the U.S. District Court for the Eastern District of Texas stated:

> After reading the plain meanings together with the statute, it is clear Congress intended the EAP exemption to apply to employees doing actual executive, administrative, and professional duties. In other words, Congress defined the EAP exemption with regard to duties, which does not include a minimum salary level.[10]

The Department of Labor's current and proposed salary level test is inconsistent with section 13(a)(1) and therefore is invalid. As for the claim that the Department has long and consistently followed a salary level test, the Department's attachment to a regulation without statutory authority does not validate the Department's error.[11]

NFIB notes that, since the salary level test is inconsistent with section 13(a)(1) of the FLSA, so, too, is the DOL proposal to update the amount in that salary level test every three years. Indeed, the Department admitted that "nothing in the legislative or regulatory history . . . would support indexing or automatic increases . . . The Department believes that adopting such approaches . . . is both contrary to congressional intent and inappropriate."[12] And the U.S. District Court for the Eastern District of Texas held that, because the rule using a salary

---

[9] *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 67 (2023) (Kavanaugh, J., dissenting).

[10] *Nevada v. U.S. Department of Labor*, 218 F. Supp. 3d 520, 529 (E.D. Tex. 2016), *appeal dismissed* 2017 WL 11615172 (5th Cir. 2017). But see *Mayfield v. U.S. Department of Labor*, 2023 WL 6168251 (W.D. Tex. Sept. 20, 2023), appeal pending No. 23-50724 (5th Cir. Filed Oct. 11, 2023). In *Mayfield*, the district court applied the questionable *Chevron* doctrine -- currently under review by the U.S. Supreme Court in *Loper Bright Enterprises v. Raimondo*, No. 22-451 -- and concluded that the statutory EAP exemption was ambiguous about whether a salary level test was permissible, and then deferred to the Department of Labor's interpretation of the EAP provision to allow a salary level test. The *Mayfield* district court also stated that it was bound by a pre-*Chevron* 5th Circuit decision, *Wirtz v. Mississippi Publishers Corp.*, 364 F. 2d 603, 607 (5th Cir. 1966), in which an employer argued that "the minimum salary requirement is not a justifiable regulation under Section 13(a)(1) of the Act because not [sic] rationally related to the determination of whether an employee is employed in a 'bona fide executive * * * capacity'" and the Fifth Circuit dismissed the argument with no analysis in one sentence: "These contentions lack merit."

[11] *Summit Petroleum Corp. v. U.S. EPA*, 690 F. 3d 733, 746 (6th Cir. 2012) (" ... [W]e conclude that an agency may not insulate itself from correction merely because it has not been corrected soon enough, for a longstanding error is still an error.").

[12] 69 *Fed. Reg.* at 22171, col. 3, to 22172, col. 1 (April 23, 2004).

level test was unlawful, the provision in the rule for automatic updating of the salary level also was unlawful.[13]

Because the Department lacks statutory authority for its current and proposed salary level test and its proposed automatic updating of the dollar amount in that test, NFIB recommends and requests that the Department withdraw its proposed rule.

### 2. The Proposed Rule Unduly Burdens Small Businesses

Small businesses are the engine of the American economy.[14] As President Biden has said, "[s]mall businesses are the engines of our economic progress; they're the glue and the heart and soul of our communities. But they're getting crushed."[15] Unfortunately, the Department has contributed to the crushing weight of regulation, often ignoring the needs of small businesses in promulgating rules.[16] The NPRM implementing the EAP exemption in section 13(a)(1) of the FLSA continues this ruinous trend of failing to properly assess the impact of a proposed rule on small businesses and failing to take special account of their needs under the Regulatory Flexibility Act (RFA).[17]

For rules that are expected to have a significant economic impact on a substantial number of small entities, federal agencies, including the Department, are required by the RFA to perform an Initial Regulatory Flexibility Analysis (IRFA) prior to proposing such a rule. The Department confirmed the NPRM will have a significant impact on small firms, but its IRFA masks the proposed rule's destructive impact by underestimating the potential impacts to small businesses.

---

[13] *Nevada v. U.S. Department of Labor*, 218 F. Supp. 3d 520, 529 (E.D. Tex. 2016) ("Because the Final Rule is unlawful, the Court concludes the Department also lacks the authority to implement the automatic updating mechanism."), *appeal dismissed* 2017 WL 11615172 (5th Cir. 2017).

[14] Small businesses employ nearly half the country's private sector workforce. *Frequently Asked Questions About Small Business 2023*, U.S. Small Business Administration, Office of Advocacy (March 7, 2023), available at https://advocacy.sba.gov/2023/03/07/frequently-asked-questions-about-small-business-2023/.

[15] Remarks by President Biden on Helping Small Businesses, (February 22, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/02/22/remarks-by-president-biden-on-helping-small-businesses/.

[16] Rob Smith, NFIB, *The Regulatory Flexibility Act: Turning a Paper Tiger into a Legitimate Constraint on One-Size-Fits-All Agency Rulemaking*" (May 2023), https://strgnfibcom.blob.core.windows.net/nfibcom/NFIB-RFA-White-paper.pdf.

[17] Regulatory Flexibility Act, 5 U.S.C. 601 note. In paragraph 2(a)(4) of the RFA, Congress declared that "the failure to recognize differences in the scale and resources of regulated entities has in numerous instances adversely affected competition in the marketplace, discouraged innovation and restricted improvements in productivity . . . ." Congress also noted in paragraph 2(a)(6) of the RFA that "the practice of treating all regulated businesses, organizations, and governmental jurisdictions as equivalent may lead to inefficient use of regulatory agency resources, enforcement problems, and, in some cases, to actions inconsistent with the legislative intent of health, safety, environmental and economic welfare legislation . . . ."

The NPRM underestimates compliance costs for small businesses because it did not consider business size in its estimates of the time it takes to read, comprehend, and implement the proposed changes.  As an example, the Department suggests that "one hour is an appropriate average estimate for the time each entity would spend reviewing the changes made by this rulemaking."[18]  But it takes small businesses longer to learn of, decipher, and comply with a new regulation than it takes larger businesses and, proportionally, it often costs small businesses more.  Small firms typically have few administrative staff members and little human resources experience or regular access to legal counsel.  Only about 12% of small businesses have a human-resources professional or dedicated employee who handles personnel matters[19] and about 50% do payroll in-house.[20]  The compliance associated with employee classification, timekeeping, and recordkeeping mandated by the FLSA will fall more often than not on the busy business owner or, in some small businesses, an employee who handles back office and administrative tasks.  These individuals are generally not experts in wading through regulatory text, so familiarization time is greater than for large companies.  Alternatively, a small business could hire (if it can afford to do so) an outside expert to devise a compliance plan, but this cost will also be significantly greater than what a firm with in-house compliance staff would endure.

The Department of Labor, of all entities in the federal government, should recognize that making employment of individuals more expensive for small businesses tends to result in employment of fewer individuals by small businesses.  The Department's proposed rule will reduce the number of executive, administrative, and professional employees exempt from overtime pay requirements, thus increasing significantly the cost to employ them.  Since the scarce resources of small businesses can only stretch so far, the proposed rule puts economic pressure on small businesses to reduce the number of workers they employ.  It seems rather odd for the Department of Labor to issue the proposed rule that has the effect of cutting employment by small businesses -- the employers of half of America's workers -- when the purpose of the Department is "to foster, promote, and develop the welfare of the wage earners of the United States, to improve their working conditions, and to advance their opportunities for profitable employment."[21]

The proposed rule would, for the first time, establish a mechanism to increase the salary threshold every three years automatically.  Such triennial updates would result in instability in labor and administrative costs for small businesses in perpetuity.  That means every three years small businesses would be forced to reconsider the classifications given to their employees and reassess potential raises, bonuses, or promotions for those employees.  This reconsideration of positions costs time and money, and if it occurred during a downturn in the economy, the increased costs would exacerbate labor problems for small businesses at inopportune times.

---

[18] 88 *Fed. Reg.* at 62200, col. 1.

[19] *NFIB National Small Business Poll Tax Complexity and the IRS* (2017), available at NFIB: The Voice of Small Business - National Small Business Poll (411sbfacts.com).

[20] NFIB Research Center, *NFIB National Small Business Poll Business Structure* (2004), available at http://www.411sbfacts.com/files/bizstructurepoll[1].pdf.

[21] 29 U.S.C. 551.

6

\* \* \* \* \*

The Department has no statutory authority for its proposed rule to deny, based on salary level, exempt status to employees performing in an executive, administrative, or professional capacity. Further, the proposed rule would inflict substantial economic harm on small businesses and the workers they employ. NFIB recommends and requests that the Department withdraw its notice of proposed rulemaking and instead focus on how it can help America's small businesses grow their businesses and create jobs.

Sincerely,

*Elizabeth a Milito*

Elizabeth A. Milito, Esq.
Executive Director
NFIB Small Business Legal Center

Approved for filing:

David S. Addington
Executive Vice President
and General Counsel, NFIB