# **EXHIBIT 8**

# DECLARATION OF DAVID FRENCH

I, David French, declare as follows:

1. I am over the age of 18 and competent to make this declaration.

2. I am the Senior Vice President of Government Relations for the National Retail Federation (NRF). NRF advocates for the people, brands, policies and ideas that help retail succeed. Retail is the nation's largest private-sector employer, contributing $3.9 trillion to annual GDP and supporting one in four U.S. jobs—52 million working Americans. NRF's membership includes retail businesses in Texas and throughout the United States. Additionally, NRF is the advocate for retail businesses stores in the courts, and participates in strategic litigation such as the present suit challenging the U.S. Department of Labor's 2024 Overtime Rule.

3. The statements in this declaration are true and within my personal knowledge and/or my review of NRF's records.

4. NRF has members in Texas and throughout the United States who employ workers who were exempt prior to July 1, 2024, but are now non-exempt solely because of the 2024 Overtime Rule's July 1, 2024 increase in the EAP salary threshold, or will lose their exempt status as of January 1, 2025 because of the Rule's scheduled increase in the EAP salary threshold.

5. With respect to those workers whose exempt status will be impacted by the 2024 Rule, NRF's members must either increase these workers' salaries or reclassify them as non-exempt under the FLSA. As non-exempt employees, the company would then to either (a) pay these workers overtime at time-and-a-half their regular rate for any hours in excess of forty worked in a given workweek; or (b) limit these worker's hours to no more than forty hours per week and thus forego their services. Once paid, NRF's members have no ability to recoup higher

wages or overtime paid to employees, nor can NRF's members recover the loss of the services employees would have provided when needed.

6. In addition, NRF members have expended and will continue to expend payroll, accounting, and legal resources to assess the exempt status of each of these workers, and determine whether it makes sense as a business matter to increase their salary; incur the costs of overtime pay; or limit their hours to forty per week and forego their services. NRF members will also have to expend resources to develop or expand scheduling and timekeeping systems for employees who will become non-exempt by virtue of the rule. Reclassification of NRF members' employees as non-exempt is likely to result in limited work hours, reduced pay, fewer opportunities for advancement, or some combination of all three with respect to each affected employee.

7. During the rulemaking on the 2024 Overtime Rule, NRF submitted comments detailing its concerns, and the concerns of its members, with the then-proposed Rule. A copy of NRF's comments is attached to this Declaration as Exhibit A.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED on this 17th day of July, 2024.

*David French*
David French (Jul 17, 2024 14:45 EDT)
David French

2

# EXHIBIT A



November 7, 2023

The Honorable Jessica Looman
Director
Wage and Hour Division
U.S. Department of Labor
200 Constitution Avenue, NW
Washington, DC  20210
*via regulations.gov*

**Re:** **Comments on Notice of Proposed Rulemaking Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees**

Dear Ms. Looman:

The National Retail Federation ("NRF") submits these comments in response to the Department of Labor's ("Department") September 8, 2023, notice of proposed rulemaking, "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees." (88 Fed. Reg. 62152.) For the reasons articulated below, NRF strongly opposes the Department's proposed increase to the minimum salary threshold for the executive, administrative, and professional ("EAP") exemptions.

The National Retail Federation passionately advocates for the people, brands, policies and ideas that help retail succeed. From its headquarters in Washington, D.C., NRF empowers the industry that powers the economy. Retail is the nation's largest private-sector employer, contributing $3.9 trillion to annual GDP and supporting one in four U.S. jobs — 52 million working Americans. For over a century, NRF has been a voice for every retailer and every retail job, educating, inspiring and communicating the powerful impact retail has on local communities and global economies.

NRF strongly opposes the Department's proposal for multiple reasons. First, there is no need to alter the minimum salary threshold for the EAP exemptions at this time. The purpose of the minimum salary threshold is to establish a meaningful divide between the minimum earnings of exempt versus nonexempt employees. Because there has been no increase to the minimum wage for nonexempt employees since 2019, and because the "nominal salaries" of exempt employees have "rapidly-increased" since 2019 (88 Fed. Reg. 62159), a significant divide between the minimum incomes of exempt and nonexempt employees already exists and there is no need to mandate an even greater divide.

**NATIONAL RETAIL FEDERATION**
1101 New York Avenue, NW, Suite 1200
Washington, DC 20005
www.nrf.com

National Retail Federation
November 7, 2023
Page 2

Second, the amount of the proposed salary increase is objectively excessive. Since 2004, the minimum salary for exempt employees has been slightly more than two times the annual earnings for a full-time, minimum-wage, nonexempt employee. The Department's proposed new $60,209 minimum salary for exempt employees would be roughly four times the annual earnings for a full-time, minimum-wage nonexempt employee. The Department's proposed increase – which amounts to a 14% average annual increase of the minimum salary per year – far outpaces all other comparable earnings increases.

Third, NRF is confident that the ripple effects of the proposed increased minimum salary threshold will have profoundly negative effects on the retail industry and, by extension, the U.S. economy. As the Department notes, the proposed increased minimum salary threshold would require roughly over three million exempt employees to be reclassified as nonexempt employees. A significant portion of affected employees work in the retail sector, which is still trying to recover from the devastating impacts of the COVID-19 pandemic. Retailers simply cannot afford to increase entry-level exempt salaries by 69% in the current economy. Therefore, millions of retail managers will be demoted from exempt to non-exempt positions, causing those workers to lose significant employment benefits and risking the retail sector losing its future leaders.

Finally, NRF also strongly opposes the concept of establishing automatic increases to the minimum salary threshold. Had Congress wanted minimum salaries to automatically increase, it could have passed a law mandating such increases. Instead, Congress empowered the Department to "define and delimit" the EAP exemptions "from time to time" through a thoughtful administrative procedure. Whether and how to adjust the minimum salary threshold are dependent on the duties prong of the exemption and how those duties tests juxtapose with the nature of EAP job at the time as well as the state of the economy overall. Putting salary increases on autopilot without considering the effect such increases will have on the duties test creates the very same problem that doomed the Department's 2016 rule: oversized salaries alone will ultimately determine who is exempt without reference to an employee's duties. Moreover, automatically increasing the minimum salary threshold without obtaining feedback regarding the effect each such increase will have on the economy, including the retail sector, would improperly bypass the Administrative Procedures Act ("APA"). NRF requests that the Department continue to analyze the minimum salary threshold on an as-needed and considered basis, as it has done historically.

**The Department is Unclear as to Exactly What the Proposed Exemption Threshold Is**

Before addressing these concerns, NRF objects to the Department's intentional lack of clarity about what exactly it is proposing. When the rule was released, the Department's own press release stated that the "proposed rule would guarantee overtime pay for most salaried workers earning less than $1,059 per week, about $55,000 per year."[1] This figure of $1,059 represents the calculated value of the 35th percentile of full-time wages in the South using 2022 data. However, the Department, in a footnote at 88 Fed. Reg. 62153, states its intention to utilize 2024 data when setting the threshold in the final rule. It then estimates the resultant threshold to

---

[1] See https://www.dol.gov/newsroom/releases/whd/whd20230830.

National Retail Federation
November 7, 2023
Page 3

be $1,158 per week or $60,209 per year. Given the ambiguity, NRF will use this higher value for the purpose of these comments.

**There Is No Articulated Need for the Department's Proposed Increase**

The Fair Labor Standard Act (FLSA) vested the Department with authority to define and delimit the EAP exemptions from time to time through regulation. Historically, the Department has used this authority via notice and comment rulemaking to adjust the definitions in response to economic circumstances, including adjustment to the minimum salary threshold. As the Department noted several times throughout its proposed rule, the purpose of updating the minimum salary threshold is to ensure the threshold serves its intended purpose, i.e., to establish a meaningful divide between minimum salaries for exempt employees and minimum wages for nonexempt employees. (See, e.g., 88 Fed. Reg. 62154 ("exempted workers typically earn salaries well above *the minimum wage*" (emphasis added)), 62176 ("even a well-calibrated salary level that is not kept up to date becomes obsolete as *wages for nonexempt employees increase* over time" (emphasis added)).) Several objective indicators confirm there is no current "need" to increase the minimum salary threshold.[2]

First, as the Department noted, increases to the minimum salary threshold are appropriate when the minimum wage rises to such a level that it erodes the distinction between exempt and nonexempt employees. For example, the Department raised the minimum salary threshold in 2004 because the minimum wage had increased so much that full-time minimum wage earners were earning more than the then-applicable long test salary level and nearly as much as the then-applicable short test salary level. (88 Fed. Reg. 62155) ("In 1997, the Federal minimum wage rose to $5.15 per hour, which for a 40-hour week not only exceeded the long test salary levels, but also was close to the higher short test salary level of $250 per week." (footnote omitted).) There has been no increase of the federal minimum wage since 2019, and therefore, there is no need to adjust the minimum salary threshold.

Second, comparing apples to apples, the current minimum salary threshold establishes a meaningful divide between the *minimum* earnings of a nonexempt employee and the *minimum* earnings of an exempt employee. Specifically, the current federal minimum wage for nonexempt employees is $7.25, which for a full-time, minimum-wage, nonexempt employee translates into annual earnings of $15,080 (i.e., $7.25 x 2,080). The current minimum salary for an EAP exempt employee is $35,568, i.e., roughly 2.35 times the annual earnings of a full-time, minimum-wage, nonexempt employee. A minimum salary threshold that is more than two times the annual minimum wage earnings is more than adequate to distinguish between exempt and nonexempt employees. Indeed, California sets the threshold for its EAP exempt salaries at two times the state minimum wage. (*See, e.g.*, Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(f) ("an [executive exempt] employee must also earn a monthly salary equivalent to *no less than two (2) times the state minimum wage for full-time employment*." (emphasis added)).

---

[2] The Department indicated it would outline the "*Need* For Rulemaking."  (88 Fed. Reg. 62157 (emphasis added).) However, no "need" was actually articulated. Instead, the Department explained its "goals" in proposing to increase the minimum salary threshold.

National Retail Federation
November 7, 2023
Page 4

This significant divide in minimum income levels for exempt and nonexempt employees exists not only at the federal level, but across most states as well. Nineteen states apply the federal minimum wage of $7.25,[3] and thus, the same wide divide that exists at the federal level (i.e., $15,080 in annual minimum wage earnings versus $35,568 in minimum salaries for EAP exempt employees) exists in those states as well. Moreover, sixteen states have a minimum wage between $7.26 and $12.00.[4] In those states, the existing federal minimum salary threshold still provides a significant divide between the minimum compensation for exempt and nonexempt employees. For example, a full-time, nonexempt employee earning a minimum wage of $12 per hour earns $24,960 a year while an exempt employee must earn a minimum of $35,568 per year – a difference of $10,608 or 43%. Indeed, the State of Washington currently has the highest minimum wage in the nation at $15.74, which for a full-time, nonexempt employee translates to annual minimum earnings of $32,739.20. Thus, the current federal minimum salary threshold of $35,568 is still $2,828.80 higher than the annual earnings of a nonexempt employee employed at the highest state minimum wage in the nation.

Separately, there is also no "need" for the Department to compare the current minimum salary threshold to the weekly earnings of other salaried employees as it did in 2004 and 2019. Again, the role of the minimum salary threshold is to ensure there is a meaningful divide between exempt and nonexempt *minimum wages*. (See 88 Fed. Reg. 62154 & 62176.) The Department looked to the weekly earnings of full-time salaried workers in the lowest-wage Census Region in 2004 because the Department could no longer look to the existing minimum wage. As mentioned above, by 2004 the federal minimum wage surpassed or nearly matched the then-existing minimum salary thresholds. Therefore, in 2004, the Department was forced to look to a different measuring stick – the weekly earnings of salaried employees in the lowest-wage Census Region. Similarly, when the Department increased the minimum salary threshold in 2019, there had again been a significant increase of the minimum wage. The federal minimum wage rose from $5.15 in 2004 to $7.25 in 2019 – an increase of roughly 41%. Here, there has been no increase of the federal minimum wage, and thus no erosion of the margin between the minimum wage and the minimum salary threshold.

Indeed, the Department states unequivocally that, during the past four years, "salaried workers in the U.S. economy have experienced *a rapid growth in their nominal wages*[.]" (88 Fed. Reg. 62159 (emphasis added).) Thus, with no government intervention at all, market forces have already increased the compensation of lower-level exempt employees.

The Department's proposed shift away from comparing the minimum salary threshold to the minimum earnings of nonexempt employees, and to instead compare the minimum salary threshold to other salaried incomes, fundamentally alters the role of the minimum salary threshold in the exemption analysis: rather than ensuring there is a sufficient divide in the

---

[3] The minimum wage in Alabama, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, New Hampshire, North Carolina, North Dakota, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Wisconsin, and Wyoming is $7.25.
[4] Alaska, Arkansas, Delaware, Florida, Hawaii, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, Ohio, South Dakota, Virginia, and West Virginia.

National Retail Federation
November 7, 2023
Page 5

incomes of exempt and nonexempt employees, the Department seeks to ensure the minimum salary threshold is constantly chasing (the 35th percentile of) existing exempt salaries. This approach is additionally burdensome and problematic as it will result in the 35th percentile threshold spiraling. If the Department sets the threshold at the 35th percentile of weekly earnings of all full-time salaried workers, employers will increase wages of exempt workers to meet the new threshold or reclassify workers to nonexempt. Three years later, the threshold will be set at the 35th percentile based on the newly elevated salaries of these salaried workers. Thus, the threshold is routinely and artificially raised by the Department's actions and the resulting actions of employers. The threshold will become astronomically high very quickly.

Finally, NRF notes that it has only been four years since the Department last increased the minimum salary threshold. Historically, the Department has only found a need to adjust the minimum salary threshold after the passage of much longer periods of time (and after the cognizable narrowing of the gap between minimum wages and the minimum salary threshold). As the Department noted, it did not increase the minimum salary threshold established in 1975 until 2004 (i.e., after 29 years), and after 2004, the Department did not increase the minimum salary threshold again until 2019 (i.e., 15 years later). (88 Fed. Reg. 62155.) The retail industry sees no compelling reason to revisit the minimum salary threshold after just four years, particularly as the economy generally, and the retail industry specifically, are just beginning to emerge from the unprecedented challenges of the COVID-19 pandemic.

### The Amount of the Proposed Minimum Salary Increase is Excessive

Several objective indicators confirm the amount of the proposed minimum salary increase is excessive. The Department's proposed increase from the $35,568 minimum salary set in 2019 to $60,209 as of 2024 represents an average annual salary increase of ***$4928*** per year over five years. That average annual increase is roughly 7 to 11 times greater than the historical average annual increases implemented by the Department. For example:

- In 1975, the Department set the minimum salary threshold for exempt employees at $155 per week ($8,060 annually) for executive and administrative employees, and at $170 per week ($8,840 annually) for professional employees.

- In 2004 – 29 years later – the Department increased the minimum salary threshold for all exempt positions to $23,660. This increase represented an average increase of ***$511*** per year for each of the 29 years for professional employees and an average increase of ***$538`*** per year for executive and administrative employees.

- In 2019 – 15 years later – the Department increased the minimum salary threshold from $23,660 to $35,568. This increase represented an average increase of ***$794*** per year for each of the 15 years.

National Retail Federation
November 7, 2023
Page 6

- Now, the Department proposes an increase of the minimum salary threshold from $35,568 to $60,209. Again, this proposed increase represents an average increase of ***$4,928*** per year over five years, 2019-2024.

The Department's proposed $4,928 average increase over five years also represents a roughly ***14%*** annual wage increase each year. By comparison:

- Wages and salaries in the U.S. on average increased: ***2.8%*** in 2020; ***5.0%*** in 2021; ***5.1%*** in 2022; and ***4.6%*** for the 12-month period ending June 2023. (*See* https://www.bls.gov/charts/employment-cost-index/wages-and-salaries-and-benefits-in-private-industry-12-month-percent-change.htm)

- Benefits in the U.S. on average increased: ***2.1%*** in 2020; ***2.9%*** in 2021; ***4.8%*** in 2022; and ***4.6%*** for the 12-month period ending June 2023. (*See* https://www.bls.gov/charts/employment-cost-index/wages-and-salaries-and-benefits-in-private-industry-12-month-percent-change.htm)

- Social Security benefits increased: ***1.3***% in 2020; ***5.9***% in 2021; and ***8.7***% in 2022. (*See* https://www.ssa.gov/oact/cola/colaseries.html.)

- President Biden has proposed providing civilian federal employees with an average ***5.2%*** pay increase in 2024 (representing the largest increase in four decades). (See https://federalnewsnetwork.com/pay/2023/08/biden-makes-formal-plans-for-2024-federal-pay-raise/.)

The Department does not explain why its proposed increase for entry-level EAP exempt salaries is so disproportionately higher than the wage increases for other segments of the economy.

Moreover, the Department's proposed increase to the minimum salary threshold represents a significant shift in the historical ratio between exempt and nonexempt employees' earnings. When the Department adjusted the minimum salary threshold in 2004 and 2019, it set the minimum salary to be slightly more than two times the annual minimum wage. Specifically, the minimum wage in 2004 was $5.15, which translates into an annual income of $10,712 (i.e., $5.15 x 2,080). When the Department re-set the minimum salary threshold in 2004 to $23,660, the minimum salary threshold represented roughly 2.2 times the annual income for a full-time, minimum-wage employee. Similarly, the minimum wage in 2019 was $7.25, and so a full-time, minimum-wage, nonexempt employee earned $15,080 per year (i.e., $7.25 x 2,080 hours). When the Department increased the minimum salary threshold in 2019 to $35,568, the minimum salary threshold was roughly 2.35 times greater than annual minimum wage earnings. The Department's current proposed increase to $60,209 represents a minimum salary that is roughly four times greater than annual, full-time, minimum-wage earnings.

National Retail Federation
November 7, 2023
Page 7

NRF submits there is no compelling basis for mandating such an outpaced increase of *starting* salaries for *entry-level* exempt positions, particularly when employers generally and retailers specifically are already struggling with the pressures of inflation and supply chain changes.

NRF further notes that the Department's methodology necessarily produced an excessive increase. Again, as the Department confirmed, "salaried workers in the U.S. have experienced *a rapid growth in their nominal wages*" during the past four years. (88 Fed. Reg. 62159.) Thus, when the Department examined the "weekly earnings for salaried employees in the lowest-wage Census Region," it was working with salaries that had already been significantly elevated (without any government intervention). By comparing the minimum salary threshold to other salaried employees (rather than to the minimum wage of nonexempt employees), the Department was chasing already-inflated salaries.

Further, rather than set the threshold salary at the 20th percentile of salaries in the lowest-wage Census Region as it had done in 2004 and 2019, the Department set the salary threshold at the 35th percentile. Thus, the Department was not only chasing already-inflated salaries, but it was chasing those inflated salaries at a higher percentile. The result – a proposed 69% increase of the minimum salary – is excessive.

**The Proposed Increase of The Minimum Salary Threshold Will Have Negative Ramifications on Currently Exempt Retail Employees**

As the Department recognized, exempt employees typically enjoy "better opportunities for advancement." (88 Fed. Reg. 62154.) Those opportunities arise from the flexibility that exempt status provides. The number of hours an exempt employee works, and when an exempt employee works those hours, is not an issue when an employee is paid on a salaried basis. Exempt employees may choose to attend a meeting, sit in on a training phone call, or observe other operations during the workday, knowing they can complete their core, assigned duties in the evening without creating an overtime wage burden. The minimum salary threshold is designed to ensure employers pay their exempt employees higher salaries for the additional time those employees put in to learn the business and as an investment in those employees' careers. The exempt employees reciprocate by investing more time in the development of their skills and corporate knowledge. However, the Department's proposed 69% increase to the minimum salary threshold will eliminate that flexibility – and the potential for upward growth it provides – for millions of workers.

Since retailers disproportionately provide jobs and work experience for young people, this dynamic will be particularly impactful on affected employees in the retail industry. Retail and restaurants employ 58% of Americas teens. Fully 59% of Americans have worked a retail job at some point in their careers. For 32% of Americans, their first job was in the retail industry. Many of the foundational work skills are learned through working retail jobs. As such, it is not uncommon for young, entry-level managers in the retail industry to earn salaries close to the minimum salary threshold. The Department's proposed rule will force retailers to demote these

National Retail Federation
November 7, 2023
Page 8

workers and classify them as nonexempt, regardless of the worker's preference. Their work time will necessarily be more limited and controlled. These young and ambitious workers will be unable to choose to sit in on a meeting or a phone call to learn more about managing a company, because they will be expected to dedicate their work time to their nonexempt duties. Moreover, they will likely lose the opportunity to travel on the employer's behalf, again depriving them of critical training and learning experiences. Their ability to work away from their duty station may be eliminated. In sum, the Department needlessly creates obstacles for a generation of young workers looking to gain skills, make connections, and advance their careers.

The millions of employees whom the Department anticipates will be reclassified will also lose the peace of mind that comes with knowing they will receive the same, guaranteed income each pay period. Their nonexempt income will depend on the hours they work, and whether there is a need for more workers to perform that work. These workers are also likely to receive reduced overall compensation packages. As the Department noted, exempt workers "receive salaries well above the minimum wage" to compensate them for longer hours spent not only on their regular job duties, but on learning about other operations within the company and how coordination of various operations can help improve the performance of the company overall. Once reclassified as nonexempt employees, these workers will receive compensation only for completing the nonexempt duties assigned to them. Many reclassified executive exempt employees will also become ineligible for performance bonuses that are based on the performance of the team they manage, further reducing the reclassified employees' earnings potential.

Additionally, as the Department noted, exempt employees typically "enjoy other privileges to compensate them for their long hours of work," including fringe benefits. (88 Fed. Reg. 62154.) Some employees converted to nonexempt status will become ineligible for certain benefits such as increased vacation, life insurance, long-term disability insurance, and certain supplemental incentive compensation initiatives only offered to exempt employees. Indeed, some benefits such as short-term and long-term disability are typically not provided to nonexempt employees.

Finally, many exempt employees have also enjoyed the added benefits of choosing to work from home since the pandemic. This is particularly true for our members' corporate office staff. If those employees must be now reclassified to nonexempt status, they will likely lose the flexibility to decide where they work. To avoid liability for off-the-clock work, employers typically require nonexempt employees to work on site so there is a bright-line distinction between work and non-work time. It is much more difficult for employers to manage total work time when employees work remotely. However, today's workplace – and workers' preferences – are dramatically different than they were in 2019. In the wake of the surge in remote work during the COVID-19 pandemic, the Department essentially conceded the difficulty employers face when attempting to track remotely worked hours and issued assistive guidance.[5] The Department's proposed rule does not address what effect its proposed salary increase will have

---

[5] See Field Assistance Bulletin No. 2020-5, August 24, 2020

National Retail Federation
November 7, 2023
Page 9

on exempt remote workers who are likely to be reclassified as nonexempt and forced to work on site. In addition to the general loss of flexibility and freedom, these workers will resume incurring commuting costs and the attendant cost of childcare.

## Automatic Increases of the Minimum Salary Threshold Are Improper

As a preliminary matter, NRF questions whether the Department has authority to establish automatic increases to the minimum salary threshold. Congress vested the Department with authority to "define and delimit" the EAP exemptions. If Congress thought automatic increases to the minimum salary threshold were appropriate, it could have mandated such increases itself. Instead, Congress asked the Department to revisit the EAP exemptions "from time to time", through regulation 29 U.S.C. § 213(a)(1), expecting the Department to use its deep knowledge of the U.S. economy in general, and labor market in particular, to establish appropriate parameters for the exemptions. The Department's suggestion that it may shirk that decision-making process and instead mandate automatic salary increases appears to violate the responsibilities assigned to it by Congress.

In any event, where to peg the minimum salary threshold cannot be determined in a vacuum. As the Department emphasized multiple times throughout the proposed rule, the minimum salary threshold and the duties test are intended to work together to help identify EAP-exempt employees. The minimum salary threshold should not render the duties test irrelevant, nor should the duties test render the minimum salary threshold irrelevant. However, the Department's proposed automatic increases to the minimum salary threshold – particularly given the spiraling effect noted above – will elevate the minimum salary so rapidly that the salary threshold will render the duties test moot. This decoupling of the minimum salary threshold and the duties test is precisely what rendered void the Department's 2016 rule.

Moreover, Congress empowered the Department to review the EAP exemptions, including the minimum salary threshold, "from time to time" so that the Department could apply its expertise in setting an appropriate salary level. Indeed, the Department acknowledged the need for it to exercise this judgment when it proposed a pause in the automatic updating "where economic or other conditions merit." (88 Fed. Reg. 62179.) It would be naïve to suggest that in any given year the Department can rely on an automatic increase without assessing its impact on the overall economy. For example, an automatic increase to the minimum salary threshold in the midst of the COVID-19 pandemic would have only added more strain to an economy that was already being tested (just as proposing a 69% increase to the minimum salary threshold will do in light of inflation currently plaguing the U.S. economy). There is no way to predict what effect future, automatic increases to the minimum salary threshold will have on the future economy. The Department should retain its authority to adjust the minimum salary threshold only when the need arises, and then to a level that best serves employers and employees in light of current economic conditions. NRF respectfully submits that mandating an automatic minimum salary threshold adjustment every three years without any rulemaking under the APA, and thus without examination of the necessity or justification for an increase, and without any input from the

National Retail Federation
November 7, 2023
Page 10

public, the regulated community, or any other affected parties, would be an impermissible deviation from the authority delegated to the Department by Congress.

Finally, the "pause" that the Department proposes to give itself to determine whether an automatic minimum salary threshold increase is appropriate does not appear workable. The proposed 120-day pause would not provide sufficient time to allow the Department to complete a meaningful notice and comment period. There simply is no need to handcuff the Department's flexibility in assessing and setting the minimum salary threshold by imposing automatic updates.

### A Policy Change of This Magnitude Should Not Be Rushed

As articulated above, the regulatory change being considered by the Department will have a meaningful impact on the economy and the ability of employers to hire and retain workers. Accordingly, NRF and 107 other business organizations wrote to you on September 25, 2023 to request a 60-day extension to the comment period to provide the regulated community with sufficient time to analyze and respond to the proposal.[6] The Department routinely grants much longer comment periods, particularly for rules of this magnitude. However, the Department rejected our request with no substantive explanation.

Similarly, the Department is proposing that "all aspects of this proposed rule would become effective 60 days after publication of a final rule." NRF notes that this period is shorter than the effective dates for the 2004, 2016, and 2019 rules. This proposed 60-day implementation period is far too short, since, as the Department is aware, compliance will be a lengthy, complex, and burdensome process. The brevity of the implementation period is particularly problematic given the Department's previously mentioned lack of clarity about the dollar value of the proposed threshold.

Full compliance with any newly-modified FLSA regulations cannot begin until the Department finalizes the new rules. Once informed of the new rules, employers must read and become familiar with the new rule. Some will hire outside counsel and/or employment consultants to assist them in understanding the new regulations. Then, employers must commence a detailed examination to determine the exact cohort of workers affected. Then, for each and every affected worker, the employer must examine his or her duties, hours, wages, schedule, benefits, and perquisites. Again, this analysis must be performed *individually* for each and every affected worker. Once completed, the employer must convey to the employee directly how he or she is going to be affected. Will he lose the managerial title for which he worked for years? Will she still be able to travel out-of-state for the training next month? The employer and the affected will need time to adapt to these impacts. Finally, the employer will need to alter extant timekeeping systems and develop applicable training and policies for the reclassified workforce. In sum, the compliance burden for this rule is massive. Given the monumental burden of implementation, NRF suggests a minimum of a 180-day implementation period.

---

[6] See http://protectingopportunity.org/wp-content/uploads/2023/09/OT-Extension-Request_Sept-2023.pdf

National Retail Federation
November 7, 2023
Page 11

## Conclusion

In sum, NRF submits the proposed rule will have a significantly detrimental impact on retailers' ability to offer the most flexible, generous, and tailored benefits packages to lower-level exempt employees in the industry.

NRF thanks the Department for the opportunity to comment on the rule.

Sincerely,

David French
Senior Vice President
Government Relations

**\*\*The law firm of DLA Piper LLP (US) assisted in drafting these comments on behalf of the National Retail Federation.**