# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| STATE OF TEXAS, | CIVIL ACTION NO. 4:24-CV-00499- SDJ |
| Plaintiff, | LEAD CASE |
| PLANO CHAMBER OF COMMERCE, et al | |
| Plaintiffs, | CIVIL ACTION NO. 4:24-CV-00468-SDJ |
| v. | |
| UNITED STATES DEPARTMENT OF LABOR, JULIE A. SU, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF LABOR, THE WAGE AND HOUR DIVISION OF THE DEPARTMENT OF LABOR AND JESSICA LOOMAN IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE WAGE AND HOUR DIVISION, | |
| Defendants. | |

**BRIEF OF AMICUS CURIAE NATIONAL EMPLOYMENT LAW PROJECT, ECONOMIC POLICY INSTITUTE, NATIONAL WOMEN'S LAW CENTER AND THE SERVICE EMPLOYEES' INTERNATIONAL UNION IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

Catherine K. Ruckelshaus
National Employment Law Project, Inc.
90 Broad Street, Suite 1100
New York, NY 10004
cruckelshaus@nelp.org

*Attorney for Amici Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION AND INTEREST OF AMICI CURIAE ........................................................ 1

ARGUMENT .............................................................................................................................. 3

    I.     The Department's Rule Upholds the Statutory Language and Purposes of the EAP Overtime Exemptions ................................................................. 3

    II.    The Department's Salary Threshold is a Proper Indicator of Who Could Fall into the Exemptions, and Will Bolster Workers' Economic Security and Fuel Economic Growth ........................................................................ 6

    III.   The Workers Most Likely to Benefit from the Adjustments Are Women and People of Color, Who Hold Lower-Paying Jobs Even When They are Salaried ................................................................................................. 8

    IV.   The Proposed Adjustments to the Exemptions are Fully Within the DOL's Congressionally Delegated Authority ........................................................... 11

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) ................................................................... 3

*Overnight Motor Transport v. Missel*, 316 U.S. 572 (1941) .................................................. 3, 4

*Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947) ......................................................... 3

**Statutes and Regulations**

26 Maine. Rev. Stat. §§ 663(3)(K); 664(1) .............................................................................. 13

29 U.S.C. § 202(a) ..................................................................................................................... 3

29 U.S.C. § 213(a). .................................................................................................................... 4

29 U.S.C. § 213(a)(1) ........................................................................................................ *passim*

81 Fed. Reg 32391 at 32444 (May 23, 2016). .......................................................................... 7

88 Fed. Reg. 62157 ................................................................................................................... 4

Cal. Labor Code § 515(a) ........................................................................................................ 11

Cal. Labor Code § 1182.12(c) ................................................................................................. 11

Colo. Overtime and Minimum Pay Standards #38, 7 CCR 1103-1, Rule 2.5.1 .................. 10,11

N.Y. Labor Law § 652(1) ........................................................................................................ 11

NYS Dep't of Labor, Proposed Amendments to Section 141-3.2(c)(1)(i)(e)(2) of 12 NYCRR, October 4, 2023 ................................................................................................................ 10

Rev. Code of Wash. § 49.46.020(2)(b) ................................................................................... 11

Wash. Admin. Code § 296-128-545 ........................................................................................ 11

**Other Authorities**

"Burlington Workers Nab Collective Cert. After Axed $11M Deal," Law 360, October 31, 2023  9

"'Everything Going the Wrong Way': Dollar Stores Hit a Pandemic Downturn," N.Y. Times, September 30, 2021 ........................................................................................................... 9

"How a Dollar General Employee Went Vital on Tik Tok," N.Y. Times, April 18, 2022 ............... 9

Judy Conti, "The Case for Reforming Federal Overtime Rules: Stories from America's Middle Class," National Employment Law Project, December 2014 ...................................................... 9

Lauren Cohen, Umit Gurun & N. Bugra Ozel, "Too Many Managers: The Strategic Use of Titles to Avoid Overtime Payments," National Bureau of Economic Research, Working Paper 30826 (January 2023) ................................................................................................................................ 5

National Women's Law Center comments on rule at p. 4, Nov. 15, 2023 ..................................... 8

"Publix employees claim overtime owed," Grocery Dive, October 31, 2023 ................................ 8

Rebecca Dixon & Heidi Shierholz, "Time to Expand Overtime Pay," Democracy Journal, November 1, 2021 ........................................................................................................................ 10

Report of the Minimum Wage Study Commission Volume IV, pp. 236 & 240 (June 1981) .......... 4

"Retail workers' unpaid overtime pay lawsuit reinstated," Business Insurance, October 16, 2023 8

Ross Eisenbrey, Economic Policy Institute, "Updated Overtime Rules Will Help Millions of Middle-Class Workers," Testimony Before the U.S. House of Representatives Subcommittee on Workforce Protections' Hearing on "Examining the Costs and Consequences of the Administration's Overtime Proposal," July 23, 2015 ............................................................... 6, 7

Samantha Sanders and Heidi Shierholz, "Explaining the Department of Labor's New Overtime Rule," Economic Policy Institute, April 23, 2024 ................................................................... 6, 8

State of Cal., Dep't of Indus. Rel., News Release Number: 2023-66, "California's Minimum Wage to Increase to $16 per hour in January 2024," September 26, 2023, ........................................ 10

"The human cost of Family Dollar's low prices: Its workers describe 80-hour weeks, sleeping in chairs, and snakes in the stockroom," Business Insider, January 24, 2022 .............................. 12

"Unpaid Overtime in Healthcare," Lipsky Lowe (August 14, 2024) ............................................ 9

Wash. State Dep't of Labor & Indus., "New salary threshold implementation schedule" ........... 10

"You're Now a 'Manager.' Forget About Overtime Pay: New evidence shows that many employers are mislabeling rank-and-file workers as managers to avoid paying them overtime," N.Y. Times, March 6, 2023 ............................................................................................................................. 8

## INTRODUCTION AND INTEREST OF AMICI

Amici National Employment Law Project, Economic Policy Institute, National Women's Law Center and the Service Employees International Union write in support of the United States Department of Labor's ("DOL" or "the Department") recently-promulgated regulation that defines the scope of the minimum wage and overtime exemptions for so-called "white collar" workers falling into administrative, executive and professional categories ("EAP" or "white collar" exemptions) as listed at 29 U.S.C. § 213(a)(1). Amici write not to repeat arguments made by the parties, but to assist this court with a reminder of the Congressional intent behind overtime protections, a description of the kinds of workers currently swept into the EAP exemptions, and the impacts of the Rule on employers, workers, and the overall job market. Contrary to the Plaintiffs' claims, the well-reasoned, considered, and supported Rule is fully within the bounds of the clear statutory directive to define and delimit the exemptions, and is not arbitrary and capricious.

The National Employment Law Project ("NELP") is a non-profit research and policy organization with over 55 years of experience advocating for the employment and labor rights of workers paid low wages. NELP seeks to ensure that all employees receive the basic workplace protections guaranteed in U.S. labor and employment laws, including fair pay and compensation for working excessive hours. NELP litigates directly and appears as amicus curiae in federal and state courts, including the U.S. Supreme Court.

The Economic Policy Institute (EPI) is a non-profit organization with over 35 years of experience analyzing the effects of economic policy on the lives of working

1

people in the United States. EPI has studied and produced extensive research on the issue of overtime pay. This includes research on the impacts of expanding overtime protections. EPI has participated as amicus curiae in numerous cases impacting workers' rights under federal and state wage and hour laws. EPI strives to protect and improve the economic conditions of working people. EPI is concerned that all working people in the United States have good jobs with fair pay.

The National Women's Law Center ("NWLC") fights for gender justice — in the courts, in public policy, and in our society — working across the issues that are central to the lives of women and girls. NWLC uses the law in all its forms to change culture and drive solutions to the gender inequity that shapes our society and to break down the barriers that harm all of us — especially women of color, LGBTQ people, and women and families with low incomes. Since its founding in 1972, NWLC has worked to advance workplace justice, income security, educational opportunities, and health and reproductive rights for women and girls and has participated as counsel or amicus curiae in a range of cases in the U.S. Supreme Court and the lower courts.

The Service Employees International Union ("SEIU") is a labor union representing approximately two million working people employed across the United States, Puerto Rico, and Canada in the healthcare, janitorial, security, airport, and fast food industries, and in the public sector. SEIU has significant familiarity with U.S. employment and labor laws and a strong interest in ensuring they are interpreted correctly.

While Plaintiffs challenge the Rule on several grounds, their factual allegations contain many inaccuracies and assumptions that should not be taken as true. In particular,

2

Plaintiffs' claims that the Department is not authorized to set a salary threshold is not supported by the language and history of the exemptions and misstate the impacts of setting a salary threshold. The Department's Rule, including the use of a salary threshold, is a time-tested and effective means of determining which employees are bona fide executive, administrative and professional workers properly exempted from the protections of the Fair Labor Standards Act's ("FLSA" or "the Act") protections.[1] Amici's expertise and long engagement with workers in our economy bring important perspectives to aid the court in its deliberations. This court should grant the Defendants' cross-motion and deny the Plaintiffs' motions for summary judgment.

## ARGUMENT

### I. The Department's Rule Upholds the Statutory Language and Purposes of the EAP Overtime Exemptions.

Congress passed the FLSA to "lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions," *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727 (1947), by "insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945), quoting Message of the President to Congress, May 24, 1934; 29 U.S.C. § 202(a). Among other things, the Act shields workers from oppressively long working hours and "labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a); *Overnight Motor Transport v. Missel*, 316 U.S. 572, 576 (1941).

---

[1] While the EAP exemptions at 213(a)(1) pertain to both minimum wage and overtime coverage, amici will address overtime impacts and importance in this brief.

3

The FLSA's guarantee of premium pay for overtime hours was meant to encourage employers to spread out extra work to more employees, instead of giving more hours to fewer employees. *Overnight Motor Transport v. Missel*, 316 at 576. Workers protected by the FLSA are presumed entitled to the overtime premium unless they are explicitly exempted under the terms of the Act. Relevant to these comments, section 213(a)(1) exempts "bona fide executive, administrative or professional employees" from minimum wage and overtime coverage. Congress did not define or delimit those terms, instead leaving it to the Secretary of Labor to do so "from time to time by regulations."[2]

The EAP exemptions are based on the understanding that bona fide EAP employees have more bargaining power in the workplace regarding their schedules, pay, and benefits.[3] The EAP classifications were meant to be limited to workers who earned salaries well above the minimum wage and whose autonomy, benefits, and other privileges on the job set them apart from non-exempt workers entitled to overtime pay.[4] Congress also anticipated that exempt workers performed the type of work that was "not easily standardized to a particular period and could not be easily spread to other workers after 40 hours in a week."[5]

The Rule contains objective measures to define and delimit the scope of the exemptions, noting that titles or job descriptions by themselves are not dispositive, and nor is simply paying someone a salary.[6] This adjustment is necessary because the prior salary

---

[2] 29 U.S.C. § 213(a).
[3] Report of the Minimum Wage Study Commission Volume IV, pp. 236 & 240 (June 1981).
[4] *Id.*
[5] *Id*.
[6] See, e.g., 88 Fed. Reg. 62157.

4

threshold was so low—and the duties test so weak-- that the overtime regulations allowed and even encouraged employers to misclassify millions of workers who should be receiving overtime as exempt. In January 2023, the National Bureau of Economic Research (NBER) released new research documenting the prevalence of this practice.[7] The abstract for the paper tells the story:

> We find widespread evidence of firms appearing to avoid paying overtime wages by exploiting a federal law that allows them to do so for employees termed as "managers" and paid a salary above a pre-defined dollar threshold. We show that listings for salaried positions with managerial titles exhibit an almost five-fold increase around the federal regulatory threshold, including the listing of managerial positions such as "Directors of First Impression," whose jobs are otherwise equivalent to non-managerial employees (in this case, a front desk assistant). Overtime avoidance is more pronounced when firms have stronger bargaining power and employees have weaker rights… Our results suggest broad usage of overtime avoidance using job titles across locations and over time, persisting through the present day. Moreover, the wages avoided are substantial - we estimate that firms avoid roughly 13.5% in overtime expenses for each strategic "manager" hired during our sample period.

The researchers concluded that in 2019 alone, employers used job titles to avoid paying overtime on 151 million employee hours, worth about $4 billion in money stolen from workers. The average worker lost about 13.5 percent of their salary based on this misclassification.[8]

---

[7] Lauren Cohen, Umit Gurun & N. Bugra Ozel, "Too Many Managers: The Strategic Use of Titles to Avoid Overtime Payments," National Bureau of Economic Research, Working Paper 30826 (January 2023), available at: https://www.nber.org/papers/w30826#:~:text=Too%20Many%20Managers%3A%20The%20Strategic%20Use%20of%20Titles%20to%20Avoid%20Overtime%20Payments,-Lauren%20Cohen%2C%20Umit&text=We%20find%20widespread%20evidence%20of,a%20pre%2Ddefined%20dollar%20threshold.

[8] *Id*.

5

## II. The Department's Salary Threshold is a Proper Indicator of Who Could Fall into the Exemptions, and Will Bolster Workers' Economic Security and Fuel Economic Growth.

By raising the salary threshold to the historically modest $55,656 per year ($1,128/ week) and pegging it to the lowest cost-of-living region in the country, the Rule provides new and enhanced protections for millions of workers who are working more than 40 hours per week without premium pay. The pay threshold determining which salaried workers are automatically eligible for overtime pay has been eroded both by inflation and by passage of time. Before the recent upgrade under the Rule, workers earning $684 per week (or $35,568 per year for a full-time, full-year employee) could be required to work 60-70 hours a week for no more pay than if they worked 40 hours. As amicus Economic Policy Institute notes, "the extra 20-30 hours are completely free to the employer, allowing employers to exploit workers with no consequences."[9]

Having a salary threshold is an efficient method for marking a bright line for employers and workers, under which no employee can be called exempt. A salary level test has been included in all of the DOL's definitions of the EAP exemptions dating back to the earliest regulations[10] because the "final and most effective check on the validity of the claim for exemption is the payment of a salary commensurate with the importance

---

[9] Samantha Sanders and Heidi Shierholz, "Explaining the Department of Labor's Overtime Rule," Economic Policy Institute, (April 23, 2024), available at: https://www.epi.org/blog/explaining-the-department-of-labors-new-overtime-rule-that-will-benefit-4-3-million-workers/. (hereafter "Explaining the Overtime Rule")

[10] Ross Eisenbrey, "Updated Overtime Rules Will Help Millions of Middle-Class Workers," Testimony Before the U.S. House of Representatives Subcommittee on Workforce Protections' Hearing on "Examining the Costs and Consequences of the Administration's Overtime Proposal," July 23, 2015, available at: https://www.epi.org/publication/congressional-testimony-updated-overtime-rules-will-help-millions-of-middle-class-workers/

supposedly accorded the duties in question."[11] The salary level test has been updated multiple times, and every time the DOL has recognized that the salary level test works in tandem with the duties test to identify bona fide EAP employees.[12]

In 1975, the relevant salary threshold was set at a level that meant 63 percent of full-time salaried workers were covered by overtime protections regardless of their duties. By 2023, that share had dropped to a mere 9 percent.[13] As a result, the 40-hour work week no longer exists for millions of underpaid U.S. workers in a wide range of occupations. Workers including so-called "managers" in fast food chains and retail stores, are routinely asked to put in 50, 60, even 70-hour weeks, pulling them away from their families and communities.[14] Restoring some overtime pay protections as the Department's Rule does is crucial for workers seeking greater work-life balance and boosting workers' stagnant paychecks.

Employers have many tools available to manage the new overtime obligations. Assuming the workers' duties pass the duties test, employers can raise salaries over the new threshold, reassess workloads, including better oversight and management of workers' time, hire additional staff, or convert part-time workers to full-time. This shift will foster both a healthier work-life balance and an environment where employees are compensated with fair pay.

---

[11] *Id*. at pp. 6-7.
[12] 81 Fed. Reg 32391 at 32444 (May 23, 2016).
[13] Under the new rule proposed by the DOL, that share would increase to 28.2 percent.
[14] See *infra* note 20 and accompanying text.

7

### III. The Workers Most Likely to Benefit from the Adjustments are Women and People of Color, Who Hold Lower-Paying Jobs Even When They Are Salaried.

Amicus Economic Policy Institute estimates that 2.4 million women, and 1 million workers of color, will benefit from this rule—representing more than half of the 4.3 million affected workers overall.[15] Many of the establishments DOL expects to be impacted employ workers who are underpaid and often work long hours because employers misclassify them as overtime exempt. Women and people of color are overrepresented in jobs where hard work is rewarded with inadequate pay.[16] These industries include construction, retail,[17] food service,[18] hospitals, health care services,[19] and warehousing, Table 31, Fed. Reg. 62227. EPI's recent analysis notes that the largest numbers of impacted workers are in professional and business services, health care and social services, and financial activities. *Supra*, footnote 15. Many workers in these sectors have brought unpaid overtime pay claims. In 2015, NELP published a report

---

[15] Explaining the Overtime Rule, Economic Policy Institute, *supra* note 9.
[16] Amicus National Women's Law Center comments on rule at p. 4, Nov. 15, 2023: https://nwlc.org/resource/nwlc-comments-on-bidens-proposed-overtime-rule/
[17] "Retail workers' unpaid overtime pay lawsuit reinstated," Business Insurance, October 16, 2023, https://www.businessinsurance.com/article/20231016/NEWS06/912360455/Retail-clerks%E2%80%99-FLSA-suit-over-overtime-pay-reinstated-Gabriel-Herrera,-et-al-v; "Publix employees claim overtime owed," Grocery Dive, October 31, 2023, https://www.grocerydive.com/news/publix-lawsuit-hourly-assistant-managers-overtime/698300/.
[18] "You're Now a 'Manager.' Forget About Overtime Pay: New evidence shows that many employers are mislabeling rank-and-file workers as managers to avoid paying them overtime," N.Y. Times, March 6, 2023, https://www.nytimes.com/2023/03/06/business/economy/managers-overtime-pay.html
[19] "Unpaid Overtime in Healthcare," Lipsky Lowe (last visited August 15, 2024): https://lipskylowe.com/services/nyc-wage-and-hour-attorney/unpaid-overtime/unpaid-overtime-in-healthcare/

sharing stories of workers who would be impacted by a higher overtime threshold. Their stories still resonate today as workers are earning low wages and working long hours, meaning that the DOL Rule addresses much needed reforms.[20]

Media reports and litigation have highlighted the problems fueled by a low overtime salary threshold. Employers deliberately understaff their retail and restaurant operations and rely on employees labeled managers who perform large amounts of non-exempt, frontline work. The New York Times and other media have detailed, for example, how this practice is especially at common at dollar stores, which at times are staffed solely by a single, exploited manager working as many as 60 hours a week [21] In another recent example, assistant store managers who work for the retail chain Burlington are suing for unpaid overtime because they routinely perform non-exempt work, including stocking shelves, operating cash registers, and cleaning floors. Burlington offered plaintiffs an $11 million proposed settlement, but the judge declined to approve the settlement because all potential plaintiffs had yet to be notified of the lawsuit.[22]

---

[20] Judy Conti, "The Case for Reforming Federal Overtime Rules: Stories from America's Middle Class," National Employment Law Project, December 2014, https://s27147.pcdn.co/wp-content/uploads/2015/03/Reforming-Federal-Overtime-Stories.pdf (collecting individual worker stories from several retail, oil and gas, and financial service jobs).

[21] "How a Dollar General Employee Went Vital on Tik Tok," N.Y. Times, April 18, 2022, https://www.nytimes.com/2022/04/18/business/dollar-general-tiktok.html ; "'Everything Going the Wrong Way': Dollar Stores Hit a Pandemic Downturn," N.Y. Times, September 30, 2021; "The human cost of Family Dollar's low prices: Its workers describe 80-hour weeks, sleeping in chairs, and snakes in the stockroom," Business Insider, January 24, 2022, https://www.businessinsider.com/how-family-dollar-kept-worker-lawsuits-hidden-arbitration-2021-12 .

[22] "Burlington Workers Nab Collective Cert. After Axed $11M Deal," Law 360, October 31, 2023, https://www.law360.com/articles/1738755?e_id=1827b198-e173-47f5-bcfc-b20f93b336a8&utm_source=engagement-alerts&utm_medium=email&utm_campaign=case_updates

As Paige Murdock, a Dollar General store manager from Eliot, Maine explained, "[b]ecause our overtime hours are free for the company, they make us work 60 to 70 hours a week. I was working so much I couldn't make it to my church. My family was always asking, 'Why aren't you at home, Mom?' And most of my hours weren't even spent managing the store, but instead stocking shelves or running the cash register since we never had enough staff."[23]

The experiences of the states with overtime thresholds comparable to or higher than the Department's threshold suggest that the Rule will be manageable for employers. Four states currently have overtime salary thresholds that are substantially higher than the prior federal level of $35,568: Colorado, New York, California, and Washington State. Colorado's threshold is $55,000 as of 2024 – close to the federal salary threshold in the Rule.[24] New York's ranges from $58,500 to $62,400 in 2024.[25] California's is $66,500 as of 2024.[26] Washington's is $67,725 as of 2024 – and will phase up to $92,560 by 2028.[27] In addition, the four states noted above – Colorado, New York, California, and Washington State – and also Maine have all provided for automatic annual increases in

---

[23] Rebecca Dixon & Heidi Shierholz, "Time to Expand Overtime Pay," Democracy Journal, November 1, 2021, https://democracyjournal.org/arguments/time-to-expand-overtime-pay/.
[24] Colo. Overtime and Minimum Pay Standards ("COMPS Order") #38, 7 CCR 1103-1 (effective 1/1/2022), https://cdle.colorado.gov/sites/cdle/files/7%20CCR%201103-1%20COMPS%20Order%20%2338%20%5Baccessible%5D.pdf.
[25] NYS Dep't of Labor, Proposed Amendments to Section 141-3.2(c)(1)(i)(e)(2) of 12 NYCRR, October 4, 2023, https://dol.ny.gov/system/files/documents/2023/09/mw-orders-update-9.20.23.pdf
[26] State of Cal., Dep't of Indus. Rel., News Release Number: 2023-66, "California's Minimum Wage to Increase to $16 per hour in January 2024," September 26, 2023, https://www.dir.ca.gov/DIRNews/2023/2023-66.html#:~:text=An%20employee%20must%20earn%20no,to%20meet%20this%20threshold%20requirement.
[27] Wash. State Dep't of Labor & Indus., "New salary threshold implementation schedule," https://www.lni.wa.gov/forms-publications/f700-207-000.pdf

their salary thresholds to keep up with the rising cost of living, as does the Department in its Rule.[28] This best practice has proven successful in these states, providing predictability for employers and protecting workers against erosion in the salary threshold.

### IV. The Proposed Adjustments to the Exemptions are Fully Within DOL's Congressionally Delegated Authority.

The Fair Labor Standards Act clearly delegates to the Department the duty to "define and delimit" the scope of the EAP exemptions. 29 USC Section 13(a)(1). The Department has been regulating these exemptions since 1938, and has proposed regulations, incorporated research, public comments and economic data, and enforced the statutory definitions since then, putting it in the best position to adjust when needed to align with the statutory definitions and Congressional intentions.

Here, Congress has made an unambiguous delegation of authority, calling on the Department's expertise to define and delimit the EAP exemptions' scope. The plain language of the FLSA makes clear that Congress intended for the Department to identify criteria—such as a salary test—to be used in assessing whether an employee meets the

---

[28] Colo. Overtime and Minimum Pay Standards ("COMPS Order") #38, 7 CCR 1103-1, Rule 2.5.1, *supra* note 19 (state overtime salary threshold increases each year to keep up with cost of living). N.Y. Labor Law § 652(1) (all "monetary amounts" relating to the state minimum wage, including overtime salary threshold, increase in the same proportion as the minimum wage); *id*. § 652(1-b) (beginning 2027, state minimum wage increases each year to keep up with cost of living). Cal. Labor Code § 515(a) (overtime salary threshold defined as monthly salary equivalent to two times the state minimum wage); *id*. § 1182.12(c) (state minimum wage increases each year to keep up with cost of living). Wash. Admin. Code § 296-128-545 (defining salary threshold as a multiple of the state minimum wage, phasing up to 2.5 times the minimum wage by 2028); Rev. Code of Wash. § 49.46.020(2)(b) (state minimum wage increases each year to keep up with cost of living). 26 Maine. Rev. Stat. § 663(3)(K) (overtime salary threshold defined as 3,000 times the state minimum wage); *id*. § 664(1) (state minimum wage increases each year to keep up with cost of living).

EAP definitions. Any other reading of the FLSA would fail to account for Congress' choice that the definitions be both defined *and* delimited by the Department. History further bears out this conclusion: for 85 years, Congress has taken no action to curtail the Department's use of a salary test, despite making numerous amendments to the FLSA. The Department's interpretation of its delegated authority should be upheld by a reviewing court even under less deferential frameworks: the statute is unambiguous, and the Department's long-standing interpretation is, therefore, the "best reading" of the Fair Labor Standards Act.

## CONCLUSION

For the foregoing reasons, we urge this Court to grant Defendants' cross-motion for summary judgment and to deny Plaintiffs' motions for summary judgment.

Dated: August 15, 2024    Respectfully submitted,

/s/ Catherine K. Ruckelshaus
Catherine K. Ruckelshaus
NATIONAL EMPLOYMENT LAW PROJECT
90 Broad Street, Suite 1100
New York, NY 10004
(646) 693-8233
cruckelshaus@nelp.org

*Counsel for Amicus Curiae*