**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, | § | Civil Action No. 4:24-cv-499-SDJ |
| | § | LEAD CASE |
| Plaintiff, | § | |
| | § | |
| PLANO CHAMBER OF | § | Civil Action No. 4:24-cv-468-SDJ |
| COMMERCE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF LABOR, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**BUSINESS PLAINTIFFS' RESPONSE TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT AND REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR EXPEDITED SUMMARY JUDGMENT**

Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
rfriedman@littler.com

Maurice Baskin (*pro hac vice*)
James A. Paretti, Jr. (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
jparetti@littler.com

*Counsel for Business Plaintiffs*

Angelo I. Amador (*pro hac vice*)
Restaurant Law Center
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Business Plaintiff
Restaurant Law Center*

## **CONTENTS**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ...............................................................................................................1

RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS..........................2

ARGUMENT.......................................................................................................................2

      I.        As this Court Has Already Recognized Is Likely, Under *Loper Bright*, the 2024 Overtime Rule Exceeds the Department's Statutory Authority and Is Unlawful.................................................................................................................2

      II.      *Wirtz* Is Not Determinative, Is of Questionable Vitality, and in Any Event Does Not Countenance the Increases Contained in the 2024 Rule.......................4

      III.     The 2024 Rule's Severability Clause Does Not Alter the Outcome, and In Any Event Each Challenged Provision of the 2024 Rule Is Unlawful. .................6

             A.      The July 2024 Increase Was Unlawful.....................................................7

             B.      The Scheduled January 1, 2025 Increase Is Unlawful..............................9

             C.      The Automatic Escalator Provision Is Unlawful.......................................9

      IV.     The Department Did Not Engage in "Reasoned Decision-making" in Promulgating the Arbitrary and Capricious 2024 Rule.......................................12

      V.     The 2024 Rule Must Be Set Aside on a Nationwide Basis, or, at a Minimum, Nationwide Relief Must Be Provided for all the Trade Association Business Plaintiffs' Members.........................................................15

             A.      Fifth Circuit Precedent Requires Vacatur of the 2024 Rule. ..................15

             B.      At a Minimum, the Department's Enforcement of the Rule Against Business Plaintiffs and Their Members Must Be Enjoined.....................18

CONCLUSION..................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chamber of Commerce v. Federal Trade Commission*,
No. 6:24-cv-148, 2024 WL 1954139 (May 3, 2024) .......................................................... 19

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
45 F.4th 846 (5th Cir. 2022) ................................................................................................. 15

*Encino Motorcars, LLC v. Navarrro*,
136 S. Ct. 2117 (2016) .......................................................................................................... 12

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ............................................................................................................... 16

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022) ................................................................................................. 15

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ............................................................................................................... 18

*Loper Bright Enterprises v. Raimondo*,
603 U.S. ---, 144 S. Ct. 2244 (2024) ............................................................................... *passim*

*Mayfield et al. v. U.S. Dep't of Labor*,
No. 23-50724 (5th Circuit) (fully briefed; oral argument held August 7, 2024) ................. 5, 6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983) ................................................................................................................. 12

*Nasdaq Stock Mkt. LLC v. SEC*,
38 F.4th 1126 (D.C. Cir. 2022) ............................................................................................ 6, 7

*Nat'l Ass'n of Mfrs. v. United States SEC*,
105 F.4th 802 (5th Cir. 2024) .............................................................................................. 6, 7

*Nat'l Ass'n of Priv. Fund Managers v. SEC*,
103 F.4th 1097 (5th Cir. 2024) ............................................................................................. 19

*Nevada v. U.S. Dep't of Labor*,
218 F. Supp. 520 (E.D. Tex. 2016) ................................................................................ 1, 4, 17

*Nevada v. U.S. Dep't of Labor*,
275 F. Supp. 3d 795 (E.D. Tex. 2017) ........................................................................... 1, 4, 18

ii

*Ohio v. EPA*,
   603 U.S. ---, 144 S. Ct. 2040 (2024) .............................................................................. 10, 14

*Restaurant Law Center. v. U.S. Dep't of Labor*,
   --- F4th ---, 2024 WL 3911308 (5th Cir. Aug. 23, 2024)........................................ 3, 8, 14, 15

*Ryan, LLC v. FTC*,
   --- F. Supp. 3d ---, 2024 WL 3879954 (E.D. Tex. Aug. 20, 2024)........................................15

*Texas v. Becerra*,
   667 F. Supp. 3d 252 (N.D. Tex. 2023), *vacated in part as moot on other
   grounds*, 2024 WL 2747551 (5th Cir. Feb. 2, 2024)................................................................6

*Texas Med. Ass'n v HHS*,
   2024 WL 3633795 (5th Cir. Aug 2, 2024) ..........................................................................15

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................................................18

*Wirtz v. Mississippi Publishers Corp.*,
   364 F.2d 603 (5th Cir. 1966) .................................................................................................4

**Statutes**

5 U.S.C.
   § 553 .................................................................................................................................9, 10
   § 706 ...............................................................................................................................15, 19

Administrative Procedure Act, 5 U.S.C. §§ 501 *et seq.* .......................................................*passim*

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ...........................................................*passim*

**Other Authorities**

29 C.F.R. 541.5 .......................................................................................................................6

S. Bronars, Ph.D., The Department of Labor's Method for Automatically
   Updating the Salary Level for Overtime Exemptions Will Cause Increases that
   Exceed Growth in Wages and Salaries, Edgeworth Economics (May 15, 2024)...................11

## **INTRODUCTION**

As explained in the Business Plaintiffs' motion for summary judgment and in this Court's order granting the State's motion for preliminary injunction, the 2024 Overtime Rule violates both the Fair Labor Standards Act ("FLSA") and the Administrative Procedure Act ("APA") and must therefore be set aside. *See Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 520 (E.D. Tex. 2016) (*Nevada I*) (enjoining enforcement of the very similar 2016 Rule nationally); *Nevada v. U.S. Dep't of Labor*, 275 F. Supp. 3d 795 (E.D. Tex. 2017) (invalidating 2016 Rule on a nationwide basis) (*Nevada II*); *Loper Bright Enterprises v. Raimondo*, 603 U.S. ---, 144 S. Ct. 2244 (2024). By increasing the minimum salary threshold by 65%, the 2024 Rule effectively eliminates the EAP exemption for over 4 million workers, based not on any change in these workers' duties, but rather based solely on how much they earn. The 2024 Rule likewise revives the 2016 Rule's unlawful "automatic escalator" provision, by which the EAP exemption automatically will increase every three years without any action or notice-and-comment rulemaking by the Department. And the Rule unlawfully increases the "highly compensated" salary threshold as well.

The Department's opposition to Plaintiffs' motions and its own cross-motion for summary judgment offer nothing to refute Plaintiffs' entitlement to final relief vacating the 2024 Rule in its entirety. The Department's arguments misread determinative caselaw and overstate the importance of inapposite case law on almost every front; fail to rebut this Court's prior analysis, as well as that of the *Nevada* Court; fail to counter Plaintiffs' arguments that the 2024 Rule is arbitrary and capricious in violation of the APA; misconstrue the Supreme Court's holding in *Loper Bright*; and ignore binding Fifth Circuit precedent demonstrating Plaintiffs' entitlement to nationwide relief. For each of these reasons, the Business Plaintiffs respectfully ask this Court to grant their motion

1

for summary judgment; deny the Department's cross-motion for summary judgment; and enter a final order granting them the relief on a nationwide basis to which they are entitled.

## RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants' Statement of Undisputed Facts consists almost exclusively of statements of law to which no response is required, and/or laws, regulations, decisions of courts, reports, and references to the Administrative Record that speak for themselves. To the extent Defendants attempt to characterize the contents of any such documents in a manner inconsistent with their plain text, Plaintiffs dispute such characterization(s), for the reasons already specified in Plaintiffs' opening motion, and/or further set forth below.

## ARGUMENT

I.    **As this Court Has Already Recognized Is Likely, Under *Loper Bright*, the 2024 Overtime Rule Exceeds the Department's Statutory Authority and Is Unlawful.**

This Court previously determined that under the standard set forth by the U.S. Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. ---, 144 S. Ct. 2244 (2024), the Department likely exceeded its statutory authority in promulgating the 2024 Rule in violation of the APA. ECF No. 38 at 25-26. In response, the Department argues repeatedly that because the FLSA "expressly delegates" authority to the Secretary to define and delimit the EAP exemption, *Loper Bright* somehow limits a reviewing court's ability to determine the scope of the Department's authority and/or whether the Department has exceeded that scope. This argument fundamentally misreads *Loper Bright*:

> The very point of the traditional tools of statutory construction—the tools courts use every day—is to resolve statutory ambiguities. That is no less true when the ambiguity is about the scope of an agency's own power—perhaps the occasion on which abdication in favor of the agency is *least* appropriate.

104 S. Ct. at 2266 (emphasis in original). When Congress confers discretionary authority on agencies, it is the role of the court to respect that delegation but "police the outer statutory boundaries of those delegations and ensure that agencies exercise their discretion consistent with the APA." *Id.* at 2268. In a case such as this one, it is the court's job to determine "the boundaries of the delegated authority" and ensure that the agency has acted within them. *Id.* Even when Congress has expressly delegated some authority to an administrative agency, "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 2263. *See also Restaurant Law Center v. U.S. Dep't of Labor*, --- F4th ---, 2024 WL 3911308 (5th Cir. Aug. 23, 2024), at *5 (*Loper Bright* requires reviewing court to "parse the text of the FLSA using the traditional tools of statutory interpretation"); *id.* at *9 (concluding that Department's regulation regarding tip credit under FLSA was "inconsistent with" and "contrary to" FLSA's text and thus unlawful).

Applying this standard, this Court concluded that each of the three substantive components of the 2024 Rule are likely to be unlawful insofar as they exceed the Department's statutory jurisdiction and are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." ECF 38 at 13, 34. In arriving at this conclusion, this Court correctly determined that the increased EAP salary threshold contained in the 2024 Rule would "effectively displace the FLSA's duties test with a predominant, if not exclusive, salary-level test." *Id.* at 21. This is precisely the conclusion reached by the *Nevada* Court—twice—in striking down the 2016 Overtime Rule for exceeding the Department's statutory authority: "Congress unambiguously directed the Department to exempt from overtime pay employees who perform 'bona fide executive, administrative, or professional capacity' duties. However, the Department create[d] a Final Rule

3

that makes overtime status depend predominantly on a minimum salary level, thereby supplanting an analysis of an employee's job duties." *Nevada II*, 275 F. Supp. 3d at 806.

Notably, the *Nevada* Court found the 2016 Rule to be unlawful while *Chevron* was still good law, concluding that the 2016 Rule was not entitled to deference insofar as the plain language of the FLSA made clear that "Congress intended the EAP exemption to apply to employees doing actual executive, administrative, and professional duties." *Nevada I*, 218 F. Supp. 3d at 529. As this Court recognized in granting Texas preliminary injunctive relief, with *Chevron* now overruled, the Business Plaintiffs need only demonstrate to this Court that, using its independent judgment, the 2024 Overtime Rule once more exceeds the Department's statutory authority. As set forth below, this is eminently clear, and the Business Plaintiffs are entitled to summary judgment in their favor.

**II.**     ***Wirtz* Is Not Determinative, Is of Questionable Vitality, and in Any Event Does Not Countenance the Increases Contained in the 2024 Rule.**

The Department dramatically overstates the importance of the Fifth Circuit's decision in *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966). *Wirtz* has no bearing on whether the EAP salary increases contained in the 2024 Rule fall within the scope of the Department's delegated authority under the FLSA for at least three reasons.

First, as this Court expressly acknowledged previously, *Wirtz* stands merely for the proposition that the Department's inclusion of "*a* salary-level component falls within the bounds of the EAP Exemption's statutory test *when properly set.*" ECF 38 at 20 (emphasis added). That the court in *Wirtz* determined that a $100 weekly salary threshold in effect in 1966 was not then arbitrary and capricious does not mean the case extends "to bless *any and all* salary threshold

adopted by the Department." *Id.* at 21 (citing *Nevada II*, 275 F. Supp. 3d at 805 & n.5) (emphasis in original).[1]

Second, the question of whether the Department has the statutory authority under the FLSA to include *any* salary threshold in defining the EAP exemption (and, consequently, whether *Wirtz* remains good law) is directly at issue in a pending appeal currently awaiting a decision by the Fifth Circuit. *See Mayfield et al. v. U.S. Dep't of Labor*, No. 23-50724 (5th Circuit) (fully briefed; oral argument held August 7, 2024), Plaintiffs-Appellants Opening Brief at 4; Appellees Brief at 1 (setting forth issues presented on appeal). Unless and until that issue is resolved by the Court of Appeals, *Wirtz* in no way limits this Court's ability to determine that the *specific* thresholds contained in the 2024 Rule exceed the Department's authority.

Third, the Fifth Circuit has inquired about the impact of *Loper Bright* on the pending *Mayfield*. *See Mayfield*, No. 23-50724, Dkt. No. 75 (requesting supplemental briefing from parties on the effects of *Loper Bright* on pending appeal). *Wirtz* concluded only in a brief paragraph that the EAP salary threshold then in effect in 1966 was not arbitrary and capricious; the court did not undertake to address whether a minimum EAP threshold salary was precluded by the plain meaning of the FLSA's text, let alone whether allowing for the consideration of salary as part of the EAP exemption was the "best reading" of the statutory text that *Loper Bright* requires a reviewing court to determine independently. *See* 144 S. Ct. at 2266 ("It therefore makes no sense to speak of a 'permissible' interpretation that is not the one that the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible.").

---

[1] The $100 weekly threshold approved in *Wirtz* in 1966 translates to roughly $668 dollars per week in 2024, a number well below both the July 1, 2024, and January 1, 2025, increases contained in the 2024 Rule.

In short, with respect to *Wirtz*, the most the Department can hope for is a decision from the Fifth Circuit holding that DOL has the statutory authority to include *some* consideration of *some* salary component in regulations delimiting the EAP exemption, which would not save the provisions challenged here. Nothing at issue in *Mayfield* would alter the analysis of whether the specific EAP threshold increases (and escalator provision) at issue in this case is lawful. For each of these reasons, the Department's reliance on *Wirtz* to uphold the 2024 Rule's dramatic increase in the EAP salary threshold is wholly misplaced.

**III.    The 2024 Rule's Severability Clause Does Not Alter the Outcome, and In Any Event Each Challenged Provision of the 2024 Rule Is Unlawful.**

The Department next argues that this Court must analyze each of the 2024 Rule's three substantive components separately because the severability clause contained in the Rule may save some of its components even if the Court finds that others are unlawful. *See* DOL Mem. At 12-14 & 29 C.F.R. 541.5. But "the ultimate determination of severability will rarely turn on the presence or absence of a severability clause," *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1145 (D.C. Cir. 2022) (citation omitted) (finding "substantial doubt" regarding adoption of the rule once the challenged portion was subtracted and whether the remaining parts would "function sensibly"); cited approvingly in *National Association of Manufacturers v. United States SEC*, 105 F.4th 802, 816 (5th Cir. 2024). Other courts in the Fifth Circuit have declined to sever only those parts of a rule which violate the APA, even where the rule contained a purported severability clause. *See, e.g.*, *Texas v. Becerra*, 667 F. Supp. 3d 252, 294 (N.D. Tex. 2023) (setting aside rule in its entirety where only portions were found to be arbitrary and capricious and in excess of statutory authority), *vacated in part as moot on other grounds*, 2024 WL 2747551 (5th Cir. Feb. 2, 2024) (unpublished). The Department's argument on this point is unavailing—and does not change any outcome in this case—for two reasons.

First, contrary to the Department's argument, the several challenged provisions of the 2024 Rule are "intertwined in such a way that makes severance problematic." *Nasdaq Stock Market, LLC*, 38 F.4th at 1145. Each increased threshold is used by the Department to justify the other increases; and they are presented as a combined whole in the Rule. The individual parts do not "function sensibly" without the stricken provision(s).[2]

Second, insofar as the Department asks the Court to analyze each substantive component of the 2024 Rule separately, that is exactly what this Court did in granting Texas's request for preliminary injunctive relief:  the Court examined the 2024 Rule's substantive components separately and explained why they were in excess of the Department's statutory authority. *See* ECF No. 38 at 22 & n.19 (detailing effects of July 1 EAP threshold increase in excess of statutory authority and rejecting Department's attempt to distinguish it from remainder of Rule); 22-23 (separately detailing how January 1, 2025, threshold increase, and escalator clause will unlawfully defeat exemption for millions of employees based solely on Rule's increased salary thresholds). The Court's analysis of each individually unlawful provision remains correct, and each of the Rule's challenged components is unlawful. For this reason, as well, the Rule must be set aside in its entirety, as further explained below.

A.    <u>The July 2024 Increase Was Unlawful.</u>

Section 213 of the FLSA provides that "any employee employed in a bona fide executive, administrative, or professional capacity" falls within the EAP exemption. As this Court has already

---

[2] The Department's reliance on *National Association of Manufacturers* is unavailing insofar as that case makes clear that the intent of an agency with respect to a severability clause is not determinative, but rather that courts must likewise examine whether the challenged components of an unlawful rule are inextricably linked. *See* 105 F.4th at 816. Unlike in this case, the provisions of the rule that the court severed and upheld in *National Association of Manufacturers* were not challenged substantively on appeal and, unlike the challenged provisions of the 2024 Rule, were not inseparable. *See id.* at 815.

correctly concluded, "any employee" means precisely what it says—*any* employee, not "most" employees or "some employees" performing in a bona fide executive, administrative, or professional capacity. *See* ECF at 24-25. The Department freely admits that the July 1, 2024, increase eliminated the EAP exemption for a million workers overnight and makes no serious effort to deny that whatever the *intent* of the 2024 may be, its *effect* is inarguable and impermissible — solely because of the July 1 increase, a million formerly exempt executive, administrative, and professional employees lost their exempt status due solely to salary. Put another way, the July 1 increase impermissibly eliminated these employees' exempt status based on how much they *make* rather than what they *do*, in contravention of the plain language of the statute and its Congressional intent. *See, e.g., Restaurant Law Center*, 2024 WL 3911308, at *8-9 (Department regulations regarding "tip credit" under FLSA were "inconsistent with the FLSA's text" and thus "not in accordance with law" based on the "core administrative principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." (citing *Util. Air. Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014))).

The Department's argument that the July 1, 2024, increase is permissible because it comports with prior practice is unavailing. That the Department has previously set the EAP exemption with reference to the 20th percentile of full-time salaried workers in the South Census Region or that the July 1 increase is not as dramatic as the scheduled January 1, 2025, increase (or the increase contained in the unlawful 2016 Overtime Rule) is of no consequence. As this Court rightly concluded, "[T]he rationale for finding these changes unlawful remains the same: status cannot turn on salary. Period." *Id.* at 23 n.21.

**B.**     <u>**The Scheduled January 1, 2025 Increase Is Unlawful**</u>.

Even less needs be said of the 2024 Rule's scheduled January 1, 2025, increase, which exceeds the statutory authority of the Department even more egregiously than the July 1 increase. If allowed to stand, on January 1, 2025, the EAP salary threshold will increase an additional 33% (a total increase of almost 65% in less than six months), defeating the exemption for an additional three million-plus employees. The point need not be belabored: if an increase to the EAP salary threshold of 23% which defeats the exemption for a million workers is an unlawful abrogation of the FLSA's duties test, an increase of an additional 33% which eliminates the exemption for three million more workers is *a priori* in excess of the Department's statutory authority in violation of the APA. Indeed, if the January 1, 2025, increase using the 35th percentile methodology becomes effective, the Department predicts that the Rule will have stripped more than four million employees of exempt status. This mirrors almost exactly the number of employees who would have been impacted by the unlawful 2016 Overtime Rule. By Year 10, the Department projects that this number will swell to almost six million employees, with almost $3.4 billion in costs imposed on employers. There is no colorable argument that a minimum salary level set that high serves the historic screening function that the EAP salary level test was intended to provide; rather, it plainly creates a de facto "salary only" test, which the Department has acknowledged it lacks the authority to do, and more important, which this Court has recognized exceeds the outer limits of the Department's authority under the FLSA. ECF 38 at 24-25.

**C.**     <u>**The Automatic Escalator Provision Is Unlawful**</u>.

Section 213(a) of the FLSA expressly provides that the Secretary of Labor is given the authority to define and delimit the EAP exemption "from time to time by regulations… subject to the provisions of subchapter II of chapter 5 or title 5 [the Administrative Procedure Act]." Except

with respect to certain exceptions not applicable here, subchapter II, specifically, section 553 of the APA, prescribes detailed requirements for the promulgation of regulations, including the requirement that any proposed regulation be published in the Federal Register, that all interested stakeholders be given the opportunity to submit comments on the proposed rule, and that the final rule include a reasonable response to the issues and concerns raised by interested parties during the rulemaking process. *See* 5 U.S.C. § 553; *see also Ohio v. EPA*, 603 U.S. ---, 144 S. Ct. 2040, 2053-54 (2024) (explaining APA requirements with respect to rulemaking and concluding that agency's failure to supply a reasoned response to comments raised in the notice and comment period rendered rule arbitrary and capricious).[3] The language of the statute could not be clearer—each and any rule the Department promulgates defining and delimiting the contours of the EAP exemption must be done in accordance with the procedures set forth in the APA. Indeed, were there even a hint of ambiguity as to the statute's meaning—and there is not—it would be impossible to imagine how any other reading of this plain language is the "best reading" of the statute required by *Loper Bright*. *See* 144 S. Ct. at 2266.

The Department itself concedes that the automatic escalator provision would bypass the APA requirements entirely, instead increasing the EAP salary threshold automatically, in perpetuity, with no opportunity for public comment and no requirement that the Department reasonably respond to any concerns raised or offer a justification for the increase. It cites no

---

[3] Current regulatory processes also require the Department to follow the Regulatory Flexibility Act and to undertake a detailed economic and cost analysis of any proposed update. An automatic update mechanism would allow the Department to announce a new salary level on a predetermined schedule in the Federal Register without notice-and-comment, without a Regulatory Flexibility Act analysis, and without any of the other regulatory requirements established by various Executive Orders. Each of those regulatory requirements is intended to force the agency to consider the consequences of its proposed actions and to ensure that the regulatory actions it takes are carefully crafted and well-supported before being implemented.

authority in support of its attempt to evade this clear statutory requirement. Rather, it wanly argues that the updated EAP thresholds would not be "rules" subject to the APA requirement, again, citing no authority—not in the Rule nor in its brief—for this novel and tortured reading of the unambiguously clear language. If allowed to stand, the 2024 Overtime Rule will set the "rule" regarding a minimum salary that employers must follow to maintain an employee's exempt status as of July 1, 2024, and later, January 1, 2025. If, in three years after that, that threshold is automatically increased from $X to $Y, the "rule" regarding the required minimum salary is now $Y in contravention of the APA requirements for rulemaking expressly set forth in the FLSA. For this reason alone, the escalator clause contained in the 2024 Rule exceeds the authority delegated by Congress to the Department in unlawful violation of the APA and must be set aside.

Equally important, the automatic escalator provision contained in the 2024 Rule will compound the flaws of the July 1, 2024, and January 1, 2025, increases discussed above in perpetuity. A recent economic analysis of the escalator provision indicates that the automatic increase would result in an increase of 9.1% of the EAP threshold even in the absence of any wage inflation. *See* S. Bronars, Ph.D., "The Department of Labor's Method for Automatically Updating the Salary Level for Overtime Exemptions Will Cause Increases that Exceed Growth in Wages and Salaries," Edgeworth Economics (May 15, 2024).[4]

This is in large part caused by the 2024 Rule's use of total weekly earnings for all full-time, non-hourly paid employees, based on workers who respond to the Bureau of Labor Statistics ("BLS") Current Population Survey. According to BLS, "total weekly earnings" includes overtime pay, commissions, and tips. Respondents are asked whether they are paid hourly; they are not

---

[4] Available at: https://www.edgewortheconomics.com/insight-DOL-method-updating-OT-cause-increases (last visited Aug. 15, 2024).

asked whether they are paid a salary, earn commissions, or are paid another way. In other words, the data is based upon a worker's response that he or she is not paid hourly and includes in the "salary" threshold elements of compensation that are not salary. As these employees are reclassified as non-exempt and converted to an hourly method of payment, they will no longer respond to the CPS Survey question as being paid "non-hourly," and drop out of that BLS data set, thus raising the baseline. As the threshold continues to increase by way of the automatic increases, the salary level required for exempt status likely will be so high as to effectively eliminate entirely the availability of the exemptions in low-wage regions and industries. *See id. See also* Brief Amicus Curiae of the Chamber of Commerce of the United States of America, ECF. No. 47-1 at 12-14 (detailing economic analysis of escalator provision's future disproportionate increases of EAP threshold).

## IV.    The Department Did Not Engage in "Reasoned Decisionmaking" in Promulgating the Arbitrary and Capricious 2024 Rule.

Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Likewise, an agency's failure take into account the strong reliance interests of stakeholders renders a rule arbitrary and capricious in violation of the APA. *Encino Motorcars, LLC*, 136 S. Ct. 2117, 2126 (2016) ("In explaining its changed position, an agency must … be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account … [A] reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy.").

Notwithstanding its arguments to the contrary, the Department did not engage in "reasoned decisionmaking" in crafting the contours of the 2024 Rule. Rather, its analysis rests on flawed assumptions, it failed to consider numerous significant questions and concerns raised during the rulemaking process, and it failed to adequately consider reliance interests of stakeholders. For all of these reasons, the 2024 Rule is arbitrary and capricious, in violation of the FLSA.

The 2024 Overtime Rule is based on a fundamentally flawed premise, namely, that the 2024 Rule's methodology is necessary to correct for the "broadening" of the EAP exemption when it eliminated the "long duties" and "short duties" tests in favor of a single standard duties test in 2004 (which the Department itself concedes is "significantly easier for employers to understand and apply"). DOL Br. At 29. Among other things, this argument fails to recognize that in setting the minimum salary level in 2004, the Department used the same methodology that the agency had used to set the minimum salary level for exemption since 1940: that is, setting the minimum salary at a low level so as to screen out only "obviously nonexempt employees." The Department in 2004 took into account the elimination of the long duties test by increasing the overall level of the minimum salary to a 20 percent threshold, which was itself higher than previous levels, but nowhere near the level of the new standard.

Similarly, the Department's argument that it considered employers' reliance interests is hollow. If allowed to stand, as of January 1, 2025, the EAP threshold will be calculated based on the 35th percentile of non-hourly workers in the Southern census region. This despite the fact that, as detailed in the Business Plaintiffs' opening brief, the Department has never set the threshold at higher than the 20th percentile, and in the single instance that it attempted to—namely, the 2016 Overtime Rule—its actions were (correctly) found to be unlawful by this Court. The Department cannot square its position that it accounted for established reliance interests with the fact that

stakeholders relied on the Department not raising the EAP benchmark by 75%, to a level just under that which was found to be unlawful ten years ago.

Nor did the Department in any meaningful way engage with the concerns the Business Plaintiffs expressed with the proposed increase in the highly compensated employee (HCE) exemption. While it purports to have addressed these concerns by upwardly adjusting its estimate of costs, that argument misses the mark, and wholly fails to engage with the substance of the Business Plaintiff's concern: namely, the salary compression and upward pressure the Rule puts on employers to raise exempt employees (such as supervisors)'s salaries to account for the increase in salaries paid to subordinate employees to maintain their exempt status. Nor does the Department attempt to address the concern that in setting the HCE exemption as highly as it does, the Rule creates dramatic regional variations such that different employees in the same job classification will be afforded different exempt status based on where they work rather than the executive, administrative, or professional duties they perform. The failure to address these concerns substantively (rather than by way of an accounting adjustment) again demonstrates that the 2024 Rule violates the APA. *See, e.g., Ohio*, 144 S. Ct. at 2054 (agency's failure to address significant concern raised in notice and comment period renders final rule arbitrary and capricious). *See also Restaurant Law Center*, 2024 WL 3911308, at *11 (holding Department's FLSA regulation regarding tip credit to be arbitrary and capricious where, among other things, regulation was "contrary to the statutory scheme enacted by Congress").

In short, the Department has wholly failed to rebut the Business Plaintiffs' arguments that the 2024 Overtime Rule not only exceeds the Department's statutory authority, but is likewise arbitrary and capricious, both in violation of the APA.

14

**V.** **The 2024 Rule Must Be Set Aside on a Nationwide Basis, or, at a Minimum, Nationwide Relief Must Be Provided for all the Trade Association Business Plaintiffs' Members.**

The Business Plaintiffs have demonstrated that the 2024 Rule both exceeds the Department's statutory authority and is arbitrary and capricious, two independent (if related) violations of the APA. As such, under well-established law in the Fifth Circuit, universal vacatur pursuant to APA section 706 is both required and appropriate.

**A.** **Fifth Circuit Precedent Requires Vacatur of the 2024 Rule.**

The Fifth Circuit has made clear that the APA "requires a reviewing court to 'hold unlawful and set aside' agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Texas Med. Ass'n v HHS*, 2024 WL 3633795 (5th Cir. Aug 2, 2024) at *7. In the Fifth Circuit, "the APA 'empowers and commands courts to 'set aside' unlawful agency actions," allowing a district court's vacatur to render a challenged agency action 'void.'" *Id.* at *11 (citing *Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021), *rev'd on other grounds,* 597 U.S. 785 (2022). This precedent is "binding." *Id. See also Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."); *Restaurant Law Center*, 2024 WL 3911308, at *11 (APA directs reviewing court to "hold unlawful and set aside" Department regulation that exceeded the Department's statutory authority under FLSA and was arbitrary and capricious). *Cf. Ryan, LLC v. FTC*, --- F. Supp. 3d ---, 2024 WL 3879954 (E.D. Tex. Aug. 20, 2024), at *14 (reviewing Fifth Circuit caselaw and concluding that under APA where rule is in excess of agency's statutory authority and also arbitrary and capricious, district court "must hold [it] unlawful" and "set [it] aside"). The Department itself concedes that in the Fifth Circuit, vacatur is the "default remedy." *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859-60 (5th

15

Cir. 2022). And the Department has offered nothing in law or fact to give this Court reason to depart from the default rule.

As a matter of law, the Department's invocation of *FDA v. Alliance for Hippocratic Medicine,* 602 U.S. 367 (2024) to avert this outcome is as unavailing as the case is inapposite. In *Alliance*, the Supreme Court held that the plaintiffs, a number of doctors and pro-life medical associations, lacked standing to challenge the Food and Drug Administration's regulation of mifepristone, a drug used to terminate pregnancies. As the Court observed, the rule in question did not in any way regulate the plaintiffs' conduct; the plaintiffs did not prescribe or use the drug; the challenged regulation did not require them to do anything or to refrain from doing anything; and nothing in the rule or federal law would have required any doctor to provide any medical service at odds with their conscience. At bottom, their "general legal, moral, ideological, and policy concerns" were insufficient to grant them standing. 602 U.S. at 386.

This case presents diametrically opposed facts, which the Department does not and cannot dispute. As set forth in their Complaint and Memorandum, the Business Plaintiffs and their members are the direct object of regulation of the 2024 Rule. As amply established in the record by the numerous declarations submitted by the Business Plaintiffs—both trade associations and the members they represent— they have suffered and will continue to suffer direct harm if the 2024 Rule is allowed to remain in effect. Put simply, this is not a case where bystanders have come to this Court "to press general complaints about the way in which the government does business," *Alliance*, slip op. at 6, or to "challenge[] the government's 'unlawful regulation (or lack of regulation) of *someone else*." *Id.*, slip op at 10 (quoting *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 562 (1992) (emphasis in original)).

As a factual matter, vacatur of the 2024 Rule (or its permanent injunction on a nationwide basis) is the only remedy that will afford Business Plaintiffs the relief to which they are entitled. As detailed in their Motion, Business Plaintiffs represent hundreds of thousands of companies who in turn employ millions of American workers in every state in the country in countless industries. *See* Plaintiffs' Br. at 29 & Exs. 1-10, and Declarations attached thereto. It was for exactly these reasons that the *Nevada* Court preliminarily enjoined the unlawful 2016 Overtime Rule on a nationwide basis, rather than limiting its injunction to those state plaintiffs who had demonstrated evidence of irreparable harm: "A nationwide injunction is proper in this case. The Final Rule is applicable to all states. Consequently, the scope of the alleged irreparable injury extends nationwide." *Nevada I*, 218 F. Supp. 3d at 534. And the same logic led the Court to permanently vacate the Rule in its entirety, insofar as it directly harmed hundreds of thousands of employers employing millions of workers throughout the country. Insofar as the 2024 Rule is nearly identical to the 2016 Rule in purpose and effect, it should be likewise vacated nationwide.

Finally, while as explained below, this Court *at a minimum* should grant permanent injunctive relief to the Business Plaintiffs and the members of those Business Plaintiffs that are trade associations acting in their representative capacity, as a practical matter this would still be incomplete relief. As a matter of economic reality, nationwide relief is necessary to afford the Business Plaintiffs the relief to which they are entitled. Enjoining enforcement of the 2024 Rule against some employers (*e.g.*, Trade Association Business Plaintiffs' members) but not others would ignore the fact that businesses who remain subject to the unlawful Rule would be required to increase their employees' salaries to maintain their exempt status, as a result of which employers as to whom enforcement of the Rule is enjoined would be likewise forced to raise their employees' salaries as a matter of economic competitiveness, thus rendering the injunctive relief they obtained

ineffective. This too weighs in favor of this Court granting relief to all employers nationwide who would otherwise be subject to an unlawful rule.

**B.      At a Minimum, the Department's Enforcement of the Rule Against Business Plaintiffs and Their Members Must Be Enjoined.**

While only vacatur or a nationwide injunction of the 2024 Rule will afford the Business Plaintiffs complete relief, if for any reason this Court declines to grant that remedy it must, at a minimum, provide injunctive relief that runs to all the Business Plaintiffs and, for those Business Plaintiffs that are trade associations, to their national memberships. The Department's contrary argument in its motion/opposition is unsupported and indefensible as a matter of law.

Specifically, the Department's motion/opposition urges this Court, if it finds some or all of the 2024 Rule unlawful, to limit any injunction only to those Plaintiffs who "have demonstrated Article III standing." *See, e.g.*, DOL Br. at 47, 48. To the extent the Department is arguing that the court should limit relief to only to the businesses and trade associations who are named plaintiffs in this case, and not to those trade associations' members, this argument should be plainly rejected.

It is well-established that where an association brings suit on behalf of its members, as the Trade Association Business Plaintiffs have done here, any remedy granted by the court "should inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 511, 515 (1975). In *Nevada II*, the court readily concluded that all of the trade association plaintiffs in that case (many of whom are again plaintiffs here) had associational standing under Article III because they satisfied the well-established three-prong test subsequently set forth by the Supreme Court in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977):  their members would otherwise have had standing to sue in their own right; the interests at stake were germane to the trade associations' purposes; and neither the claim asserted nor the relief requested required the participation of association members. *See* 275 F. Supp. 3d at 800. As

18

detailed to the Court in the Business Plaintiffs' Motion for Expedited Summary Judgment now at issue, such is exactly the case in this challenge. *See* Plaintiffs' s at 3 ¶ 14, 12-14, Exs. 1-10, and declarations attached thereto (setting forth harms suffered and to be suffered by all of the Trade Association Business Plaintiffs and their members).

The Department has not made any serious effort to dispute the Business Plaintiffs' associational standing in this case, nor could it credibly do so. And in the Fifth Circuit, plaintiffs "need not identify particular members" for every Business Plaintiff when it is clear that "at least one petitioner has standing." *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097, 1109 (5th Cir. 2024). *See also Chamber of Commerce v. Federal Trade Commission*, No. 6:24-cv-148, 2024 WL 1954139 (May 3, 2024), at *3 (federal agency's request to limit relief to identified members of plaintiff trade association is "flatly contrary to case law allowing associational standing and not requiring joinder as a party of each member of an association whose interest the group protects." (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010)).

## CONCLUSION

For each of the reasons set forth above, the Business Plaintiffs respectfully request that the Court grant this motion for expedited summary judgment on all counts of their Complaint; hold the 2024 Overtime Rule unlawful; vacate and set aside the 2024 Overtime Rule pursuant to 5 U.S.C. § 706; permanently enjoin the Department from enforcing the 2024 Rule on a nationwide basis; and grant such other relief as is necessary and proper.

Dated: August 29, 2024

Respectfully submitted,

*/s/ Robert F. Friedman*
Robert F. Friedman
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
(214) 880-8100
rfriedman@littler.com

Maurice Baskin (*pro hac vice*)
James A. Paretti, Jr. (*pro hac vice*)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com
jparetti@littler.com

*Counsel for Business Plaintiffs*

Angelo I. Amador (*pro hac vice*)
Restaurant Law Center
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913

*Counsel for Business Plaintiff*
*Restaurant Law Center*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2024, the foregoing Response to Defendants' Cross Motion for Summary Judgment and Reply to Defendants' Opposition was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to all noticed counsel for Plaintiff State of Texas and for Defendants.

<u>*/s/ Maurice Baskin*</u>
Maurice Baskin